UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

    [UNDER SEAL],

                            Plaintiff,

                -v-

    [UNDER SEAL],

                         Defendant.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 27, 2017

16-cv-7820 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      This is a contract and copyright matter arising from work performed by plaintiff Michael Krechmer ("plaintiff") on Tied Up in Knots (the "Book"), a book officially authored by defendant Andrea Tantaros ("defendant") and published in 2016.  Plaintiff filed this matter under seal "out of an abundance of caution" in light of a confidentiality provision in the parties' written agreement ("Collaboration Agreement"), but plaintiff has since argued vigorously that the seal should be lifted.

      Before the Court is defendant's motion for a preliminary injunction prohibiting plaintiff from violating the confidentiality provision of the Collaboration Agreement during the pendency of any sealing order in this case.  (Def. Motion for Preliminary Injunction, Nov. 21, 2016.)  Defendant has also argued for the continued sealing of this matter.  For the following reasons, the motion is DENIED, and three business days from the date of this decision, this matter will be unsealed

in its entirety.  To be clear, all prior sealed filings shall be unsealed at that time.  In the future, the caption shall contain the full names of the litigants herein.

## I.      BACKGROUND

On or about May 4, 2015, both parties entered into a written agreement (the "Collaboration Agreement") for plaintiff to assist defendant in writing the Book. (Compl. ¶ 11).  The Collaboration Agreement included a confidentiality provision that provided as follows:

> Client's [defendant's] confidentiality is essential to this agreement.
> Collaborator may not discuss or mention his involvement in the work
> in any venue without prior approval, in writing, from Client.
> Collaborator [plaintiff] will . . . disclose any Confidential Information
> as required in response to a valid court order or other legal process, but
> only to the extent required by that order or process and only after
> Collaborator has provided Client with written notice and the
> opportunity for Client to seek a protective order or confidential
> treatment of such Confidential Information  . . . .

(Ex. 1 to Compl. ¶ 10).  Plaintiff alleges that in July 2015, he and defendant agreed to terminate the Collaboration Agreement and enter into a new, separate, completely oral "Ghostwriting Agreement," pursuant to which plaintiff would ghostwrite the Book in exchange for a flat fee of $150,000.  (Id. ¶ 17-19, 23, 25). Plaintiff contends that apart from the payment schedule of the Collaboration Agreement no other provisions of said agreement were incorporated into the Ghostwriting Agreement. (Id. ¶ 32-33).

Plaintiff alleges that defendant did not want to negotiate this new agreement with plaintiff's agent because she "feared" that (a) it would "cause her editor to discover that she was not writing the book herself;" (b) "Harper Collins [the Book's

publisher] would cancel the book if they discovered that there were any negative issues in the writing process, particularly since she was already running more than two years behind schedule;" and (c) she would "suffer professional repercussions and personal humiliation if her colleagues at Fox News discovered that the publication agreement with Harper Collins was cancelled." (Id. ¶ 20-22).

Plaintiff claims that at the time the complaint was filed he had been paid a total of $30,000 for his work on the Book. (Id. ¶ 36-37). On March 17, 2016, in response to plaintiff's queries about payment, defendant allegedly emailed plaintiff telling him that she was preparing financial disbursements for the Book, and demanded that he sign a non-disclosure agreement that would forbid him from stating that he was the editor of the Book, even though defendant had publicly his assistance in the book's acknowledgements. Plaintiff refused to sign the non-disclosure agreement. (Id. ¶ 60).

Defendant disputes plaintiff's claim that the confidentiality clause of the Collaboration Agreement is no longer binding. She argues that the Collaboration Agreement is still in effect because "mere failure to pay is not a material breach of the Collaboration Agreement," and, by its own terms, the Collaboration Agreement cannot be orally modified. (Mem. in Support of Motion for Preliminary Injunction at 9.) Defendant also argues that even if there were an oral modification or rescission of the Collaboration Agreement, any new agreement incorporated the same confidentiality terms as the Collaboration Agreement because confidentiality

was essential to her willingness to engage plaintiff in the project, and plaintiff was and is aware of defendant's reliance upon the confidentiality terms.  (Id. at 7-9.)

On October 6, 2016, plaintiff commenced this action by filing the complaint under seal, claiming that he is the rightful owner of the copyright in the Book due to defendant's alleged breach of the Collaboration Agreement and any subsequent oral agreement rescinding or modifying the Collaboration Agreement.  On November 21, 2016, defendant moved for a preliminary injunction prohibiting plaintiff from violating the confidentiality provision of the Collaboration Agreement during the pendency of any sealing order in this case.

Defendant argues that she will be irreparably harmed absent such a restraint because her professional credibility and career as a journalist would be seriously jeopardized by public revelation of plaintiff's claims that he is the actual author of her book.  (Id. at 7-8.)  Defendant also argues she would be irreparably harmed because she would be deprived of the noncompensable benefit of her bargain, i.e., the confidentiality provision of the Collaboration Agreement, the effectiveness of which is at issue in this case.  (Id.)  Plaintiff contends, inter alia, that defendant has not shown irreparable harm to justify a preliminary injunction, that any potential harm from public disclosure cannot overcome the common-law presumption in favor of public access to judicial documents, and that the requested preliminary injunction would be a prior restraint on speech in violation of the First Amendment.

I.     PRINCIPLES OF LAW

1.     <u>Preliminary Injunctions</u>

A preliminary injunction "is an extraordinary remedy never awarded as of right.  In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.  In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Salinger v. Colting</u>, 607 F.3d 68, 79 (2d Cir. 2010) (quotation marks omitted).

A party seeking a preliminary injunction must show: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation;" (2) "that [plaintiff] is likely to suffer irreparable injury in the absence of an injunction;" (3) that the "balance of hardships between the plaintiff and defendant . . . tips in the plaintiff's favor;" and (3) that the "public interest would not be disserved by the issuance of the preliminary injunction." <u>Id.</u> at 79-80 (internal quotation marks and citations omitted).  A district court "has wide discretion in determining whether to grant a preliminary injunction." <u>Abbott Labs. v. H&H Wholesale Servs.</u>, 670 F. App'x 6, 7 (2d Cir. 2016) (quotation marks omitted).

2.     <u>Public Right of Access</u>

"The common law right of public access to judicial documents is firmly rooted in our nation's history." <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119

(2d Cir. 2006).  A presumption of public access is essential for judicial documents because "the monitoring of the judicial function is not possible without access to documents that are used in the performance of Article III functions."  Standard Inv. Chartered, Inc. v. FINRA, 347 F. App'x 615, 616 (2d Cir. 2009) (quotation marks and emphasis omitted); see also Lugosch, 435 F.3d at 123 ("[O]nce [documents submitted to support or oppose a motion] come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations.").  The presumption of access is "based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice."  United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995).  Therefore, motions to seal documents must be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection.  Video Software Dealers Ass'n v. Orion Pictures, 21 F.3d 24, 27 (2d Cir. 1994).

However, "the right to inspect . . . judicial records is not absolute.  Every court has supervisory power over its own records and files, and access has been denied where court files might [] become a vehicle for improper purposes" such as using records to gratify spite or promote scandals or files that might "serve as reservoirs of libelous statements for press consumption."  Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598, 602 (1978); see also Amodeo, 71 F.3d at 1051 ("Courts have long declined to allow public access simply to cater 'to a morbid

craving for that which is sensational and impure.'" (quoting In re Caswell, 29 A. 259, 259 (1893)).

There are two "related but distinct presumptions in favor of public access to court . . . records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). For both common-law and First Amendment purposes, courts must first determine whether the document at issue is a judicial document because the public's right of access applies only to "judicial documents." See Lugosch, 435 F.3d at 119. If the document is a judicial document, courts next ask whether the presumption of access is the common law right of access or the more robust First Amendment right to access certain judicial documents. Id. at 120.

A.    Common-Law Right of Access

As discussed, the presumption of access attaches only to judicial documents. See Lugosch, 435 F.3d at 119; Amodeo, 44 F.3d at 145 ("[T]he mere filing of a paper or document with the court is insufficient to render [it] a judicial document subject to the right of public access."). To be a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." Id. There is no presumption of access to "documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery." SEC v. TheStreet.com, 273 F.3d 222, 232 (2d Cir. 2001) (quotation marks omitted); cf. Dodona I, LLC v. Goldman, Sachs & Co., 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015) ("[M]aterial [] properly designated as Confidential or Highly

7

Confidential by a protective order governing discovery . . . might not overcome the presumption of public access once it becomes a judicial document.").

Once a document is classified as a judicial document and the presumption of access attaches, a court must determine the weight of the presumption of access. Lugosch, 435 F.3d at 119.  The weight of the presumption is a function of (1) "the role of the material at issue in the exercise of Article III judicial power" and (2) "the resultant value of such information to those monitoring the federal courts." Id. at 119-20 (quotation marks omitted).  The locus of the inquiry is, in essence, whether the document "is presented to the court to invoke its powers or affect its decisions." Amodeo, 71 F.3d at 1050.  "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Lugosch, 435 F.3d at 119.

A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege. See United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (affirming a sealing order "[g]iven the legitimate national-security concerns at play"); Lugosch, 435 F.3d at 125 (stating that attorney-client privilege "might well be . . . a compelling reason" to overcome the presumption of access); Amodeo, 71 F.3d at 1050 (describing law enforcement interests and privacy of innocent third parties as factors that weigh against the presumption of access); see also SEC v. TheStreet.com, 273 F.3d at 234

8

(noting that where the presumption in favor of public access does not apply, and a document was filed under seal pursuant to a protective order, "a strong presumption against public access" applies if a party to the protective order objects on privacy grounds and establishes that it "reasonably relied on the protective order.").

A district court's decision to seal or unseal judicial documents under the common-law presumption of access is reviewed for abuse of discretion. Bernstein v. Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 139 (2d Cir. 2016); see DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997) ("[T]he decision as to access to [judicial records] is one best left to the sound discretion of the trial court." (quotation marks omitted)); cf. Newsday, 730 F.3d at 163 ("[T]he First Amendment concerns implicated by the sealing of proceedings or documents mandate close appellate scrutiny.  In such cases, we . . . undertake[] an independent review of sealed documents, despite the fact that such a review may raise factual rather than legal issues.").

### B.   First Amendment Right of Access

The First Amendment provides the public and the press a constitutional right of access to all trials, criminal or civil. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980); N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286, 298 (2d Cir. 2012).  This right applies to "related proceedings and records" and "protects the public against the government's arbitrary interference with access to important information."  N.Y. Civil Liberties Union, 684 F.3d 286 at 298; see also

Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004) (holding the public and press have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.").

"Once properly invoked, the public's right of access to judicial documents under the First Amendment must be given strong weight." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., MDL No. 1358, 2013 WL 3531600, at *2 (S.D.N.Y July 12, 2013) (quotation marks omitted).  The public's First Amendment right of access applies only to certain judicial documents.  In order to determine whether the First Amendment right of access extends to particular judicial records, the Second Circuit has recognized two approaches.  First, in determining whether the public has a First Amendment right to access judicial records, the court considers whether the documents are those (a) that "'have historically been open to the press and general public,'" and (b) for which "public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120 (quoting.  This analysis has been summarized as requiring examination of "both logic and experience" in establishing the qualified First Amendment right of access.  See ABC, Inc. v. Stewart, 360 F.3d 90, 98 (2d Cir. 2004).  Courts that have undertaken this type of inquiry have generally invoked the common-law right of access to judicial documents in support of finding a history of openness.  See Hartford Courant, 380 F.3d at 92.

Second, the First Amendment protects access to judicial documents that are "derived from or a necessary corollary of the capacity to attend the relevant

proceedings." <u>Hartford Courant</u>, 380 F.3d at 93.  Under this approach, the court determines whether the documents are "necessary to understand the merits" of the proceeding.  <u>See</u> <u>Doe v. Lerner</u>, ___ F. App'x ___, 2017 WL 1406457, at *2 (2d Cir. Apr. 20, 2017); <u>Newsday</u>, 730 F.3d at 164.  The Second Circuit has deemed the right to inspect documents to derive from the public nature of judicial proceedings. <u>Hartford Courant</u>, 380 F.3d at 93 (quoting <u>United States v. Antar</u>, 38 F.3d 1348, 1360 (3d Cir. 1994) ("It would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?").

A proponent of sealing may overcome the presumption of access by demonstrating a substantial probability of harm to a compelling interest.  <u>See</u> <u>Newsday</u>, 730 F.3d at 164-65 ("[T]he First Amendment right creates only a <u>presumptive</u> right of access . . . '[w]hat offends the First Amendment is the attempt to [exclude the public] without sufficient justification,' not the simple act of exclusion itself." (quoting <u>N.Y. Civil Liberties</u>, 684 F.3d at 296) (emphasis in original)).  "'[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  <u>Lugosch,</u> 435 F.3d at 120 (quoting <u>In re N.Y. Times Co.</u>, 828 F.2d 110, 116 (2d Cir. 1987)); <u>see also</u> <u>Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.</u>, 464 U.S. 501, 510 (1984) ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether

the closure order was properly entered."). "Broad and general findings" and "conclusory assertion[s]" are insufficient to justify deprivation of public access to the record. In re New York Times Co., 828 F.2d at 116. The party seeking to maintain the judicial documents under seal bears the burden of showing that higher values overcome the presumption of public access. DiRussa, 121 F.3d at 826.

## II.   DISCUSSION

### A.   Sealing

Plaintiff argues that continued sealing of the case would contravene the presumption of access under the common law and the First Amendment, and that they case should therefore be unsealed. Plaintiff also argues, inter alia, that defendant has failed to show a significant risk of irreparable harm either from unsealing this case or from plaintiff violating the terms of the confidentiality provision of the Collaboration Agreement. The Court agrees.

### 1.   Presumption of Access

To determine whether a presumption of access attaches here, the court must first determine whether the documents at issue are "judicial documents." The relevant filings are the pleadings, the motion papers and related submissions, and the court's opinion and orders. Generally, the presumption of access applies to all documents filed with the court. See SEC v. TheStreet.com, 273 F.3d at 231. Pleadings are judicial documents for purposes of common-law and First Amendment rights of access. See Bernstein, 814 F.3d at 140 (noting that "the modern trend in federal cases is to classify pleadings in civil litigation (other than discovery motions

12

and accompanying exhibits) as judicial records. . . . even when the case is pending

before judgment or resolved by settlement." (quotation marks omitted)).  As the

Second Circuit has explained:

> [A] sealed complaint leaves the public unaware that a claim has been
> leveled and that state power has been invoked—and public resources
> spent—in an effort to resolve the dispute.  These considerations
> indicate that public access to the complaint and other pleadings has a
> "significant positive role," in the functioning of the judicial process.

Id. at 141 (quoting Lugosch, 435 F.3d at 120).  Moreover, documents filed in relation

to a motion "are judicial documents to which a presumption of immediate public

access attaches under both the common law and the First Amendment."  Lugosch,

435 F.3d at 126.  Dispositive motions are adjudications, and "[a]n adjudication is a

formal act of government, the basis of which should, absent exceptional

circumstances, be subject to public scrutiny."  Joy v. North, 692 F.2d 880, 893 (2d

Cir.1982).  Similarly, a presumption of public access attaches to a court's decisions.

"[A] court's decisions are adjudications—direct exercises of judicial power the

reasoning and substantive effect of which the public has an important interest in

scrutinizing."  Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F.

Supp. 2d 606, 612 (S.D.N.Y. 1998) (citing Joy, 692 F.2d at 893).

Even though defendant's argument to extend the seal based on the belief that

the matter will be summarily dismissed is no longer applicable here, it should be

noted that the Second Circuit has rejected the contention that the presumption of

access is dependent upon the disposition of the underlying motion.  See Lugosch,

435 F.3d at 121-22.

Hence, the documents at issue constitute judicial documents to which a presumption of public access applies under both the common law and the First Amendment. The weight of this presumption is heavy, for the documents are pleadings and motion-related filings that are essential to adjudication.[1]

2. Rebutting a presumption of access

In support of her motion for a preliminary injunction, defendant asserts that she would suffer irreparable harm if plaintiff's alleged role in helping write the Book was revealed either by unsealing the case or by plaintiff violating the confidentiality provision of the Collaboration Agreement. Defendant argues that, as a well-known television journalist, her credibility is her trade, and if plaintiff's role in helping defendant write the Book was revealed it would severely undermine her credibility in the eyes of her colleagues, fans, publisher, and the wider news-media world. Defendant contends that in view of the professional repercussions and personal humiliation she would suffer, the harm of disclosure justifies a continuation of the seal and an injunction to enforce the confidentiality provision of the Collaboration Agreement. (See Mem. in Support of Motion at 7-9.)

The Court disagrees. A possibility of future adverse impact on employment or the celebrity status of a party is not a "higher value" sufficient to overcome the

---

[1] Defendant has accused plaintiff of filing this suit and seeking its unsealing for use in a separate action filed by the defendant in this case. Regardless of the truth of this accusation, the Second Circuit has held that motive is generally irrelevant to the presumption of access. Amodeo, 71 F.3d at 1050 ("Although the presumption of access is based on the need for the public monitoring of federal courts, those who seek access to particular information may want it for entirely different reasons. However, we believe motive generally to be irrelevant to defining the weight accorded the presumption of access. . . . Different considerations apply where personal motives, such as an individual vendetta or a quest for competitive economic advantage, are involved.")

14

presumption of access to judicial documents.  See Lugosch 435 F.3d at 120.  In

Prescient Acquisition Group, Inc. v. MJ Public Trust, defendants vehemently

opposed unsealing on the basis that the celebrity status of musician Michael

Jackson, a party, would make portions of the record "subject to sensational media

accounts."  487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007).  The court rejected the notion

that "a generalized concern of adverse publicity concerning a public figure is a

sufficiently compelling reason that outweighs the presumption of access."  Id. at

376; see also Alexandria Real Estate Equities, Inc. v. Fair, No. 11-cv-3694, 2011 WL

6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (finding the possibility of future adverse

impact on plaintiff's employment insufficient to outweigh the presumption of

access); Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011) (ruling

on a party's request to redact names of individuals whose conduct had been

investigated in relation to alleged harassment and discrimination complaints, the

court held "[w]hile the conduct at issue may be potentially embarrassing to these

employees (and JPMC) and may negatively impact their career prospects, any

injury the employees may suffer by release of the information is insufficient to rebut

the strong presumption of access to the information at issue here"); General Media,

Inc. v. Shooker, No. 97-cv-510, 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998)

("The public interest in access to the courts, and the court's own interest in allowing

such access, far outweigh Defendant's generalized concern of negative reaction on

his business dealings from the instant lawsuit.").  In addition, the allegations about

each party's rights and responsibilities under the Collaboration Agreement do not

amount to ad hominem attacks or fodder for defamation.  Cf. General Media, 1998
WL 401530 at 13 (finding "sufficient grounds to continue the nondisclosure order for
the papers submitted in conjunction with the instant motions" because the papers
included "certain affidavits . . . contain[ed] allegations that could be construed as ad
hominem attacks on the adverse party" and were "highly susceptible to misuse.")
Accordingly, defendant's asserted interests do not rise to the level of higher values
that have been recognized as justification for sealing.

Defendants also contend that the harm of disclosure would be irreparable
because it would deprive her of the benefit of her bargain should the Court find the
confidentiality provision binding.  Defendant asserts she would not have engaged
plaintiff's services without an assurance that he would keep the arrangement
confidential.  However, courts in this district have repeatedly found that the
preservation of such bargained-for confidentiality does not overcome the
presumption of access to judicial documents.  For instance, in Wolinsky v. Scholastic
Inc., the court dealt with the question of whether to seal an FLSA settlement
agreement that contained a confidentiality provision and had been submitted to the
court for approval.  900 F. Supp. 2d 332, 334 (S.D.N.Y. 2012).  Defendant argued
that confidentiality was a material term of the Agreement constituting part of the
consideration provided by plaintiff; however, the Court found the argument to be
unavailing:

> [T]he mere fact 'that the settlement agreement contains a confidentiality
> provision is an insufficient interest to overcome the presumption that an
> approved FLSA settlement agreement is a judicial record, open to the public.'
> . . . [T]he presumption of public access would become virtually meaningless if

it could be overcome by the mutual interest of the parties in keeping their settlement private.

Id. at 338 (quotation marks and citations omitted).  See also Wells Fargo Bank, N.A. v. Wales LLC, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (holding the fact that the agreement "contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents.'"); Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co., No. 12-cv-3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents.  . . . Respondents may have an action for breach of contract against [petitioner] for its alleged failure to adhere to its obligations under the confidentiality agreement—the Court makes no finding whatsoever on that question."); but see Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364, 377 (S.D.N.Y. 2009) (finding good cause to keep employment and compensation agreements confidential as the employment agreement was confidential by its express terms and plaintiff was prohibited from disclosing its content).

The details of the working relationship and arrangement between the parties lie at the very heart of the litigation.  If the public is to understand the nature of the dispute and the reasons for the court's rulings, access to the judicial documents is essential.  That it is the plaintiff, and not the defendants, who originally invoked the sealing power of the Court is irrelevant in ascertaining the public's right of access.  See Lugosch, 435 F.3d at 122 (holding that a distinction between the party moving for sealing and the party who has put the contested documents in its motion

17

papers is irrelevant to the weight of the presumption).  Hence, given the nature of the dispute and defendant's failure to demonstrate specific instances of particular harm, the public's right of access has not been overcome.

Moreover, plaintiff's role as defendant's editor has been publicly disclosed in the Book's acknowledgements.  Although the scope of the confidentiality provision at issue is broader than this disclosure, the fact that aspects of his involvement in the Book have been revealed to the public weighs against sealing and against a finding of irreparable harm.  See Ashmore v. CGI Grp. Inc., 138 F. Supp. 3d 329, 351 (S.D.N.Y. 2015) (finding defendants' assertion of vague potential harm insufficient to outweigh the strong presumption of access because much of the information that defendants sought to redact had already been publicly disclosed). In addition, continued sealing of the entire case is overly broad and contrary to the general requirement of narrow tailoring.  See Ferguson v. Ferrante, No. 13-cv-4468, 2015 WL 3404140, at *1 (S.D.N.Y. May 27, 2015) (noting that where "some sealing of a judicial document is appropriate," the court should determine "whether partial redaction of the private material is 'a viable remedy,' or whether the document presents 'an all or nothing matter.'" (quoting Amodeo, 71 F.3d at 1053)).

B. Preliminary Injunctive Relief

For the same reasons defendant cannot overcome the presumption of public access to judicial documents, defendant has not made a showing of irreparable harm necessary to justify the extraordinary relief of a preliminary injunction.  "[U]nless a movant can show 'an injury that is neither remote nor speculative, but actual an

18

imminent and that cannot be remedied by an award of monetary damages,' a motion for a preliminary injunction should be denied.'" Earthweb, Inc. v. Schlack, 2000 WL 1093320, at *2 (2d Cir. May 18, 2000) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999)).

Defendant argues that she will suffer two forms of irreparable harm absent an injunction enforcing the Collaboration Agreement's confidentiality clause: first, harm to her professional credibility and therefore her ability to continue in her profession as a journalist; and second, the loss of the benefit of her bargain should the Court determine that the confidentiality provision is contractually enforceable. Defendant has not proffered any specific facts to support the allegation that she will be unable to work as a journalist or will suffer extensive reputational harm among her colleagues. Defendant is, by all accounts, a highly accomplished television personality and political commentator who hosted her own on show on a major network; without any facts to support a finding that her "ability to continue in the profession of her choice" is at serious risk, it is difficult for the Court to conclude that these assertions are anything more than conjecture. (See Mem. in Support at 8.) Defendant's claim is therefore far too speculative to support a finding of imminent irreparable harm. See Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative."). In addition, reputational harm, even to one's career, is generally compensable with money damages: "To the extent such reputational damage occurs, it is of a sort commonly assessed by courts and arbitrators and

19

remedied through monetary awards." <u>Star Boxing, Inc. v. Tarver</u>, No. 02-cv-8446, 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002).

Defendant's claim of irreparable harm from the loss of the benefit of her bargain is also insufficient to support preliminary injunctive relief.  Loss of contracted-for benefits is precisely the kind of harm generally compensated with money damages; it is the movant's burden to show that traditional remedies at law are insufficient for a reason other than simply preserving the benefit of one's bargain.  <u>See, e.g.</u>, <u>In re M.B. Int'l W.W.L.</u>, No. 12-cv-4945, 2012 WL 3195761, at *12 (S.D.N.Y. Aug. 6, 2012), ("Yet although [the movant] has shown convincingly that [defendant] is bound by the Agreement's confidentiality and exclusivity provisions, the record does not establish that a preliminary injunction is necessary to avoid irreparable harm to [movant] in advance of the arbitrator's final judgment."); <u>Best Cellars Inc. v. Grape Finds at Dupont, Inc.</u>, 90 F. Supp. 2d 431, 461 (S.D.N.Y. 2000) (denying a motion for a preliminary injunction because "while the evidence suggests that [defendant] did breach his confidentiality agreement with Best Cellars, there has been no showing of irreparable harm.").

Because defendant has not shown her potential harm from violation of the confidentiality provision to be irreparable, the Court need not reach the other <u>Winter</u> factors regarding likelihood of success on the merits, the balance of equities, or the public interest.  <u>See</u> <u>Winter v. NRDC</u>, 555 U.S. 7, 20 (2008).[2]

---

[2] Although the Court does not find defendant's asserted harm to be irreparable, the Court does not agree with plaintiff that the likelihood of his violation of the confidentiality provision, in the past or in the future, is low.  To the contrary, the Court finds it difficult to account for apparent third-party knowledge of this matter and of the parties involved without concluding that plaintiff or plaintiff's

III.    CONCLUSION

For the foregoing reasons, defendant's motion for a preliminary injunction is

DENIED.

The seal on this matter is hereby lifted.  The Clerk of Court is directed to

unseal this matter and post the filings to the public docket three business days

following the issuance of this order, i.e., **Tuesday, August 1, 2017**.


SO ORDERED.

Dated:          New York, New York
                July 27, 2017

_____
KATHERINE B. FORREST
United States District Judge

---

counsel may have violated this Court's sealing order, and that this violation may have been deliberate.  The Court is particularly troubled by the submission it received from counsel to a third party in unrelated litigation against defendant.  The submission stated, without explanation, that this attorney "inferred" the identities of the parties here and requested information from this lawsuit.  The Court's concern is heighted by the fact that plaintiff's counsel admits to being in direct communication with this attorney, the fact that plaintiff has a longstanding and significant relationship with the relevant client of this attorney, and that defense counsel has consistently asserted that the action before this Court was filed as part of a litigation strategy against his client, but in the other action.