# JUDD BURSTEIN, P.C.
### ATTORNEYS AT LAW

JUDD BURSTEIN*
PETER B. SCHALK**

G. WILLIAM BARTHOLOMEW**
ALI R. JAFFERY**

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY

5 COLUMBUS CIRCLE
1790 BROADWAY
NEW YORK, NEW YORK 10019
TEL: (212) 974-2400
FAX: (212) 974-2944
WWW.BURLAW.COM

12 OLD HILL FARMS ROAD
WESTPORT, CONNECTICUT 06880
TEL: (203) 226-4823

November 2, 2016

**VIA EMAIL and HAND DELIVERY – FILED UNDER SEAL**
Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *Krechmer v. Tantaros, et al.* / Docket No. 16-cv-7820

Dear Judge Forrest:

      I write (a) to alert Your Honor to what would appear to be a direct violation of Your Honor's and Judge Seibel's sealing orders, and (b) to request an immediate conference this week – subject to Your Honor's schedule – to address a number of related issues described below.

      At present, there are two proceedings pending between Defendant Andrea Tantaros ("Ms. Tantaros") and Fox News Network, LLC ("Fox News"): (a) a lawsuit brought in Supreme Court, New York County ("NY Cty. Case") by Ms. Tantaros against Fox News, former Fox News President Roger Ailes, and other current Fox News employees seeking damages for sexual harassment, hostile workplace and retaliation, and (b) an arbitration commenced by Fox News alleging that Ms. Tantaros breached the provisions of her employment agreement relating to the same book that is at issue in this case.

      Fox News has moved to stay the NY Cty. Case, and that motion is *sub judice*. At the same time, the Arbitration Panel has set a June 2017 date for a hearing, but has stayed all discovery in the arbitration until the Court rules on whether the NY Cty. Case should be stayed. However, last week, the Arbitration Panel granted Fox News's request to set a hearing date so that it could subpoena documents in advance of the hearing.

      Yesterday, I learned why Fox News had made this request, as it submitted a subpoena to the Arbitration Panel for signature. (Exhibit A hereto). The entire subpoena asks for all documents concerning Plaintiff Michael Krechmer's ("Plaintiff") involvement in the writing of Ms. Tantaros's book. But, most important, the last request is for "[a]ll documents filed in any civil litigation brought by you against Tantaros." (Exhibit A at Request No. 8). **This last request was surely not**

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
November 2, 2016
Page 2

**a shot in the dark**, especially considering that it is a one-way request only seeking information about a suit brought by Plaintiff "**against** Tantaros" (emphasis supplied), and is not a neutral demand for information concerning litigations brought by either party.

Furthermore, the subpoena specifically asks for communications with me. (Exhibit A at Request No. 3). Prior to the filing of this case, I never had any communications with Plaintiff's counsel. Indeed, Plaintiff's counsel initially reached out to Ms. Tantaros's transactional counsel, Joseph J. Cane, concerning service. Moreover, as Fox News well knows, I specialize in litigation, and there would have been no reason for it to assume that I had any connection to Ms. Tantaros's book unless it knew about this lawsuit.

As Your Honor may recall, my initial letter to the Court, sent on October 11, 2016, specifically alleged that the Complaint in this case was filed at the behest of Fox News:

> Moreover, the Complaint in this case must be viewed in the context of Ms. Tantaros's pending sexual harassment suit against Fox News, Roger Ailes and others.... Significantly, Ms. Tantaros's claims been corroborated by her former therapist, who, following Ms. Tantaros's limited waiver of the psychotherapist-patient privilege, has submitted an affidavit ... stating that Ms. Tantaros told her about the conduct alleged in her complaint at the time it was happening in 2014 and 2015 -- long before anyone could claim that Ms. Tantaros had a motive to fabricate. For reasons I would explain but for the page limit for this letter, I believe that Fox News is working in conjunction with Plaintiff to use this case as a means of discrediting Ms. Tantaros. Were this false, frivolous and scandalous case to be unsealed prior to the Court deciding whether it should be dismissed and whether Plaintiff and counsel should be sanctioned, Fox News's vaunted public relations machine will use the Complaint to bolster its claim that Ms. Tantaros's allegations in her lawsuit are false.

(References to exhibits attached to the letter omitted)

Given this new subpoena, it is clear that counsel for Plaintiff and Fox News have been working together, and that the subpoena submitted by Fox News to the Arbitration Panel raises, at the least, a very strong inference that Plaintiff has been sharing information with Fox News about this case in violation of the sealing orders issued by Your Honor and Judge Seibel.

It is also noteworthy that Mr. Wolman's response to my initial allegation about Fox News was crafted in a way to avoid answering my allegation about Fox News's connection to this case: "[T]here is nothing improper were Plaintiff to be working in conjunction with Fox News. But Defendants are misguided in any belief that the instant matter was filed to help Fox News." Plainly,

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
November 2, 2016
Page 3

Mr. Wolman owed a duty of candor to the Court and should have admitted that he was actually working hand in glove with Fox News.

    As I am tied up in a separate arbitration hearing all of next week, I ask that, subject to Your Honor's schedule, Your Honor hold a conference this week at which counsel **and** Plaintiff are required to attend and bring with them **all** documents referring to or reflecting any communications between (a) Fox News, Roger Ailes, any other defendant in the NY Cty. Case, and/or any lawyer representing any defendant in the NY Cty. Case, and (b) Plaintiff and/or any lawyer who represents him.

    I believe that the following issues need to be discussed at that conference: (a) whether Plaintiff and/or his counsel should be held in contempt, (b) how I can object to the subpoena in light of the sealing order, and (c) how, consistent with the sealing order, I can amend my complaint in the NY Cty. Case to allege that Fox News tortiously interfered with the confidentiality provision of the Collaboration Agreement.

Respectfully yours,

Judd Burstein

Encl.
cc:    Jay M. Wolman, Esq. (Via email; w/ encl.)

# EXHIBIT A

## The Arbitration Tribunals of the
## American Arbitration Association

In the Matter of the Arbitration between

FOX NEWS NETWORK, LLC,

                            Claimant,

                v.

ANDREA TANTAROS,

                           Respondent.

**Case 01-16-0001-7288**

**Subpoena Duces Tecum**
**(Documents)**

FROM THE PEOPLE OF THE STATE OF NEW YORK

To:        Michael S. Krechmer a/k/a Michael Malice
            945 4th Avenue, Apt. 3
            Brooklyn, NY 11232

GREETING:

      WE COMMAND YOU that, all business and excuses being laid aside, you appear and attend before Howard Edelman, Hon. Paul Kehoe and Ralph Berger, arbitrators, acting under the arbitration law of this state, at

            AMERICAN ARBITRATION ASSOCIATION
            150 East 42nd Street, 17th Floor
            New York, NY 10017

On June 9, 2017 at 10:00 AM, to testify and give evidence in a certain arbitration, then and there to be held between the above entitled parties, and that you bring with you and produce certain documents identified in Schedule A, annexed hereto, now in your custody.

                                            Signed: _____

                                            Signed: _____
                                                           Arbitrators

Requested by:   Fox News Network, LLC
                 Linda C. Goldstein, Dechert LLP
                 1095 Avenue of the Americas
                 New York, NY 10036
                 (212) 698-3500
Dated: November 1, 2016

## SCHEDULE A

### Definitions

1. The terms "**You**" or "**Yours**" or "**Yourself**" refer to Michael S. Krechmer a/k/a Michael Malice.

2. The terms "**Claimant**" or "**Fox News**" refer to Fox News Network, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

3. The term "**Respondent**" or "**Tantaros**" refers to Andrea Tantaros.

4. The term **"person"** means any natural person, or any business, legal, or governmental entity or association.

5. The term "**concerning**" means relating to, referring to, describing, evidencing or constituting.

6. The term "**communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  This includes, but is not limited to any statement, admission, denial, inquiry, discussion, conversation, negotiation, agreement, contract, understanding, meeting, telephone conversation, letter, correspondence, memorandum, note, telegram, telex, e-mail, voice mail, text, diskette, advertisement or any other form of oral, written, electronic or other exchange of words, thoughts or ideas to any other person or entity, whether in person, in a group, in a professional or private capacity, by telephone, by letter, by Telex, by e-mail, by posting to a website, social media platform or other dissemination or publication via the internet, or by other process, electronic or otherwise.

7. The term "**document**" (or "**documents**") includes writings, drawings, maps, designs, plans, graphs, charts, photographs, video recordings, sound recordings, voice mail, images, and other data or data compilation, stored in any medium from which information can be

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

**Instructions**

1.     Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

2.     A document is deemed in your actual or constructive possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.  For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody, or control if it is accessible on a network or server that you maintain.

3.     The specifications of this subpoena are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive; the word "all" means "any and all" and the word "any" means "any and all."

4. In producing responsive documents, you should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including your attorneys or their agents, employees, or representatives.

5. You are to produce any and all drafts and copies of each document that is responsive to any specification of this subpoena and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

6. With respect to Electronically Stored Information ("ESI"):

All electronic mail and spreadsheets responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

All other documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

All documents responsive to this subpoena are to be produced with the metadata normally contained within such documents, and the necessary Concordance or Introspect load files. If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Plaintiffs' counsel. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost you claim is

associated with the search or production of such ESI.

7. All documents that are physically attached to each other when located for production are to be left so attached when produced. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs or any other method, are to be left so segregated or separated when produced. Documents are to be produced in the order in which they were maintained and in the files in which they were found.

8. If any document, or any part of a document, called for by this subpoena has been destroyed, discarded, lost, or otherwise disposed of or placed beyond your custody or control, you are to furnish a list identifying each such document by: (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

9. Each specification of this subpoena requires production in full, without abbreviation, redaction, or expurgation, of any responsive documents. If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

10. Documents not otherwise responsive to specifications of this subpoena are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to this subpoena, or if such documents are attached to documents responsive to this subpoena and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

- 6 -

11. If in responding to this subpoena, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

12. If a privilege is claimed as the basis for not producing any document, you are to furnish a privilege log setting forth, for each such document: (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (ii) the type of document, e.g., letter, memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients to each other.

13. If after producing the documents or things you obtain or become aware of any further documents or things, which are responsive to this subpoena, you are required to timely produce such additional documents or things.

14. The requests contained in this subpoena shall be deemed continuing, and any information, communication or document obtained subsequent to production which would have been provided or produced had it been available or its existence been known at the time of the response shall be provided or produced forthwith in the form of a supplemental response.

**Documents To Be Produced**

1. All documents and communications concerning the book, *Tied Up In Knots: How Getting What We Wanted Made Women Miserable*, including all versions of that book (collectively, '*Tied Up in Knots*").

2. All documents and communications concerning the proposed book, *Flop Culture: How Radical Feminism Has Made Women — and Men — Miserable*, including all versions of that proposed book (collectively, "*Flop Culture*").

3. All communications with Tantaros or any agent or representative of Tantaros, including her counsel, Judd Burstein and/or Joseph J. Cane, Jr., concerning *Tied Up in Knots*, *Flop Culture*, any other book or proposed book by Tantaros, or Fox News's book guidelines.

4. All communications with Fox News, or any agent or representative of Fox News, concerning *Tied Up in Knots*, *Flop Culture*, any other book or proposed book by Tantaros, or Fox News's book guidelines.

5. All drafts and manuscripts of *Tied Up in Knots, Flop Culture*, or any other book or proposed book by Tantaros.

6. All notes, audio and video recordings of your communications with Tantaros.

7. All documents and communications concerning Tantaros' employment at Fox News.

8. All documents filed in any civil litigation brought by you against Tantaros.