UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICHAEL KRECHMER a/k/a                          16-CV-7820 (KBF)
"Michael Malice," an Individual

                                    *Plaintiff*,

      -against-

ANDREA K. TANTAROS, an individual; and
ASTERO, LLC, a New Jersey limited liability company

                                  *Defendants*.
-----------------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR <u>PRELIMINARY INJUNCTION</u>

                                                                JUDD BURSTEIN, P.C.
                                                                5 Columbus Circle, Suite 1501
                                                                 New York, New York 10019
                                                                 Tel:   212-974-2400
                                                                 Fax:   212-974-2944
                                                                 Email: <u>jburstein@burlaw.com</u>
                                                                 *Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.     The Collaboration Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.     Plaintiff Alleges that the Parties Changed the Deal . . . . . . . . . . . . . . . . . . . . . 3

   C.     The Parties' Relationship Deteriorates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   D.     Plaintiff Files this Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I

THE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II

MS. TANTAROS'S CAREER AS A JOURNALIST WILL BE IRREPARABLY
HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . 5

POINT III

DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS, AND,
AT MINIMUM, RAISE SUFFICIENTLY SERIOUS QUESTIONS REGARDING
THE MERITS OF PLAINTIFF'S CLAIM THAT THE PARTIES TERMINATED
THE COLLABORATION AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

*Bateman v. Ford Motor Co.*,
   302 F.2d 63 (3d Cir. 1962) ................................................. 8

*Dino DeLaurentiis Cenematografica, S.p.A. v. D-150, Inc.*,
   366 F.2d 373 (2d Cir. 1966) ............................................... 8

*Fairfield County Medical Ass'n v. United Healthcare of New England*,
   985 F. Supp. 2d 262 (D. Conn. 2013) ..................................... 5

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007) ................................................ 5

*LaForest v. Former Clear Air Holding Co., Inc.*,
   376 F.3d 48 (2d Cir. 2004) ................................................ 6

*Madison Square Garden Boxing, Inc. v. Shavers*,
   434 F. Supp. 449 (S.D.N.Y. 1977) ........................................ 8

*NXIVM Corp. v. Ross Institute*,
   364 F.3d 471 (2d Cir. 2004) ............................................... 5

*Semmes Motors, Inc. v. Ford Motor Co.*,
   429 F.2d 1197 (2d Cir. 1970) .............................................. 8

*Tom Doherty Assocs., Inc. v. Saban Ent'mt, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ................................................ 10

*Valley v. Rapides Parish School Bd.*,
   118 F.3d 1047 (5th Cir. 1997) ............................................. 8

## STATUTES AND OTHER AUTHORITIES

17 U.S.C. § 1202 .................................................... 7

28 U.S.C. § 2201 .................................................. 4, 7

Fed. R. Civ. P. 12(d) ................................................. 5

Fed. R. Civ. P. 65 ................................................ 1, 11

## INTRODUCTION

Defendants Andrea Tantaros ("Ms. Tantaros") and Astero, LLC ("Astero," and collectively with Ms. Tantaros, "Defendants"), hereby submit this Memorandum of Law in support of their Motion (a) pursuant to Fed. R. Civ. P. 65, for an order granting a preliminary injunction prohibiting Plaintiff Michael Krechmer ("Plaintiff") from violating the confidentiality provision (paragraph 10) of the Collaboration Agreement between Plaintiff and Defendants executed May 4, 2015; during the pendency of any sealing order in this case, and (b) for such other and further relief as this Court deems just and proper.

## STATEMENT OF FACTS

The facts relevant to the determination of this Motion are well known to the Court, and are set forth in Plaintiff's Verified Complaint ("Complaint" or "Compl.") and the parties' submissions in support, of and in opposition to, Defendants' Motion to Dismiss, which has been converted by this Court into a Motion for Summary Judgment. The facts set forth in these submissions are incorporated herein by reference, and are briefly summarized below.

### A.     The Collaboration Agreement

Ms. Tantaros is a well-known television journalist who specializes in political analysis and commentary. (Compl. ¶ 2). She hosted the popular Fox News program *The Five*, and was one of the co-hosts of the Fox News program *Outnumbered*. In April 2016, Fox News suspended her from the network in retaliation for her sexual harassment claims against Roger Ailes and other Fox News executives. (*See* Complaint filed by Ms. Tantaros in the case captioned *Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016, (N.Y. Sup. Ct. N.Y. Cty., Aug. 22, 2016).

According to the allegations in Plaintiff's Verified Complaint, on or about May 4, 2015, Plaintiff and Defendants entered into a written agreement (the "Collaboration Agreement") for

Plaintiff to assist Ms. Tantaros in writing her book, *Tied Up in Knots* (the "Book"). (*Id.* ¶ 11). The Collaboration Agreement described the work to be performed by Plaintiff, in relevant part, as follows[1]:

> Collaborator will edit and rewrite the work. Specifically, Collaborator's duties shall include, but not be limited to: writing original material, with attribution from all other sources; making revisions in response to editorial changes request by Client and by publisher; and assuring that the Work is grammatically correct, unified, coherent and clear in content.

(Ex. 1 to Compl. ¶ 2.1) (Emphasis supplied).

The Collaboration Agreement included a confidentiality provision that provided as follows:

> Client's confidentiality **is essential to this agreement**. Collaborator may not discuss or mention his involvement in the work in any venue without prior approval, in writing, from Client. Confidential Information means any non-public information disclosed by Client to Collaborator. Client's Confidential Information will be held in confidence by Collaborator and will not be disclosed to any third party or otherwise made public. Collaborator will: (a) not use the Confidential Information for any purpose other than in the performance of its obligations under this Agreement; (b) take all reasonable and necessary steps to ensure that its employees, principals, officers, agents, and contractors, representatives who have access to Confidential Information comply with Collaborator's obligations pursuant to this Section; (c) disclose any Confidential Information as required in response to a valid court order or other legal process, but only to the extent required by that order or process and only after Collaborator has provided Client with written notice and the opportunity for Client to seek a protective order or confidential treatment of such Confidential Information (with the reasonable assistance of Collaborator, if Client so requests); and (d) return all Confidential Information to Client or destroy the same, at the Client's request, by no later than fifteen (15) calendar days after such request or when Collaborator no longer needs Confidential Information for its purposes.

(*Id.* ¶ 10) (Emphasis supplied).

---

[1] In the Collaboration Agreement, Plaintiff is referred to as the "Collaborator" and "Andrea Tantaros of Astero LLC" is referred to as the "Client."

2

### B. Plaintiff Alleges that the Parties Changed the Deal

Plaintiff alleges that in July 2015, he and Ms. Tantaros agreed to terminate the Collaboration Agreement and enter into a new, separate, completely oral "Ghostwriting Agreement," pursuant to which Plaintiff would ghostwrite the Book in exchange for a flat fee of $150,000. (*Id.* ¶¶ 17-19, 23, 25). Plaintiff contends that the payment schedule of the Collaboration Agreement was incorporated into the Ghostwriting Agreement, but that no other provisions were incorporated. (*Id.* ¶¶ 32-33).

Plaintiff further alleges that Defendants did not want to negotiate this new agreement with Plaintiff's agent because Ms. Tantaros "feared" that (a) it would "cause her editor to discover that she was not writing the book herself;" (b) "Harper Collins [the Book's publisher] would cancel the book if they discovered that there were any negative issues in the writing process, particularly since she was already running more than two years behind schedule;" and (c) she would "suffer professional repercussions and personal humiliation if her colleagues at Fox News discovered that the publication agreement with Harper Collins was cancelled." (*Id.* ¶¶ 20-22).

### C. The Parties' Relationship Deteriorates

On July 30, 2015, Defendants allegedly made the first payment of $15,000 to Plaintiff under the Ghostwriting Agreement. (*Id.* ¶ 36). Plaintiff alleges that this $15,000 payment was the last he received from Defendants, so that at the time the Complaint was filed he was paid a total of $30,000 for his work on the Book. (*Id.* ¶¶ 36-37). He claims that Defendants did not pay him after he delivered the completed manuscript to Harper Collins on October 4, 2015, nor when Harper Collins officially accepted the manuscript on January 20, 2016, as required by the payment schedule in the Collaboration Agreement. (*Id.* ¶¶ 41-46).

Having received no further payment since July 30, 2015, Plaintiff emailed Defendants on March 2, 2016 to detail how payments should be apportioned relative to the initial Collaboration Agreement and the subsequent Ghostwriting Agreement. (*Id.* ¶ 53). On March 17, 2016, Ms. Tantaros allegedly emailed Plaintiff to tell him that she was preparing financial disbursements for the Book, and to demand that he sign a non-disclosure agreement. (*Id.* ¶ 54). Plaintiff refused to sign the non-disclosure agreement, and Ms. Tantaros sent him a further email which he inferred to mean that he would not be paid unless he signed the non-disclosure agreement. (*Id.* ¶¶ 60-62).

Then, on March 28, 2016, Plaintiff alleges that he received an email from Defendants' counsel accusing him of disclosing confidential information in breach of the Collaboration Agreement. (*Id.* ¶ 63). Plaintiff claims that Defendants' counsel demanded that he sign the non-disclosure agreement and an affidavit disclaiming breach if he wished to avoid a lawsuit. (*Id.* ¶ 64). Plaintiff apparently did not sign any such non-disclosure agreement or affidavit.

### D.   **Plaintiff Files this Lawsuit**

On October 6, 2016, Plaintiff filed his Complaint under seal. In the Complaint, Plaintiff claims that he is the author and copyright owner of the Book, and that Defendants breached the Collaboration and Ghostwriting Agreements by failing to pay him. Plaintiff seeks (1) a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that he is the true author and copyright owner of the Book (First Claim for Relief); (2) damages and injunctive relief arising from Defendants' allegedly false representations that Ms. Tantaros is the author and copyright owner of the Book in violation of the DMCA (Second Claim for Relief); and (3) damages for Defendants' breach of the Collaboration and Ghostwriting Agreements – along with their attendant covenants of good faith and fair dealing (Third through Sixth Claims for Relief).

4

On October 19, 2016, Defendants filed their motion to dismiss the Complaint. On October 27, 2016, Plaintiff filed his memorandum of law in opposition to Defendants' motion to dismiss. On October 28, 2016, this Court entered an Order pursuant to Fed. R. Civ. P. 12(d) converting Defendants' motion to dismiss into one for summary judgment.

## ARGUMENT

### POINT I:   STANDARD OF REVIEW

"The fundamental purpose in granting preliminary injunctive relief has always been to preserve the court's ability to later render a meaningful final decision on the merits by preventing irreparable harm in the interim." *Fairfield County Medical Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013) (citation and internal quotation marks omitted). In this Circuit, a court shall grant a motion for a preliminary injunction only where the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of the hardships tipping decidedly in movant's favor." *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 476 (2d Cir. 2004).

### POINT II:   MS. TANTAROS'S CAREER AS A JOURNALIST WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION

The Second Circuit has emphasized that "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and that, accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for issuance of an injunction will be considered." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation and internal quotation marks omitted). To satisfy the irreparable harm requirement, a party "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be

5

remedied if a court waits until the end of trial to resolve the harm." *Id.* (citation and internal quotation marks omitted). To obtain injunctive relief, the party seeking it must show that the harm is not compensable in terms of money damages. *LaForest v. Former Clear Air Holding Co., Inc.*, 376 F.3d 48, 55 (2d Cir. 2004).

As noted above, Ms. Tantaros is a well-known television journalist, therefore, her credibility is her trade. If Plaintiff's role in helping Ms. Tantaros write the Book were revealed, it would severely undermine her credibility in the eyes of her colleagues, fans, publisher, and the wider news media world.

Because keeping her arrangement with Plaintiff confidential is critically important to Ms. Tantaros, she included a crystal clear confidentiality provision in the Collaboration Agreement. This provision, in sum, prevents Plaintiff from disclosing his role helping Ms. Tantaros write the Book without Ms. Tantaros's prior approval. (*See* Ex. 1 to the Compl. ¶ 10). The provision even begins by stating that "**Client's confidentiality is essential to this agreement**." (*Id.*) (emphasis supplied). Indeed, confidentiality was so important to Ms. Tantaros that she would not have engaged Plaintiff's services without an assurance that he would keep the arrangement confidential. (Cite Tantaros Declaration).

Plaintiff clearly recognizes how important confidentiality is to Ms. Tantaros. In his Verified Complaint, he states that Ms. Tantaros feared that if Plaintiff's role in regards to the Book were to be disclosed, Harper Collins would cancel the Book and she would suffer professional repercussions and personal humiliation. (Compl. ¶¶ 21-22). Now that the Book has been published, the personal humiliation and professional repercussions that Ms. Tantaros would suffer if Plaintiff's role were disclosed would be greatly magnified. She would have to acknowledge that Plaintiff had a role in writing the Book that she had not previously disclosed,

which would greatly diminish her credibility in the eyes of her colleagues in her industry and her fans.

Plaintiff's own Verified Complaint and a letter written by his counsel make clear that there is an imminent risk that Plaintiff will disclose his role helping Ms. Tantaros write the Book. Plaintiff wants to be recognized as the true author and copyright owner of the Book. His First Cause of Action seeks a declaration pursuant to 28 U.S.C. § 2201(a) stating as much. (*See* Compl. ¶ 88). In his Second Claim for Relief, Plaintiff claims that Defendants violated 17 U.S.C. § 1202 by falsely causing Ms. Tantaros to be identified in the Book as the author and copyright owner of the Book. (*See* Compl. ¶¶ 90-98). Furthermore, Plaintiff's counsel sent a letter to Ms. Tantaros's publisher, Harper Collins, on June 7, 2016, in which he represented that he was the "ghostwriter" of the Book. (*See* Exhibit C to the Declaration of Judd Burstein, Esq., dated October 19, 2016, which was filed in support of Defendants' motion to dismiss). Plaintiff is chomping at the bit to be recognized as the author and copyright owner of the Book, and therefore a preliminary injunction is needed to ensure that Plaintiff adheres to the promise he made in the Collaboration Agreement.

Given the severe harm that would be done to Ms. Tantaros's reputation, credibility, and career if Plaintiff's role in helping her write the Book were disclosed, mere monetary damages would not be enough to make Ms. Tantaros whole. As noted above, Ms. Tantaros makes her living as a journalist, and therefore, her credibility is her most valuable asset. Should Plaintiff be permitted to represent that he is the true author of the Book, and that Ms. Tantaros has been making the false claim on the Book's jacket and elsewhere that she is the author, her career as a journalist would be severely damaged. The negative repercussions of Plaintiff's statements to Ms. Tantaros's career would be wide-spread, long-lasting, and impossible to estimate in

monetary terms. *See Dino DeLaurentiis Cenematografica, S.p.A. v. D-150, Inc.*, 366 F.2d 373, 375-76 (2d Cir. 1966) (noting that the difficulty of calculating monetary damages "is especially common when damage to reputation, credibility or good will is present." (citing cases)).

Indeed, permitting Plaintiff to state that he is the author and copyright owner of the Book in contravention of his promise to not do so in the Collaboration Agreement could jeopardize Ms. Tantaros's ability to continue in the profession of her choice. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) ("[T]he right to continue a business in which William Semmes has engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not live on the income from a damages award.").[2] Being a journalist is immeasurably important to Ms. Tantaros, and mere monetary damages would not even begin to make her whole should her career be put in jeopardy by Plaintiff's statements. *See id.* ("'[A] judgment for damages acquired years after his franchise has been taken away and his business obliterated is small consolation to one who, as here, has had a Ford franchise for many years.'" (quoting *Bateman v. Ford Motor Co.*, 302 F.2d 63, 66 (3d Cir. 1962))). Accordingly, a preliminary injunction preventing Plaintiff from violating the confidentiality provision of the Collaboration Agreement is necessary to ensure that Defendants can retain the benefit of their bargain in the Collaboration Agreement pending the outcome of this case.

---

[2] *See also Madison Square Garden Boxing, Inc. v. Shavers*, 434 F. Supp. 449, 452 (S.D.N.Y. 1977) ("[W]ere Shavers with impunity able to simply disavow a prior agreement with the Garden . . . [t]he Garden's credibility could be destroyed in the eyes of boxing managers, as well as various media representatives . . . ."); *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) ("[T]he [School] Board's biased finding of inefficient and incompetence will inflict such severe injury to [plaintiff's] professional reputation that a monetary award would likely be inadequate and almost certainly speculative.").

8

**POINT III: DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS, AND, AT MINIMUM, RAISE SUFFICIENTLY SERIOUS QUESTIONS REGARDING THE MERITS OF PLAINTIFF'S CLAIM THAT THE PARTIES TERMINATED THE COLLABORATION AGREEMENT**

Plaintiffs' claim that the parties agreed to terminate the Collaboration Agreement and enter into a new, separate Ghostwriting Agreement – that did not contain a confidentiality provision – is completely without merit. The reasons for this are detailed in Defendants' memorandum of law in support of their motion to dismiss and supplemental memorandum of law in support of their converted motion for summary judgment. (*See* MOLs). Defendants' arguments as set forth in these memoranda of law are incorporated herein by reference, and are briefly summarized below.

The crux of Plaintiff's lawsuit is his claim that the parties terminated the Collaboration Agreement and entered into a new, separate Ghostwriting Agreement. (Compl. ¶¶ 23-24). The Collaboration Agreement contains clauses that (a) prevent oral modification of the Agreement, and (b) clearly state that Plaintiff does not have any ownership rights to the Book. (See Ex. 1 to Compl. ¶¶ 4, 5.1, 10). Accordingly, Plaintiff must, at minimum, prevail on his allegations that the parties cancelled the Collaboration Agreement, or rescinded it, in order to recover the extra compensation he claims he is due and avoid the Collaboration Agreement's provisions which disclaim his ownership rights to the Book and bind him to confidentiality.

Plaintiff's allegations in this regard, though, are fatally contradictory. (MTD MOL at 13-19). Furthermore, letters authored by Plaintiff's current and former counsel contradict his allegation that the parties terminated the Collaboration Agreement. (*See id.* at 20-23). Plaintiff also cannot escape the strictures of the Collaboration Agreement by claiming that Defendants' failure to pay him rescinded the agreement, because Defendants' mere failure to pay is not a material breach of the Collaboration Agreement. (*See id.* at 23-25).

Given the lack of merit of Plaintiff's claim that the parties terminated or rescinded the Collaboration Agreement, this Court is likely to hold that the Collaboration Agreement and its attendant confidentiality clause remain in effect. At minimum, there are sufficiently serious questions regarding the merits of Plaintiff's claim to justify imposing Defendants' requested preliminary injunction.

Should the Court find only that there are sufficiently serious questions regarding the merits of Plaintiff's claim, Defendants' requested preliminary injunction would still be proper because the balance of hardships tips in Defendants' favor. As noted above, if Plaintiff were permitted to disclose his role in helping Ms. Tantaros write the Book, she would lose the benefit of her bargain and her career as a journalist would be irreparably harmed. By contrast, if this Court were to impose Defendants' requested preliminary injunction, it would simply maintain the status quo pending the resolution of this case. *See Tom Doherty Assocs., Inc. v. Saban Ent'mt, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (noting that mandatory injunctions, which "alter the status quo by commanding some positive act," require a higher burden of proof).

## CONCLUSION

Wherefore, for the foregoing reasons, as well as those set forth in Defendants' papers in support of their motion to dismiss as converted to a motion for summary judgment and for related relief, Defendants respectfully request that this Court grant their motion (a) pursuant to Fed. R. Civ. P. 65, for an order granting a preliminary injunction prohibiting Plaintiff from violating the confidentiality provision of the Collaboration Agreement; and (b) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      November 21, 2016

      Respectfully submitted,

      JUDD BURSTEIN, P.C.

      By: _____
         Judd Burstein
      5 Columbus Circle, Suite 1501
      New York, New York 10019
      Tel.: (212) 974-2400
      Fax: (212) 974-2944
      jburstein@burlaw.com
      *Attorneys for Defendants*