UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL KRECHMER a/k/a
"Michael Malice," an individual,

                                                                        16-CV-7820 (KBF)

                                 *Plaintiff*,

   -- against --

ANDREA K. TANTAROS, an individual; and
ASTERO, LLC, a New Jersey limited liability company,

                                 *Defendants*.
------------------------------------------------------------------X

## AMENDED COUNTER-STATEMENT PURSUANT TO LOCAL RULE 56.1(b)

      Pursuant to Rule 56.1(b) of the Local Rules of this Court, Defendants Andrea Tantaros ("Tantaros") and Astero, LLC ("Astero") (collectively, "Defendants") submit the following response to Plaintiff Michael Malice's ("Malice") Statement of the Material Facts ("Malice's Statement") as to which he contends that there is no genuine issue to be tried:

      1.     Defendants are unaware of the truth of Paragraph 1 of Malice's Statement, but allege that this Paragraph is entirely irrelevant.

      2.     Admitted.

      3.     Admitted.

      4.     Admitted.

      5.     Admitted

      6.     Denied. Tantaros entered into her contract with HarperCollins Publishers LLC ("HarperCollins") in February of 2014. (Declaration of Andrea Tantaros, dated November 21, 2016, ("Tantaros Dec.") at ¶ 4, Exhibit ("Exh.") A thereto). In addition, Denied that Tantaros did not make significant progress in writing the book for two years. (*See generally* Tantaros Dec.)

      7.     Denied. (*See* Tantaros Dec. at ¶ 8, Exhs. C-E thereto)

8. Admitted.

9. Admitted.

10. Denied, in that Malice and Tantaros began working on *Tied Up in Knots* (the "Book") as early as April 12, 2015. (*See* Tantaros Dec. at ¶ 15, Exh. J thereto)

11. Admitted. However, Malice's description of the Collaboration Agreement is misleading in that omits the fact that the Collaboration Agreement required Malice to "writ[e] original material...." (Tantaros Dec. at ¶ 56, Exh. P thereto at § 2.1).

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted

16. Denied. (*See* Tantaros Dec. at ¶¶ 8, 18-20, 22-29, Exhs. M-O, Q-W, and KK thereto) Moreover, Exh. 9.5 to Malice's Declaration does not support, even inferentially, the claim that "Defendant Tantaros struggled to produce anything for Mr. Malice to edit."

17. Admitted.

18. Admitted.

19. Denied. (*See* Tantaros Dec. at ¶ 38, Exhs. Y, Z stating "In addition, the first chapter of Exhibit Z was a version of a 'Marriage Chapter' that I had sent to malice almost three months earlier on June 8, 2015). Furthermore, Exh. 11 to Malice's Declaration does not support, even inferentially, the claim that "One of the last chapters Ms. Tantaros would attempt to write was the 'Marriage Chapter,' which she sent to Mr. Malice on June 18, 2015."

20.     Denied, in that Exh. 12 to Malice's Declaration is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d) because (a) as shown by the gaps in dates between texts, it is an incomplete, cherry-picked summary of supposed text messages between Tantaros and Malice which denies Tantaros the opportunity to show other alleged texts in the complete summary which would place the alleged texts quoted by Malice in context, and (b) Malice has failed to provide Defendants with the underlying original documents or electronic data. Further, that Malice may have asked Tantaros when she was going to finish the "Tinder chapter" is inconsistent with Malice's claim that he wrote the chapter. Moreover, the sections of Exh. 21 which quotes from Exh. 12 are entirely misleading because Malice has left out the following other portions of Exh. 12: Tantaros (a) stating that she had "[w]orked on tinder today. Going well" (*id.*, at 12), (b) stating that she was "[g]oing to finish on plane tomorrow" (*id.*), (c) offering to "send [Malice] what I have on the tinder portion," (*id.*, at 13), (d) agreeing to a deadline of the following Tuesday (*id.*), (e) agreeing to meet with Malice on that day (*id.*, at 14). In addition, there are other portions of Exh. 12 which contradict the allegation set forth in Paragraph 20: (a) Malice's August 16, 2015 purported message statement, at Page 22 of Exh. 20, that "even if other people have the same conclusions as you re: tinder, they're not putting it in a broader context like you are." In addition, Exh. 13 to Malice's Declaration shows that Tantaros did in fact deliver her chapter on Tinder to Malice on July 16, 2016, plainly after she had met with Malice the preceding Tuesday. Finally, another exhibit to Tantaros' Declaration shows that she continued to write the Tinder chapter. (*See* Tantaros Dec. at ¶ 29, Exh. W thereto)

21.     Denied. As noted above, Exhs. 13 and 14 to Malice's Declaration show that Tantaros wrote the Tinder Chapter.

22.  Denied, in that Exh. 14 to Malice's Declaration shows the exact opposite of what Malice alleges because it merely shows that he sent Tantaros proposed various editorial changes, suggestions, and changes on the Tinder chapter less than 8 hours after she had sent it to him.

23.  Denied, in that Exh. 15 to Malice's Declaration is inadmissible because it does not show, directly or indirectly, that Tantaros was stating to Malice that she had no time to work on the Book. Moreover, the fact that Tantaros wanted to meet with Malice to discuss more "interviews" shows that Tantaros was providing interviews for Malice to use in drafting portions of the Book **before** the July 21, 2015 date that Malice claims that parties entered into the supposed Ghostwriting Agreement. Hence, the process which Malice says changed with the new Ghostwriting Agreement was the same process used prior to the time the parties supposedly entered into that Agreement. Further, the process suggested by Tantaros was completely consistent with Section 2.1 of the Collaboration Agreement, which required Malice to "writ[e] original material." (*See* Tantaros Dec. at ¶ 21, Exh. P thereto) Further, Tantaros was continuing to directly write other portions of the Book herself. (*See* Tantaros Dec. at ¶¶ 35-50)

24.  Denied. (*See* Tantaros Dec. at ¶ 35)

25.  Denied. (*See* Tantaros Dec. at ¶ 30)

26.  Denied. (*See* Tantaros Dec. at ¶ 30) Defendants further allege that it is absurd for Malice to allege that Tantaros feared that her editor would discover that she was working with Malice, as Tantaros sent her editor an email disclosing that she wanted to work with Malice. (*See* Tantaros Dec. at ¶ 10, Exh. F. thereto)

27.     Denied. (*See* Tantaros Dec. at ¶ 30) Defendants further allege that it is absurd for Malice to allege that Tantaros feared that HarperCollins would discover that she was working with Malice because, as noted above in Paragraph 26, Tantaros sent her editor an email disclosing that she wanted to work with Malice. As such, HarperCollins knew that Tantaros was working with Malice. (*See* Tantaros Dec. at ¶ 10, Exh. F thereto; Exh. 29 to Malice's Declaration) Moreover, as of July 2015, the Book was not remotely two years beyond schedule. (*See* Tantaros Dec. at ¶ 6, Exh. B thereto)

28.     Denied. (*See* Tantaros Dec. at ¶¶ 6, 10, 30)

29.     Denied. (*See* Tantaros Dec. at ¶¶ 6, 10, 30)

30.     Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

31.     Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

32.     Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

33.     Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

34.     Admitted, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

35.     Admitted, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

36.     Admitted, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

37.     Admitted, in that that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

38.     Denied, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

39. Admitted, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

40. Denied, in that there never was a Ghostwriting Agreement entered into by Malice and Tantaros, and also because Tantaros was still writing the Book herself. (*See* Tantaros Dec. at ¶¶ 30, 33-34) Moreover, Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 40 of Malice's Statement because, for the reasons identified in Paragraph 20 above, <u>Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). In addition, the quotation used to support Paragraph 40 of Malice's statement is plainly taken out of context, in that the parties are plainly speaking about Tantaros being upset over another, entirely separate, matter. Further, pursuant to the terms of the Collaboration Agreement, (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at § 2.1), Tantaros had already "gained a writer" at the time she and Malice entered into the Collaboration Agreement.</u>

41. Denied, for the reasons stated below in Tantaros's response to Paragraph 42 of Malice's Statement.

42. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 42 of Malice's Statement because, for the reason identified in Paragraph 20 above, <u>Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).</u> In addition, the "job" to which Malice was referring to plainly was not the "job" of "ghostwriting" the Book. To the contrary, this alleged statement came after Tantaros had allegedly stated that, in addition to having already gained Malice as a writer (pursuant to the Collaboration Agreement), she had now gained him as a "friend" who had taken on the job of assisting her with "injustices" she was suffering.

43. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 43 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). In addition, the alleged text conversation is meaningless because Malice does not identify who "Lux" is, and, more importantly, the confidentiality provision of the Collaboration Agreement prohibited Malice from revealing his paid role in assisting Tantaros with the Book. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at § 10).

44. Admitted, in that Tantaros wrote the check referred to in Exh. 15 to the Malice Declaration. However, there is nothing in Exh. 15 to Malice's Declaration that references a Ghostwriting Agreement, much less that the payment of the money was paid pursuant to such an agreement. Moreover, in fact, the payment was tied to the fact that Malice's birthday was in July and that he had expected that he would have received additional monies under the Collaboration Agreement at that point in time. (Declaration of Judd Burstein dated November 21, 2016 at ¶ 5, Exh. 2 thereto; Tantaros Dec. at ¶ 30 and ¶ 21, Ex. P thereto at § 2.2 ("Collaborator will deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015[.]").

45. Denied, in that Exh. 12 to Malice's Statement may not be considered as support for Paragraph 45 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, Tantaros's alleged statements do not provide the existence of a Ghostwriting Agreement, as they are consistent with Tantaros expressing appreciation for Malice's work pursuant to the Collaboration Agreement.

More importantly, read in context, Tantaros's alleged statement dealt with Fox News's likely effort to prevent her from accepting a public speaking engagement known as a "Ted Talk."

46. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 46 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Also, read in context, Malice's request for a copy of the "book proposal" was directly tied to Tantaros's expression of "rage" against HarperCollins for not backing her *vis a vis* Fox News in her desire to do the "Ted Talk." Further, Malice's request was also consistent with his asking for information about what was needed for his work pursuant to the Collaboration Agreement.

47. Denied for the reasons stated above in connection with Paragraph 46 of Malice's Statement.

48. Admitted that Tantaros made a $15,000 payment to Malice, but denied that the payment was made pursuant to a non-existent Ghostwriting Agreement between Malice and Tantaros. (*See* Tantaros Dec. at ¶¶ 30, 33-34).

49. Admitted that the Collaboration Agreement did not call for a $15,000 payment at the time it was made, but denied that the payment was made pursuant to the non-existent Ghostwriting Agreement. (*See* Tantaros Dec. at ¶¶ 30, 33-34).

50. Admitted, although denied that there was ever any Ghostwriting Agreement between Tantaros and Malice. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

51. Admitted, although denied that there was ever any Ghostwriting Agreement between Tantaros and Malice. (*See* Tantaros Dec., at ¶¶ 30, 33-34)

52. Admitted, although denied that there was ever any Ghostwriting Agreement between Tantaros and Malice. (*See* Tantaros Dec., at ¶¶ 30, 33-34)

53. Admitted to the extent that Malice did record Tantaros's spoken drafts of chapters, and then created written versions of her spoken drafts, that work was part of his duties under the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1 and 2.2) However, denied insofar as Paragraph 53 of Malice's Statement suggests that Tantaros ceased writing original work herself after the date of the purported Ghostwriting Agreement. (*See* Tantaros Dec. at ¶¶ 35-49, Exhs. Y, Z, AA, BB, CC, DD, EE, GG, HH, II, JJ, LL, MM, NN thereto)

54. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 54 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, that Malice may been writing a portion, or even all, of a chapter based upon interviews with Tantaros was consistent with his obligations under Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1 and 2.2)

55. Denied, in that if Malice asked for the name of Tantaros's brother, that inquiry would have been entirely consistent with his duties under the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at § 2.1)

56. Denied, in that if Tantaros sent the email attached as Exh. 21 to Malice's Declaration, her email was consistent with Malice's duties under the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1 and 2.2)

57. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 57 of Malice's Statement because, for the reason identified in Paragraph 20 above, <u>Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion.</u> *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any statements made by Malice updating Tantaros about the percentage of the Book he had completed were consistent with his obligation under the Collaboration Agreement to "deliver to the Client, in a mutually agreed upon electronic format, the Work on or before July 15, 2016." (Tantaros Dec. at ¶ 21, Exh. P thereto at § 2.2)

58. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 58 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, the alleged text conversation actually supports Defendants because Malice asks only for permission to tell a third party that Malice is editing Tantaros's Book and nothing is said by Malice suggesting that he was agreeing to limit describe obligations under the Collaboration Agreement.

59. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 59 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any statements made by Malice about the percentage of the Book he completed were consistent with his obligation under the Collaboration Agreement to "deliver to the Client, in a mutually agreed upon electronic format, the Work on or before July 15, 2016." (Tantaros Dec. at ¶ 21, Exh. P thereto at § 2.2)

60.     Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 60 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).  Moreover, any conversations between Malice and Tantaros about Malice sending Tantaros chapters to edit were consistent with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher…." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

61.     Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 61 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).  Moreover, any conversations between Malice and Tantaros about Malice sending Tantaros chapters to edit were consistent with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher…." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

62.     Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 62 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).  Moreover, any conversations between Malice and Tantaros about Malice sending Tantaros chapters to edit were consistent

with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

63. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 63 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, Tantaros's alleged statement was consistent with Tantaros expressing appreciation of Malice's work pursuant to the Collaboration Agreement.

64. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 64 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any conversations between Malice and Tantaros about reading chapters to edit were consistent with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

65. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 65 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any conversations between Malice and Tantaros about Malice sending Tantaros chapters to edit were consistent

with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)  Indeed, Paragraph 65 supports Tantaros's claims because in this purported text message exchange, Malice acknowledges that Tantaros had in fact written portions of the Book.

66.    Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 66 of Malice's Statement because, for the reason identified in Paragraph 20 above, Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).  Moreover, any conversations between Malice and Tantaros about Malice sending Tantaros chapters to edit were consistent with his obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

67.    Denied, in that Malice did violate his confidentiality obligations.  (*See* Tantaros Dec. at ¶ 52)

68.    Admitted that Tantaros communicated with Malice on her Fox News email account.

69.    Denied, in that the purported communications referenced in Paragraph 69 of Malice's Statement were consistent with Malice's obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

70. Denied, in that the purported communications referenced in Paragraph 70 of Malice's Statement were consistent with Malice's obligation under the Collaboration Agreement to "deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015," and "subsequently edit and make changes requested by Client and/or Publisher...." (Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.2 and 2.3)

71. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 71 of Malice's Statement because Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any purported communications referenced in Paragraph 71 were consistent with Malice's obligations pursuant to the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1, 2.2, and 2.3)

72. Denied, in that Exhs. 28 and 29 to Malice's Declaration show that Malice never delivered any manuscript to HarperCollins.

73. Denied, in that Tantaros had already made the payment that would have been due at this time. (*See* Tantaros Dec. at ¶ 21; Exh. P thereto)

74. Denied for the reason set forth above in Paragraph 73.

75. Denied, in that Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 75 of Malice's Statement because Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, any purported communications referenced in Paragraph 75 were consistent with Malice's obligations pursuant to the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1, 2.2, and 2.3).

76. Denied in that Exhs. 30 and 31 do not establish that Malice wrote the introduction to the Book. Moreover, even if he did so, he was obligated to perform this work pursuant to his obligations under the Collaboration Agreement. (*See* Tantaros Dec. at ¶ 21, Exh. P thereto at §§ 2.1, 2.2, and 2.3)

77. Admitted that Tantaros appreciated the work that Malice performed pursuant to the Collaboration Agreement, but denied to the extent that Malice claims that Exh. 12 or 32 demonstrate, even inferentially, that the Collaboration Agreement was terminated and replaced by the Ghost Writing Agreement. Moreover, Exh. 12 to Malice's Declaration may not be considered as support for Paragraph 77 of Malice's Statement because Exh. 12 is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion. *See* Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).

78. Admitted in that Malice acknowledged that he was only entitled to a payment of $10,000 upon HarperCollins accepting the manuscript of the Book is an admission of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A) and (B). However, otherwise denied, in that Exh. 33 to Malice's Declaration is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion because Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d) because (a) it is a cherry-picked purported summary of supposed "WhatsApp" messages between Tantaros and Malice which denies Tantaros the opportunity to show other alleged messages in which would place the alleged texts quoted by Malice in context, and (b) Malice has failed to provide Defendants with the underlying original documents or electronic data. Moreover, Paragraph 78 is also denied because HarperCollins had not accepted the manuscript as of January 12, 2016.

79. Denied, in that the failure to pay Malice upon HarperCollins's acceptance of the manuscript was the first payment that would have otherwise been due under the Collaboration Agreement that was not paid to Malice.

80. Denied, because prior to HarperCollins's acceptance of the manuscript of the Book, Defendants had made all required payments under the Collaboration Agreement

81. Defendants are unable to answer this allegation because it calls for them to speculate about the operation of Malice's mind.

82. Admitted that Tantaros acknowledged appreciation for Malice's contribution under the Collaboration Agreement.

83. Denied, in that Exh. 35 to Malice's Declaration is merely a purported statement by Malice advising Tantaros to not make a statement that inflated Malice's role in the writing of the Book.

84. Admitted.

85. Admitted.

86. Denied, in that, for the reasons stated above in Paragraph 78, Exh. 33 to Malice's Declaration is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion because Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, the allegation is denied for the reasons stated in the Tantaros Dec. at ¶¶ 31-50).

87. Denied, in that, for the reasons stated in Paragraph 78 above, Exh. 33 to Malice's Declaration is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion because Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d).

88. Denied, in that, for the reasons stated in Paragraph 78 above, Exh. 33 to Malice's Declaration is inadmissible under Fed. R. Evid. 1006, and may not be considered by the Court on this motion because Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(d). Moreover, the last sentence of Paragraph 88 in Malice's Statement is inadmissible hearsay.

89. Denied. (*See* Tantaros Dec. at ¶ 53)

90. Denied, in that Exh. 39 to Malice's Declaration does not reflect any agreement between Tantaros and Malice, as it does not contain any acceptance of the terms set forth therein and is also inconsistent with the claim in Malice's Complaint that the Ghostwriting Agreement incorporated the payment schedule of the Collaboration Agreement. (*See* Complaint at ¶ 32)

91. Denied for the same reasons set forth above in Paragraph 90 above.

92. Admitted.

93. Admitted, in that Tantaros asked Malice to sign a confidentiality agreement, but, in doing so, she was referring to the payment schedule provided for by the Collaboration Agreement. (*See* Tantaros Dec. at ¶¶ 21, 30, 33-34)

94. Admitted.

95. Denied, because alleging facts on "information and belief" is not permitted on a summary judgment motion.

96. Admitted.

97. Denied. Defendants respectfully refer to the non-disclosure agreement and the acknowledgments section of the Book for the truth of the matters asserted.

98. Defendants respectfully refer to the non-disclosure agreement and the acknowledgments section of the Book for the truth of the matters asserted.

99. Admitted that the proffered non-disclosure agreement had a $500,000 liquidated damages clause, but denied that "compliance with its terms was literally impossible."

100. Admitted.

101. Admitted.

102. Admitted as to the Collaboration Agreement, but denied as to the purported Ghostwriting Agreement because no such agreement ever existed. (*See* Tantaros Dec. at ¶¶ 30, 33-34)

103. Tantaros cannot answer this allegation because it calls for her to speculate about the operation of Malice's mind, but the fact that Malice was not paid any more money is admitted.

104. Admitted, but denied that Defendants did not offer specifics. (*See* Tantaros Dec. at ¶ 52).

105. Admitted, except there is no basis for alleging that the demand was improper.

106. Denied. (*See* Tantaros Dec. at ¶ 54)

107. Tantaros cannot answer this allegation because it calls for her to speculate about the operation of Malice's mind.

108. Denied. (*See* Tantaros Dec. at ¶ 61)

109. Admitted, but denied in that there was no money due under the non-existent Ghostwriting Agreement. (*See* Tantaros Dec. at ¶ 30)

110. Admitted.

111. Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-35)

112. Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-35)

113. Denied. (*See* Tantaros Dec. at ¶¶ 30, 33-35)

114. Admitted.

115. Admitted.

116. Admitted.

117. Admitted.

118. Admitted.

119. Admitted, except denied that Tantaros owes Malice any money. (*See* Tantaros Dec. at ¶¶ 30, 33-34, 52)

Dated: New York, New York
December 2, 2016

JUDD BURSTEIN, P.C.

By_____
   Judd Burstein (JB-9585)
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
(212) 974-2944 (Fax)
jburstein@burlaw.com
*Attorneys for Defendants*

19