UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MICHAEL KRECHMER, a/k/a
"Michael Malice," an individual,

        Plaintiff,

-against-

ANDREA K. TANTAROS, an individual;
and ASTERO, LLC, a New Jersey limited
liability company,

        Defendants.
---------------------------------------------------------x

Case No.: 16-cv-7820 (KBF)

## PLAINTIFF MICHAEL KRECHMER'S OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... III

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

  1.0    INTRODUCTION ........................................................................................................ 1

  2.0    STATEMENT OF RELEVANT FACTS...................................................................... 2

      2.1    *The Collaboration Agreement*................................................................................. 2

  3.0    LEGAL ARGUMENT ................................................................................................. 5

      3.1    *Standard of Review* ................................................................................................ 5

      3.2    *The Requested Injunction Is an Impermissible Prior Restraint,*
            *and There Is No Irreparable Harm*......................................................................... 6

      3.3    *Defendants Have Not Demonstrated a Likelihood of Success on the Merits* ............. 9

      3.4    *The Balance of Hardships Tips Sharply in Plaintiff's Favor* .................................. 11

      3.5    *The Requested Injunction Is Not in the Public Interest* ........................................... 11

  4.0    CONCLUSION........................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*Archie Comics Publ'ns, Inc. v. DeCarlo*,
   258 F. Supp. 2d 315 (S.D.N.Y. 2003) .................................................................................. 10

*ARP Films, Inc. v. Marvel Ent. Group, Inc.*,
   952 F.2d 643 (2d Cir. 1991)..................................................................................................... 9

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
   2016 U.S. Dist. LEXIS 35385 (S.D.N.Y. Jan. 12, 2016)...................................................... 1, 11

*Cambell v. N.Y. Evening Post*,
   245 N.Y. 320 (1927) ................................................................................................................. 1

*Elliott Assocs. v. Republic of Peru*,
   12 F. Supp. 2d 328 (S.D. N.Y. 1998) ....................................................................................... 9

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ................................................................................................ 12

*Frank Felix Assocs. v. Austin Drugs, Inc.*,
   111 F.3d 284 (2d Cir. 1997).............................................................................................. 9, 10

*Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.*,
   51 F. Supp. 2d 204 (S.D. N.Y. 1999) ................................................................................ 9, 10

*Gaming Mktg. Solutions v. Cross*,
   2008 U.S. Dist LEXIS 25910 (S.D. N.Y. Apr. 1, 2008).......................................................... 7

*Hammer v. Trendl*,
   2002 U.S. Dist. LEXIS 25487 (E.D. N.Y. Oct. 10, 2002).................................................. 7, 9

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)....................................................................................................... 8

*Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*,
   261 F.3d 264 (2d Cir. 2001).................................................................................................... 9

*In re Dow Jones & Co.*,
   842 F.2d 603 (2d Cir. 1988)..................................................................................................... 6

*Kinney v. Barnes*,
   443 S.W.3d 87, 100 (Tex. 2014).............................................................................................. 6

*Madsen v. Women's Health Ctr.*,
    512 U.S. 753, 764 (1994) .................................................................................................. 6

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) .......................................................................................................... 5

*Metropolitan Opera Ass'n v. Local 100, Hotel Emples. & Restaurant Emples. Int'l Union*,
    239 F.3d 172, 176 (2d Cir. 2001) .................................................................................. 6, 7

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539, 559 (1976) .................................................................................................. 6

*New York Times Co. v. United States*,
    403 U.S. 713 (1971) .......................................................................................................... 6

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) .......................................................................................................... 7

*Organization for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) .......................................................................................................... 7

*Playboy Enters. v. Dumas*,
    53 F.3d 549 (2d Cir. 1995) .............................................................................................. 10

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ............................................................................................... 7, 8, 12

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ........................................................................................... 6, 11

*Sussman v. Crawford*,
    488 F.3d 136 (2d Cir. 2007) .............................................................................................. 5

*Tantaros v. Fox News Network, LLC, et al.*,
    Index No. 157054/2016 (Supreme Ct. of N.Y, N.Y. County. Aug. 29, 2016) ..................... 2

*Uniformed Sanitation Men Assoc. v. Comm. of Sanitation*,
    287 F. Supp. 703, 703 (S.D. N.Y. 1968) ......................................................................... 11

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) .............................................................................................. 7

*United States v. Erie Cty.,* 763 F.3d 235 (2d Cir. 2014) ............................................................. 1

*United States v. Myers (In re Nat'l Broadcasting Co.)*,
    635 F.3d 945 (2d Cir. 1980) .............................................................................................. 7

*United States v. Quattrone*,
    402 F.3d 304 (2d Cir. 2005) .............................................................................................. 6

*Walker v. Birmingham*,
  388 U.S. 307 (1967) ................................................................................................... 6

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ....................................................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Michael Krechmer a/k/a Michael Malice hereby opposes Defendants' Motion for Preliminary Injunction.

**1.0    INTRODUCTION**

Defendants Andrea Tantaros and Astero, LLC have no basis to ask this Court to unconstitutionally enjoin Michael Malice's speech. They seek a broad, vague order to prohibit him "from violating the confidentiality provision (¶ 10) of the Collaboration Agreement…during the pendency of any sealing order in this case." (Defendants' Memorandum, at 1.) Essentially, they have requested a prior restraint enjoining Malice from making any mention of his dispute with Defendants to anyone other than his attorneys. This is particularly objectionable since they acknowledge that he ghostwrote the *Tied Up in Knots* book for Defendants and yet they refuse to pay him. Notably, Defendants have failed to show that a seal is required, let alone a gag order, as they have yet to address any of the issues laid out by *Cambell v. N.Y. Evening Post*, 245 N.Y. 320 (1927); *United States v. Erie Cty.,* 763 F.3d 235 (2d Cir. 2014); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,* 2016 U.S. Dist. LEXIS 35385 (S.D.N.Y. Jan. 12, 2016); and the other cases cited by Plaintiff in his *Ex Parte* Application to File Under Seal.[1] Defendants would not be entitled to this injunction even if Plaintiff Malice was actively threatening to make defamatory statements about her. He is not. Malice has made no indication that he is going to talk to anyone about this case, and Defendants have improperly demanded that this Court enter an unconstitutional injunction for purely speculative harm. This Court should not do so and deny the Motion.

---

[1]   This Application, as the Court will recall, was filed out of an abundance of caution; Plaintiff at no time thought that sealing was appropriate. The only basis ever provided by Defendants to extend the seal was a belief that the matter would be summarily dismissed for want of subject matter jurisdiction, an issue Defendants no longer argue.

### 2.0 STATEMENT OF RELEVANT FACTS

#### 2.1 The Collaboration Agreement

Defendant Andrea Tantaros is a television journalist who was suspended by Fox News.[2] (*See* Motion, at 1.)  Fox News states that she was suspended because she published a book entitled *Tied Up in Knots* without the network's permission.  *See* Plaintiff's Presentation of Additional Evidence and Statement of Additional Material Facts in Opposition to Converted Motion for Summary Judgment ("SAMF"), at *Exhibit 52* (Fox News pleaded that Tantaros was suspended on April 25, 2016 "in accordance with the terms of her Employment Agreement because of her failure to obtain approval of her book."  *Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016 (Supreme Ct. of N.Y, N.Y. County. Aug. 29, 2016) (Memorandum, at 5).)  That book is the subject of this lawsuit.

In April of 2015, Defendants Tantaros and Astero contacted Plaintiff Michael Malice because she had not made significant progress on *Tied Up in Knots* for nearly 2 years. (*See* Verified Complaint, ¶ 8.)  Malice is a professional author, editor, and ghostwriter, and Defendants represented that they needed his assistance as a writing coach and editor. (*See id.*, ¶¶ 1, 9.)  Malice agreed to assist Defendants, and the parties signed a Collaboration Agreement on May 4, 2015, providing that Malice would "edit and rewrite" *Tied Up in Knots* and establishing a payment schedule.  (*See* Collaboration Agreement, attached to the Verified Complaint as Exhibit 1.)  While the Collaboration Agreement provided that Malice would not be specifically credited for the work he performed on the book, he would be thanked by name in the acknowledgements. (*See* Verified Complaint, ¶ 12.)

#### 2.2 The Ghostwriting Agreement

Immediately after signing the Collaboration Agreement, Malice began work on *Tied Up in Knots*, but Defendant Tantaros struggled to produce anything for Malice to actually edit. (*See id.*, ¶ 15.)  Thereafter, in July of 2015, Tantaros informed Malice that she was too busy to do any

---

[2]   Ms. Tantaros was subsequently terminated for allegedly appearing on Good Morning America in violation of her employment agreement.

additional writing on *Tied Up in Knots* and asked him to completely ghostwrite it based upon interviews that he would conduct with her. (*See id.*, ¶ 17.) While he was amenable to ghostwriting the book, he pointed out that the fees he was being paid were far less than what he would receive for ghostwriting. (*See id.,* ¶ 18.) He suggested that the parties' agents negotiate a new deal. (*See id.*, ¶ 19.)

Defendants refused that suggestion, fearing that it would cause Tantaros' editor to learn that she was not writing the book herself. (*See id.*, ¶ 20.) They particularly feared that it might cause HarperCollins, the book's publisher, to cancel the book since she was already 2 years behind schedule and that it might damage her reputation and cause professional and personal humiliation at Fox News if anyone discovered that HarperCollins cancelled the publication agreement. (*See id.*, ¶¶ 21, 22.)

Defendants then proposed a new oral Ghostwriting Agreement with Malice, terminating the Collaboration Agreement and paying Malice 30% of Tantaros' $500,000 advance. (*See id.*, ¶¶ 23-25.) Malice agreed. The amounts that he had been paid under the Collaboration Agreement would be credited to the amounts he was owed under the oral Ghostwriting Agreement. (*See id.*, ¶ 27.) While the parties agreed to maintain the Collaboration Agreement's payment schedule, no other provisions of that Agreement were incorporated into the Ghostwriting Agreement. (*See id.,* ¶ 32.)

Immediately after the parties agreed upon the terms of the Ghostwriting Agreement, Tantaros texted Malice that she felt "so much better and even more so that [she had] not just gained a writer but a friend." (*See id.*, ¶ 34.) Malice proceeded writing the book, which went smoothly. (*See id.*, ¶ 39.) He delivered the manuscript to Defendants in a timely fashion, which was accepted by the publisher. (*See id.*, ¶¶ 41, 44.) Tantaros thanked Malice in the book's acknowledgements, even identifying him as her editor and coach. (*See id.*, ¶ 48.)

### 2.3   Defendants' Breach

Malice fulfilled his duties but received his last payment from Defendants on or about July 30, 2015.[3] (*See id.*, ¶¶ 36, 37.) Under both the Collaboration and Ghostwriting Agreements, Defendants paid him a total of $30,000, which is significantly less than he was owed under both Agreements. (*See id.,* ¶ 38.) When he inquired about the monies he was owed, Defendants informed him that he would be required to sign a retroactive non-disclosure agreement that forbade him from discussing or mentioning anything about Tantaros, even if it was public knowledge.[4] (*See* SAMF, *Exhibits 41, 42, 43, & 44*.) It forbade him from stating that he was the editor of *Tied Up in Knots*, even though Defendants publicly acknowledged this in the book's acknowledgements. (*See* SAMF, *Exhibit 43*.) Finally, it contained no consideration to Malice for signing and included a $500,000 liquidated damages clause even though compliance with its terms was literally impossible. (*See id.*) Malice refused to sign the non-disclosure agreement. (*See* Verified Complaint, ¶ 60.)

Subsequently, on or about March 28, 2016, Malice received correspondence from Defendants' counsel, accusing him of disclosing "confidential information" in breach of the Collaboration Agreement. (*See* SAMF, *Exhibit 45*.) Defendants refused to specify what "confidential information" Malice had allegedly disclosed or who allegedly received such "confidential information." (*See id.*)[5] Defendants' counsel demanded that Malice sign the non-

---

[3]   Defendants both assert that Mr. Malice sought this payment as an advance and that it was a birthday present. (*See* Declaration of Andrea Tantaros dated November 21, 2016 at ¶ 30.) Neither of these explanations is credible. If it were an advance, there is no reason it would not have been paid through Mr. Malice's agent, like her prior payments to him. (*See* SAMF, at ¶¶ 15 & 18.) If it were a birthday gift, there is no reason why she would have given it to him several weeks late. The simpler explanation is that the parties agreed to this payment as part of the Ghostwriting Agreement and Ms. Tantaros was attempting to be funny in the memorandum line of the check.

[4]   Presumably, Defendants wanted Malice to sign a non-disclosure agreement because they realized that the confidentiality provision of the Collaboration Agreement was no longer in effect.

[5]   Defendants in their reply memorandum on summary judgment, for the first time, provide a declaration from Ms. Tantaros in which she claims Mr. Malice made improper disclosures, including on social media. *See* Declaration of Andrea Tantaros at ¶ 52. No evidence of these disclosures is actually provided and consist primarily of vague, unsupported, inadmissible hearsay.

disclosure agreement and an affidavit stating that he had not breached the Collaboration Agreement by the close of the next business day or else Defendants would sue him. (*See id.*)

Now, Defendants ask this Court to restrict Plaintiff's free speech even though they: (a) do not deny that Malice ghostwrote *Tied Up in Knots*; (b) do not deny that they have not paid Plaintiff Malice what he is owed; (c) point to no violations of the seal that is currently in place; and (d) identify no imminent danger of Plaintiff threatening to violate the confidentiality provision of the Collaboration Agreement, which is no longer valid due to the subsequent Ghostwriting Agreement and Defendants' failure to abide by their obligations under either Agreement. Defendants' demand for a preliminary injunction is an unconstitutional and impermissible prior restraint on free speech and must be denied.

## 3.0    LEGAL ARGUMENT

### 3.1    Standard of Review

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (*quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). To obtain a preliminary injunction, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[6] *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). If the moving party fails to establish a likelihood of success on the merits but raises serious questions as to the merits and can demonstrate that the "balance of hardships tipping decidedly in [her] favor." *Salinger v.*

---

The only disclosures ever made by Mr. Malice were with Defendants' explicit permission. *See* SAMF, *Exhibit 12* at pp. 15 & 20. And the only time Defendants asked Mr. Malice to remove social media posts made no mention of any breach, with Defendants thereafter continuing to represent that Mr. Malice would be paid. *Compare* SAMF, *Exhibit 33* at pp. 120-121 (asking Mr. Malice on March 6, 2016, to remove pictures from Instagram) with SAMF, *Exhibits 41, 42 & 44* (expressing from March 17-21, 2016, Defendants' intent to pay Plaintiff, without mention of any claim of breach).

[6]   Defendants ignore and make no argument regarding the "public interest" requirement in their Motion.

5

*Colting*, 607 F.3d 68, 79 (2d Cir. 2010).  Defendants cannot make the required showing, and their Motion must be denied.

### 3.2     The Requested Injunction Is an Impermissible Prior Restraint, and There Is No Irreparable Harm

A "gag order challenged by the individual gagged…is properly characterized as a prior restraint."  *In re Dow Jones & Co.*, 842 F.2d 603, 609 (2d Cir. 1988).  It is long-established that "any system of prior restraints of expression comes to [a] Court bearing a heavy burden against its constitutional validity."  *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).  Indeed, prior restraints are "the most serious and least tolerable infringement on First Amendment rights."  *Metropolitan Opera Ass'n v. Local 100, Hotel Emples. & Restaurant Emples. Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001) (*citing Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)); *see also Kinney v. Barnes*, 443 S.W.3d 87, 100 n. 7 (Tex. 2014) ("[T]he Supreme Court has roundly rejected prior restraint.") (citing SOBCHAK, W., THE BIG LEBOWSKI, 1998).  This is particularly true when the prior restraint comes in the form of a court-issued injunction.  *See id*. (*citing Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994)).  After all, an "injunction must be obeyed until modified or dissolved, and its unconstitutionality is no defense to disobedience."  *Id. (citing Walker v. Birmingham*, 388 U.S. 307, 314-21 (1967)).

Defendants fail to discuss the strict standards governing prior restraints, let alone make any mention of the term "prior restraint" or "First Amendment."  If "[b]eing a journalist is immeasurably important to Ms. Tantaros" (Motion, at p. 8), she does her profession a disservice in seeking to diminish the First Amendment.  In determining whether a prior restraint is constitutional, courts have considered (1) the extent to which the government's interest would be harmed by publication of the materials; (2) whether there are less restrictive alternatives; and (3) how effectively a prior restraint would prevent the threatened harm.  *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976); *United States v. Quattrone*, 402 F.3d 304, 311 (2d Cir. 2005). A party's assertion that publication of certain statements would subject her to "public humiliation, world wide ridicule, character assassination and a ruined reputation" is insufficient to justify the

issuance of injunctive relief. *Hammer v. Trendl*, 2002 U.S. Dist. LEXIS 25487, *4-5 (E.D. N.Y. Oct. 10, 2002) (*citing Organization for a Better Austin v. Keefe*, 402 U.S. 415, 418-19 (1971)). In fact, injunctions prohibiting a party from making false or libelous statements (which is not even the case here) are generally impermissible. *See Gaming Mktg. Solutions v. Cross*, 2008 U.S. Dist LEXIS 25910, *16-18 (S.D. N.Y. Apr. 1, 2008) (*citing Metro. Opera Ass'n*, 239 F.3d at 176). Injunctions enjoining future speech are particularly offensive where, as here, the moving party's suggested harm is speculative and not actual or imminent. *See id*. An injunction request is even more egregious when the facts sought to be suppressed are facts that Defendants do not deny; they merely do not want the public to know that Mr. Malice wrote the book.

The requested injunction is constitutionally repugnant. First, Plaintiff's and the public's interest would unquestionably be harmed by granting it. In seeking the injunction, Defendants are asking this Court to completely hide any and all evidence of this dispute from the public. While this case is currently under seal, Plaintiff only filed it that way out of an abundance of caution. The seal should be lifted, as courts begin with a presumption that the public should have access to court proceedings. *See United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599 (1980) ("[T]he First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal.") (Stewart, J. concurring). This Circuit has previously held that this is an "especially strong presumption" requiring "extraordinary circumstances to justify" restricting public access. *United States v. Myers (In re Nat'l Broadcasting Co.)*, 635 F.3d 945, 952 (2d Cir. 1980). The public's right to access judicial records is "a precious common law right, one that predates the Constitution." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 612 (1978) (Marshall, J., dissenting) (citation omitted). Enforcement of this right does not require a proprietary interest in any document. *Id. at 597*. This is rooted "in the citizen's desire to keep a watchful eye on the

workings of public agencies," *see id.* at 598, which protects "the integrity and quality" of the administration of justice.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980).[7]

As noted in Plaintiff's *Ex Parte* Application to File Under Seal, Defendants' privacy interests in favoring secrecy are weak, particularly given that they have failed to perform under both agreements at issue in this case and are already engaged in high profile litigation with Fox News regarding *Tied Up in Knots*.  Moreover, the public and press have a First Amendment right to "attend judicial proceedings and to access certain judicial documents."  *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).  There is simply no basis for a continued seal, much less forbidding Mr. Malice from discussing this dispute with anyone.

With regard to the second and third prongs identified by this Circuit, less restrictive alternatives and the effectiveness of the requested injunction, both favor denial of Defendants' Motion.  Simply put, there is no imminent irreparable harm.  The case is already sealed, although it should not be.  Moreover, Defendants point to no threatened statements by Plaintiff that would necessitate the issuance of an injunction.  They cannot do so.  All of the alleged imminent harm in the Motion is purely speculative, necessitating that it be denied.  Although Defendants point to Plaintiff's counsel's June 7, 2016 letter to HarperCollins as "imminent risk" (Motion, at p. 7), Defendants themselves ensured that HarperCollins was aware that Mr. Malice had a role in the creation of the book.  *See, e.g.,* SAMF, *Exhibit 29* (e-mail from Tantaros to HarperCollins, copying Plaintiff); *SAMF*, Exhibit 40 (e-mail from Tantaros March 7, 2016 at 9:56 P.M. to HarperCollins stating Plaintiff would pass along errors found in the manuscript); SAMF Exhibit 46 (e-mail from Tantaros to HarperCollins, copying Plaintiff).  Nothing in the letter to HarperCollins disclosed anything it did not already know about Mr. Malice's role and there is no imminent risk.

Finally, Defendants' rationale for an injunction is that revealing Malice's true role in the authorship of the book would "undermine [Tantaros'] credibility in the eyes of her colleagues,

---

[7]  *See also* James Madison, THE FEDERALIST NO. 51 ("If angels were to govern men, neither external nor internal controls on government would be necessary.  In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.").

fans, publisher, and the wider news media world" and that it "could jeopardize Ms. Tantaros's ability to continue in the profession of her choice." Motion at pp. 6 & 8. No factual support is provided for this assertion; in fact, Mr. Malice helped comedian D.L. Hughley and UFC World Champion Matt Hughes write New York Times Bestsellers, with Mr. Malice's role in helping them appearing right on the covers. *See* Verified Complaint at ¶ 1 and SAMF, *Exhibits 1 & 2*. Prior restraint injunctions are not even permissible if the non-moving party threatens to make *false* statements that could subject the moving party to "public humiliation, world wide ridicule, character assassination and a ruined reputation." *Hammer*, 2002 U.S. Dist. LEXIS 25487, *4-5. In this case, Plaintiff has not threatened to publish *any* statements regarding his true role as author of the book, let alone false ones. The Motion must be denied.

### 3.3 Defendants Have Not Demonstrated a Likelihood of Success on the Merits

Defendants argue that they have demonstrated a likelihood of success on the merits because: (a) the Ghostwriting Agreement did not rescind or replace the Collaboration Agreement; and (b) "Defendants' mere failure to pay is not a material breach of the Collaboration Agreement." (Motion, at 9-10.) Therefore, they conclude that the confidentiality provision is still in effect, justifying the requested injunction, and Defendants own the copyright to *Tied Up in Knots* because the Collaboration Agreement provides that they do. (*See id*.) However, regardless of whether the Collaboration Agreement is still in effect, they cannot show a likelihood of success on the merits.[8]

A "material breach" of a contract is one that goes "to the root of the agreement between the parties." *Frank Felix Assocs. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997). Under New York law, "[f]ailure to tender payment pursuant to the terms of a contract is generally considered a material breach." *Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 215 (S.D. N.Y. 1999) (*citing ARP Films, Inc. v. Marvel Ent. Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991); *Elliott Assocs. v. Republic of Peru*, 12 F. Supp. 2d 328, 344 (S.D. N.Y. 1998).

---

[8] The question of which contract is in effect does not need to be resolved to deny Defendants' motion; should the Court find such resolution necessary, an evidentiary hearing would be required as there are material facts in dispute. *See Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264, 269 (2d Cir. 2001).

When one party materially breaches a contract, the other party is no longer obligated to perform under the contact. *Franklin Pavkov*, 51 F. Supp. 2d at 215 (*citing Frank Felix*, 111 F.3d at 289).

Defendants do not explain why this case should be an exception to the rule that the failure to pay is a material breach of an agreement. They cannot do so. The primary benefit that Malice got from both the Collaboration and Ghostwriting Agreements was payment for his services. In fact, given that his true role in the creation of the book was not to be public, it is arguably the only benefit he received under either Agreement. Defendants cannot refuse to perform under both Agreements, depriving him of that benefit, and then declare that he is still bound by the provisions of one of them, including its confidentiality and intellectual property provisions.

Accordingly, the confidentiality clause is extinguished, which should lead to the unsealing of this case. Moreover, absent payment in full to Malice, they cannot claim copyright ownership in the work. The ownership of a work made for hire does not revert to the hiring party if it refuses to fulfill conditions precedent. *See Archie Comics Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 334 (S.D.N.Y. 2003) (stating that "a work is specially ordered or commissioned within the meaning of the 1976 Act if the hiring party was the 'motivating factor' behind the work **and the independent contractor was paid for the work**") (emphasis added). Further, the Ghostwriting Agreement, which superseded the Collaboration Agreement, contains no language asserting that Malice ghostwrote the book as a work made for hire. (*See* Verified Complaint, ¶¶ 28-31.) Nor is there any evidence that Mr. Malice otherwise waived his rights as an author under the Ghostwriting Agreement. And any presumption that a work is a specially commissioned work made for hire under the Copyright Act can be overcome "by evidence of a contrary agreement, either written or oral." *Playboy Enters. v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995). Defendants' admission that they have not paid Malice is fatal to any argument that they have demonstrated a likelihood of success on Malice's claims for relief, whether they are based in copyright or contract law.

### 3.4 The Balance of Hardships Tips Sharply in Plaintiff's Favor

If the Court disagrees with both Plaintiff's and Defendants' arguments regarding the likelihood of success, but finds that there are serious questions regarding the merits of Plaintiff's claims and examines the balance of hardships, that balance unquestionably favors Plaintiff. Defendants attempt to characterize their injunction as one that "maintain[s] the status quo." (Motion, at 10.)  It is not.  It is a prior restraint intended to stop Malice from being able to exercise his First Amendment rights in the absence of any objective facts showing that a prior restraint should even be considered by this Court, let alone granted.  The balance of hardships does not favor Defendants at all, let alone tip "decidedly" in their favor.  *Salinger*, 607 F.3d at 79.  The Motion must be denied.

### 3.5 The Requested Injunction Is Not in the Public Interest

Defendants' Motion does not acknowledge that this Court must consider whether an injunction is in the public interest.  The requested injunction is not in the public interest.  In the absence of a strong justification for the prior restraint, an injunction granting one is not in the public interest.  *See, e.g., Uniformed Sanitation Men Assoc. v. Comm. of Sanitation*, 287 F. Supp. 703, 703 (S.D. N.Y. 1968).  Lawsuits and legal pleadings themselves are matters of public interest in that they "contribute to the public's ability to understand judicial proceedings; and a public understanding of the courts is necessary for the judicial branch's accountability and legitimacy." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 U.S. Dist. LEXIS 35385, *27 (S.D. N.Y. Jan. 12, 2016).

There is no public interest served by granting Defendants' Motion.  Rather, granting it would be an unnecessary and unjustified abrogation of Malice' First Amendment rights with no reasonable grounds for doing so.  Even if Malice were threatening to make defamatory statements about Tantaros, there would be no public interest served by enjoining him from doing so.  Given that he has not threatened to make any public statements about her at all and that Defendants' alleged harm is absurdly speculative, there is no grounds for an injunction to issue against Malice.

**4.0 CONCLUSION**

There is no basis for this Court to issue the prior restraint demanded by Defendants. They cannot demonstrate irreparable harm, a likelihood of success on the merits, an advantage in the balance of equities, or that the injunction is in the public interest. The court is bound by its obligation to the public, which has a strong presumptive right to access judicial records. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003). This is "a precious common law right." *Nixon,* 435 U.S. at 612. It protects "the integrity and quality" of the administration of justice by ensuring that the courtroom, "even more than city streets, sidewalks, and parks," remain "a public place" where "representatives of the press and of the public are not only free to be, but where their presence serves to assure the integrity of what goes on." *Richmond Newspapers,* 448 U.S. at 578, 599-600. Given that the public has a right to the seal being removed – a right that has been infringed for too long as it is – there is absolutely no justification for the Court to compound the Constitutional transgression by widening it to a complete, one-sided gag order.

Plaintiff respectfully requests that this Court deny the unconstitutional preliminary injunction requested by Defendants.

Dated: December 5, 2016

Respectfully Submitted,

Ronald D. Green, *Pro Hac Vice*
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tele:  702-420-2001
Fax:   305-437-7662
Email: ecf@randazza.com

12

                    Jay M. Wolman (JW0600)
                    RANDAZZA LEGAL GROUP, PLLC
                    100 Pearl Street, 14th Floor
                    Hartford, CT 06103
                    Tele:   702-420-2001
                    Fax:    305-437-7662
                    Email: ecf@randazza.com

                    *Attorneys for Plaintiff, Michael Krechmer*
                    *a/k/a "Michael Malice"*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2016, I served a true and correct copy of the foregoing document via electronic mail upon counsel for Defendants identified below:

>Judd Burstein, Esq.
>5 Columbus Circle
>New York, NY 10019
><jburstein@bursteinlaw.com>

>Respectfully Submitted,
>
>_____
>Employee,
>Randazza Legal Group, PLLC

14