UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICHAEL KRECHMER a/k/a                                        16-CV-7820 (KBF)
"Michael Malice," an individual,

                                   *Plaintiff*,

         - against -

ANDREA K. TANTAROS, an individual; and
ASTERO, LLC, a New Jersey limited liability company,

                                   *Defendants*.
-----------------------------------------------------------------------X


# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION


JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
Tel.: (212) 974-2400
Fax: (212) 974-2944
Email: jburstein@burlaw.com
*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

BY SIGNING THE COLLABORATION AGREEMENT, PLAINTIFF WAIVED
HIS RIGHT TO SPEAK ABOUT HIS WORK ON THE BOOK . . . . . . . . . . . . . . . . . . . . . . . 1

POINT II

MS. TANTAROS IS FACING IMMINENT IRREPARABLE HARM . . . . . . . . . . . . . . . . . . . 2

POINT III

DEFENDANTS HAVE MET THEIR BURDEN TO DEMONSTRATE A LIKELIHOOD
OF SUCCESS ON THE MERITS, OR, AT A MINIMUM, A SUFFICIENTLY
SERIOUS QUESTION REGARDING THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT IV

THE BALANCE OF THE HARDSHIPS TIPS IN DEFENDANTS' FAVOR . . . . . . . . . . . . . . 8

POINT V

THE PUBLIC INTEREST IS NOT IMPLICATED BY DEFENDANTS' REQUESTED
INJUNCTION, BUT, IN ANY EVENT, IT TIPS IN DEFENDANTS' FAVOR . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

# TABLE OF AUTHORITIES

CASES

*ARP Films, Inc. v. Marvel Entertainment Group., Inc.*,
    952 F.2d 643 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
    673 F.3d 192 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Elliot Associates, L.P. v. Republic of Peru*,
    12 F. Supp. 2d 328 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Frank Felix Associates v. Austin Drugs, Inc.*,
    111 F.3d 284 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Franklin Pavkov Construction Co. v. Ultra Roof, Inc.*,
    51 F. Supp. 2d 204 (N.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Greenidge v. Allstate Ins. Co.*,
    No. 02-cv-9796, 2003 WL 22871905 (S.D.N.Y. Dec. 3, 2003) . . . . . . . . . . . . . . . . . . . 9

*Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*,
    261 F.3d 264, 269 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*N. Am. Airlines, Inc. v. Int'l B'hood of Teamsters, AFL-CIO*,
    No. 04-cv-9949, 2005 WL 926969 (S.D.N.Y. Apr. 19, 2005) . . . . . . . . . . . . . . . . . . . 9

*NXIVM Corp. v. Ross Institute*,
    364 F.3d 471 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reigster.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Standard & Poor's Corp. v. Commodity Exch., Inc.*,
    683 F.2d 704 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    No. 15-cv-6639, 2015 WL 5547441 (S.D.N.Y. Sept. 17, 2015) . . . . . . . . . . . . . . . . . 10

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
  103 F. Supp. 2d 711 (S.D.N.Y. 2000),
  *aff'd on other grounds* 294 F.3d 383 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Town of Verona (Oneida County) v. Cuomo*,
  No. 13-cv-1100, 2013 WL 5839839 (N.D.N.Y. Oct. 30, 2013) . . . . . . . . . . . . . . . . . . . . 1

*Trump v. Trump*,
  179 A.D.2d 201 (1st Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

## INTRODUCTION

Defendants[1] respectfully submit this Reply Memorandum of Law in Support of their Motion (a) pursuant to Fed. R. Civ. P. 65, for an order granting a preliminary injunction prohibiting Plaintiff from violating the confidentiality provision of the Collaboration Agreement during the pendency of any sealing order in this case, and (b) for such other and further relief as this Court deems just and proper.

## ARGUMENT

**POINT I:**  **BY SIGNING THE COLLABORATION AGREEMENT, PLAINTIFF WAIVED HIS RIGHT TO SPEAK ABOUT HIS WORK ON THE BOOK**

Throughout his memorandum of law, Plaintiff attempts to cast Defendants' motion as a "constitutionally repugnant" assault on the First Amendment, going so far as to invoke the persuasive force of the Federalist Papers. (*See* Plaintiff's Memorandum of Law ("Plaintiff's MOL") at 7, 8 n.7).[2] Plaintiff's ridiculous attempt to position himself as the venerable defender of the First Amendment falls far short because it is well established that First Amendment rights can be waived by contract. *See Town of Verona (Oneida County) v. Cuomo*, No. 13-cv-1100, 2013 WL 5839839, at \*5 (N.D.N.Y. Oct. 30, 2013) (citing *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012)); *see also Trump v. Trump*, 179 A.D.2d 201, 204 (1st Dep't 1992) ("In disposing of such litigation, parties may stipulate away

---

[1]     In this Reply Memorandum of Law, unless otherwise noted, Defendants will use terms as they are defined in their Opening Memorandum of Law ("Opening MOL").

[2]     Defendants must note that Plaintiff's MOL is replete with mischaracterizations and puzzling assertions. For instance, Plaintiff claims that Defendants "do not deny that [Plaintiff] ghostwrote *Tied Up in Knots*," and "do not deny that they have not paid Plaintiff [] what he is owed[.]" (Plaintiff's MOL at 5). Defendants most certainly deny that Plaintiff "ghostwrote" the Book. Ms. Tantaros's Declaration clearly explains that she wrote the first draft of the majority of the Book. (*See* Declaration of Andrea K. Tantaros, dated November 21, 2016 ("Tantaros Dec."), ¶ 35). Defendants also dispute that Plaintiff is owed any more money, either under the Collaboration Agreement or Plaintiff's invented Ghostwriting Agreement. In this regard, Ms. Tantaros's Declaration explains that Defendants' position is that Plaintiff is not owed any more money due to his various breaches of the confidentiality provision of the Collaboration Agreement. (*See* Tantaros. Dec. ¶ 52).

statutory, and even constitutional rights.") (Citing cases) (internal quotation marks omitted));
*Doe v. Roe*, 400 N.Y.S.2d 668, 675 (N.Y. Sup. Ct. N.Y. Cty. 1977) ("There can be little doubt
that under the law of the State of New York and in the proper case, the contract of private parties
to retain in confidence matter which should be kept in confidence **will be enforced by
injunction and compensated in damages**.") (Citing cases) (emphasis supplied).   Plaintiff
signed the Collaboration Agreement containing a detailed and limited confidentiality provision,
which begins with the acknowledgment that Defendants' confidentiality "**is essential to this
agreement**." (Ex. 1 to Compl. § 10) (Emphasis supplied).   As such, Defendants, through this
Motion, do not seek to launch a campaign against the First Amendment, or strip Plaintiff of any
of his constitutional rights; they just seek to hold Plaintiff to his bargain.

Plaintiff's argument that Defendants' requested injunction constitutes an impermissible
prior restraint is of no moment, because Plaintiff freely agreed in the Collaboration Agreement to
keep his work on the Book confidential. *See Trump*, 179 A.D.2d at 205 ("[T]he constitutional
prohibition against prior restraint applies only to orders issued by the government.   In arguing
that a divorce judgment incorporating the terms of a post-nuptial agreement is the equivalent of a
governmental order, the wife takes a great leap in logic.   We reject such a premise.").   Plaintiff
also does not argue that the confidentiality provision of the Collaboration Agreement was "the
product of fraud, collusion, mistake, accident, or some such similar ground." *Id.*   Accordingly,
the confidentiality provision is enforceable.   Plaintiff may only escape its strictures by prevailing
in his argument that the parties terminated the Collaboration Agreement.   For reasons discussed
*infra*, at POINT III, Plaintiff's argument on this point is meritless.

**POINT II:     MS. TANTAROS IS FACING IMMINENT IRREPARABLE HARM**

Plaintiff argues that Defendants' alleged imminent harm is "purely speculative,
necessitating that [their motion] be denied." (Plaintiff's MOL at 8).   In support of his argument,

Plaintiff contends that his counsel's June 7, 2016 letter to HarperCollins cannot support Defendants' claim of imminent harm because "[n]othing in the letter ... disclosed anything [HarperCollins] did not already know" from emails sent by Ms. Tantaros. (*Id.* at 8).

This is incorrect. In the June 7, 2016 letter, Plaintiff represented that he was the "ghostwriter" of the Book, and that he "owns the book, including all proceeds therefrom, the publication rights, the translation rights, the public performance rights, and all other related rights, both in the United States and around the world." (*See* Exhibit C to the Declaration of Judd Burstein, Esq., dated October 19, 2016, which was filed in support of Defendants' Motion to Dismiss). The e-mails Plaintiff points do not even come close to representing that Plaintiff "ghostwrote" and owns the Book. (*See* Exhibit 29 to Plaintiff's Statement of Material Facts (copying Plaintiff on email transmitting manuscript); Exhibit 40 thereto (email from Ms. Tantaros stating that "We found a few errors today while reading. Michael will pass along."); Exhibit 46 thereto (email to Ms. Tantaros asking if she wants to include Plaintiff in a brainstorming session about writing op-eds). As recounted in Ms. Tantaros's Declaration, Ms. Tantaros only disclosed to HarperCollins that Plaintiff would have a limited role in helping her finish the Book, which was an accurate description of their working relationship. (*See* Tantaros Dec. ¶ 10). Plaintiff's June 7, 2016 letter to Harper Collins goes far beyond such a representation.

Plaintiff does not even address Defendants' argument that his First Cause of Action, which seeks a declaration that he is the true author and owner of the Book, is evidence that he is chomping at the bit for this recognition. (*See* Opening MOL at 7). Furthermore, Ms. Tantaros's Declaration explains that Plaintiff breached the confidentiality provision of the Collaboration Agreement multiple times by "advertising on his business website that he was [her] 'writing

coach,' and by posting pictures of [her] on his business website and Instagram and Facebook pages, thereby suggesting there was a business relationship between the two of [them] during the period in which [she] was writing [her] Book." (Tantaros Dec. ¶ 52).   Plaintiff also spoke directly with Ms. Tantaros's Fox News colleagues during the writing process, "sharing not only that he was assisting with the Book, but also very personal and private information that he learned during the collaborative process." (*Id.*).  Ms. Tantaros has declared that Plaintiff did all of this without her knowledge or consent. (*Id.*).  Plaintiff does not dispute that these incidents occurred.  The most he has to say on his past disclosures is that "Defendants have failed to cite to any evidence or provide specific examples, nor can they, because all disclosures were made with their permission." (Plaintiff's Response to Defendants' Statement of Material Facts ¶ 7).  That is plainly not the case.  These incidents point unequivocally to the conclusion that there is an imminent risk that Plaintiff will breach his confidentiality obligations under the Collaboration Agreement.

Plaintiff further argues that Defendants offer "no factual support" for their claim that Plaintiff's false statements "could jeopardize Ms. Tantaros's ability to continue in the profession of her choice." (Plaintiff's MOL at 8-9).  Plaintiff seemingly did not notice Ms. Tantaros's Declaration, where she sets forth the reasons that Plaintiff's statements would irreparably harm her career. (*See* Tantaros Dec. ¶ 63).  Moreover, it is completely irrelevant that D.L. Hughley, a comedian, and Matt Hughes, a UFC fighter, disclosed Plaintiff's involvement right on the cover of their books. (*See* Plaintiff's MOL at 9).  A journalist is judged according to an utterly different set of criteria than a comedian or UFC fighter.  Credibility is paramount. (*See* Tantaros Dec. ¶ 63).  If Plaintiff were permitted to spread his false claim, Plaintiffs' false claims would be a giant news story fed by the Fox News publicity machine, and the truth would be entirely lost in

4

the process. As Winston Churchill, paraphrasing Mark Twain, once noted: "A lie gets halfway around the world before the truth has a chance to get its pants on."

**POINT III:** **DEFENDANTS HAVE MET THEIR BURDEN TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS, OR, AT MINIMUM, A SUFFICIENTLY SERIOUS QUESTION REGARDING THE MERITS**

As discussed in Defendants' Opening MOL, Plaintiff must, at minimum, prevail on his claim that the parties cancelled the Collaboration Agreement, or rescinded it, in order to escape the strictures of that Agreement's provisions which disclaim any ownership rights he may have in the Book and bind him to confidentiality. (Opening MOL at 9). Under the test applicable to motions for a preliminary injunction, Defendants do not even need to demonstrate that they are likely to succeed on this point; rather, they only need to raise "sufficiently serious questions going to the merits to make [the questions] a fair ground for litigation and a balance of the hardships tipping decidedly in [their] favor." *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 476 (2d Cir. 2004).[3]

For reasons that have been thoroughly discussed in Defendants' memoranda of law submitted in support of their converted motion for summary judgment, Plaintiff's claim that the parties agreed to terminate the Collaboration Agreement and enter into a new, oral Ghostwriting Agreement which did not contain, *inter alia*, a confidentiality provision, is wholly without merit. Perhaps recognizing the futility of that line of attack, Plaintiff argues that Defendants' failure to pay him the $10,000 he claims he is owed under the Collaboration Agreement justifies the total

---

[3]     Plaintiff contends in a footnote that this Court may need to resolve the question of whether the Collaboration Agreement is in effect to rule on Defendants' motion for a preliminary injunction. (Plaintiff's MOL at 9 n.8 citing *Hyundai Mipo Dockyard Co. v. AEP/Borden Indus. (In re Rationis Enters. of Pan.)*, 261 F.3d 264, 269 (2d Cir. 2001)). That is not so. All Defendants need to do is show that they are likely to succeed on their claim that Plaintiff cannot prove that the Collaboration Agreement was terminated and then replaced by the supposed Ghostwriting Agreement, or that there are serious questions going to the merits of these issues to make them a fair ground for litigation.

rescission of that Agreement, and its attendant provisions regarding confidentiality and ownership rights to the Book. (Plaintiff's MOL at 9-10). Plaintiff's position is bereft of support for a host of reasons.

**First**, since Defendants filed their moving papers, **Plaintiff has waived his right to seek rescission because he has claimed under oath that he continued to work for Defendants even after they allegedly breached their obligation to pay him.**[4]   As such, Plaintiff may not seek rescission because, under New York law, "when a party materially breaches a contract, the non-breaching party may choose to continue to perform the contract or it may refuse to continue and terminate the agreement . . . .   **Once a party elects to continue the contract, [it] can never thereafter elect to terminate the contract based on that breach . . . .'"** *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 736 (S.D.N.Y. 2000) (Chin. D.J.) *aff'd on other grounds*, 294 F.3d 383 (2d Cir. 2002) (Emphasis supplied) (citations and internal quotation marks omitted).

**Second**, Plaintiff wholly ignores the fact that Defendants dispute that they owe Plaintiff any more monies because Plaintiff breached the confidentiality provision of the Collaboration Agreement multiple times. (*See* Tantaros Dec. ¶ 52). At minimum, this dispute raises "sufficiently serious questions going to the merits" of Plaintiff's claim that Defendants breached the Collaboration Agreement by not paying him $10,000.

**Third**, even if Plaintiff had not waived any claim for rescission of the Collaboration Agreement, and even if he was in fact owed his last payment under the Collaboration

---

[4]      For the first time, on November 23, 2016 (**after Defendants filed their initial papers on this motion**), Plaintiff filed a Declaration laying an appropriate evidentiary foundation for ¶¶ 90-92 of his Local Rule 56.1 Statement. Those paragraphs allege that, even after he was not paid the monies allegedly due to him, Plaintiff "continued to uphold his responsibilities, continuing to make revisions to the manuscript going into production." While Defendants have denied these allegations, Plaintiff is nonetheless stuck with them.

Agreement, Defendants' alleged failure to pay him the last installment of $10,000 of the total $40,000 to be paid under the Collaboration Agreement could not be a sufficiently material breach warranting rescission of the Collaboration Agreement.   *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) ("After considerable performance, a slight breach which does not go 'to the root' of the contract will not justify termination.") (Citations and internal quotation marks omitted).   Rather, Plaintiff can be made whole through a lawsuit for damages.

The cases cited by Plaintiff do not serve his cause in seeking rescission.  In *Frank Felix Associates v. Austin Drugs, Inc.*, 111 F.3d 284 (2d Cir. 1997), the Court held that defendant's breach of an executory accord **was not material** because it "must be viewed in light of [defendant's] substantial compliance with its other obligations under the accord."  *Id.* at 289. Furthermore, any harm to plaintiff "could be fully compensated in monetary damages without undermining the basis of the executory accord."  *Id.*  Therefore, *Frank Felix* is similar to this case, where Defendants' purported breach is not material because Plaintiff can be easily compensated through money damages of $10,0000.[5]  Similarly, in *Franklin Pavkov Construction Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204 (N.D.N.Y. 1999), where the defendant had not made timely payments to a contractor, *id.* at 215, the court held that plaintiff's remedy was damages in *quantum meruit. Id.* at 219-21.

*ARP Films, Inc. v. Marvel Entertainment Group., Inc.*, 952 F.2d 643 (2d Cir. 1991), offers no support to Plaintiff because it is so factually distinguishable.  In *ARP Films*, the Court held that Marvel was authorized to terminate its contract with ARP because (a) ARP had not made payments or provided reports required by the parties' agreement, (b) the contract specifically required ARP to make reports, (c) the amounts withheld from Marvel were "very

---

[5]     Moreover, if Defendants' entitlement to an injunction hinged on the non-payment of $10,000 to Plaintiff, they would make that payment now without prejudice to recovering it later.

substantial," and (d) the parties' agreement explicitly stated that Marvel shall have the right to terminate the license if ARP is not "substantially abiding by" the terms of the agreement.  *Id.* at 647, 649.  By contrast, in this case, there is a live dispute regarding whether Plaintiff is owed any more monies under the Collaboration Agreement, and, if he is, the amount he is owed is not substantial given the payments already made by Defendants.  Moreover, there is no provision in the Collaboration Agreement which gives a party the right to terminate if there is a "substantial" breach.[6]

Plaintiff additionally argues that since the Collaboration Agreement is extinguished, copyright law provides that "absent payment in full to [Plaintiff], [Defendants] cannot claim copyright ownership in the [Book]."  (Plaintiff's MOL at 10).  Defendants are puzzled as to why Plaintiff raises this argument because it is completely irrelevant to the question of whether Defendants have shown a likelihood of success or a sufficiently serious question going to the merits of Defendants' claim that Plaintiff cannot prove that the parties terminated the Collaboration Agreement.

**POINT IV:     THE BALANCE OF HARDSHIPS TIPS IN DEFENDANTS' FAVOR**

With respect to the balance of hardships, Plaintiff once again invokes the First Amendment to argue that the loss of his right to discuss his work on the Book tips the balance of hardships in his favor.  (Plaintiff's MOL at 11).  As discussed above, Plaintiff has contracted-away this right with respect to speaking about his work on the Book.  Therefore, a preliminary injunction would maintain the status quo while the parties litigate the question of whether the Collaboration Agreement remains in effect.  By contrast, if Plaintiff were to disclose his work on

---

[6]     It is not clear why Plaintiff cites to *Elliot Associates, L.P. v. Republic of Peru*, 12 F. Supp. 2d 328 (S.D.N.Y. 1998).  The case does not appear to concern rescission or termination of a contract.  The case's only apparent relation to this case seems to be that it cites *ARP Films* for the proposition that "[f]ailure to tender payment pursuant to a contract is a material breach."  *Elliot Assocs.*, 12 F. Supp. 2d at 344.

the Book, it would irretrievably deprive Defendants of the benefit of their bargain with regard to the Collaboration Agreement. Once Plaintiff has spread the word about his work on the Book, there is no way to put that information "back in the bottle." The balance of hardships therefore tips in Defendants' favor.

**POINT V:    THE PUBLIC INTEREST IS NOT IMPLICATED BY DEFENDANTS' REQUESTED INJUNCTION, BUT, IN ANY EVENT, IT TIPS IN DEFENDANTS' FAVOR**

Although the Second Circuit's "settled preliminary injunction standard does not explicitly mention the public interest," that court has recognized that "as a court of equity, we 'may go much further both to give or to withhold relief in the furtherance of the public interest than where only private interests are involved.'" *Reigster.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 424 (2d Cir. 2004) (quoting *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 711 (2d Cir. 1982)). This case does not implicate the public interest factor as it is essentially "a purely private litigation." *N. Am. Airlines, Inc. v. Int'l B'hood of Teamsters, AFL-CIO*, No. 04-cv-9949, 2005 WL 926969, at *5 (S.D.N.Y. Apr. 19, 2005) (citing *Greenidge v. Allstate Ins. Co.*, No. 02-cv-9796, 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003)).

However, even if the public interest were a relevant factor, it would tip in Defendants' favor. Contrary to Plaintiff's characterization of the present Motion, Defendants' are not seeking to trample Plaintiff's First Amendment rights, or nefariously stamp out of the public's general right to obtain information on judicial proceedings. By signing the Collaboration Agreement, Plaintiff forfeited his First Amendment rights insofar as they relate to the Book. Nor are Defendants seeking to trample on the public's right to know about judicial proceedings because, in Mr. Burstein's first letter to the Court, dated October 10, 2016, he acknowledged that the case would have to be unsealed if it is not dismissed. But at this point in time, where there is a

significant likelihood that the underlying case will be dismissed, the public interest is in no way harmed by Defendants simply seeking to preserve the benefit of their bargain – a bargain that included Plaintiff's adherence to the Collaboration Agreement's confidentiality provisions.   As the court stated in *Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 15-cv-6639, 2015 WL 5547441, at *16 (S.D.N.Y. Sept. 17, 2015), "Plaintiff is right that the public interest is served by the enforcement of contracts[.]"

### CONCLUSION

Wherefore, for the foregoing reasons, as well as those set forth in Defendants' Opening MOL and papers in support of their motion to dismiss the Complaint as converted to a motion for summary judgment, Defendants respectfully request that this Court grant their motion (a) pursuant to Fed. R. Civ. P. 65, for an order granting a preliminary injunction prohibiting Plaintiff from violating the confidentiality provision of the Collaboration Agreement, and (b) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      December 9, 2016

                                   Respectfully submitted,

                                   JUDD BURSTEIN, P.C.

                                   By:_____
                                      Judd Burstein
                                 5 Columbus Circle, Suite 1501
                                 New York, New York 10019
                                 Tel.: (212) 974-2400
                                 Fax: (212) 974-2944
                                 jburstein@burlaw.com
                                 *Attorneys for Defendants*