# JUDD BURSTEIN, P.C.
ATTORNEYS AT LAW

JUDD BURSTEIN*
PETER B. SCHALK**

G. WILLIAM BARTHOLOMEW**
ALI R. JAFFERY**

*ALSO ADMITTED IN CONNECTICUT
**ALSO ADMITTED IN NEW JERSEY

5 COLUMBUS CIRCLE
1790 BROADWAY
NEW YORK, NEW YORK 10019
TEL: (212) 974-2400
FAX: (212) 974-2944
WWW.BURLAW.COM

12 OLD HILL FARMS ROAD
WESTPORT, CONNECTICUT 06880
TEL: (203) 226-4823

July 11, 2017

**VIA EMAIL AND HAND DELIVERY – FILED UNDER SEAL**
Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Krechmer v. Tantaros, et al.* / Case No. 16-cv-7820

Dear Judge Forrest:

      I write in response to Mr. Wolman's letter of June 30, 2017 (Exhibit A hereto) and Ms. Goldstein's letter of July 5, 2017 (Exhibit B hereto). Because I am responding to multiple letters in one submission, I have exceeded the Court's normal page limitation and ask Your Honor's indulgence. In all events, absent the Court's permission, I do not think it is appropriate for me to send this letter to Ms. Goldstein because in doing so, I would be violating the sealing Order which is unequivocally still in effect.[1] However, if Your Honor were to permit me to share a copy of this letter with Ms. Goldstein, I ask that it be accompanied by an order requiring that my letter, and any response to it by Ms. Goldstein, be filed under seal.

      Before turning to a recitation of the relevant facts, my brief response to Mr. Wolman's and Ms. Goldstein's letters is as follows:

    a. I agree with Mr. Wolman that the later-filed case of *Tantaros v. Fox News Network, LLC, et al.*, Case No. 17-cv-2958 (S.D.N.Y.) ("SDNY Action") should be transferred to Your Honor as a related case; and

    b. I firmly believe that there are no documents under seal which are relevant to the pending arbitration between Defendant Andrea Tantaros ("Ms. Tantaros") and Fox News Network, LLC ("Fox"). To the extent that I determine that there are relevant documents, they should be released as a limited exception to the sealing Order because, by copying Mr. Wolman on its letter to the Court without appropriate redactions, Fox directly violated the order of confidentiality imposed

---

[1] Mr. Wolman's June 30, 2017 letter erroneously suggests that the Court ruled that its sealing Order remained in effect only to the middle of December 2016. To the contrary, the Court's written November 3, 2016 Order states that it would "endeavor" to rule by December 15, 2016, but that "[a]ll filings shall remain under seal [until] further order of the Court." (Exhibit C hereto)

Judd Burstein, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 2

by the arbitrators. Given this brazen breach of confidentiality, any release of documents should be subject to this Court's power of contempt.

A.  **THE RELEVANT FACTS**

While, absent discovery, it is impossible as yet to definitively prove the collusion between counsel for Fox and counsel for Plaintiff Michael Krechmer, a/k/a "Michael Malice", ("Mr. Krechmer" or "Mr. Malice"), the circumstantial evidence of that collusion is overwhelming. Between March 29, 2016 and June 7, 2016, both prior counsel and current counsel for Mr. Krechmer wrote three demand letters claiming that Ms. Tantaros had violated the terms of her Collaboration Agreement with Mr. Krechmer. (Exhibit D hereto) **Because Mr. Krechmer never served as Ms. Tantaros's ghostwriter,** that term did not appear in any of these letters. Counsel for Mr. Krechmer never sent another demand letter after June 7, 2016.

On August 22, 2016, Ms. Tantaros filed a complaint in the New York State Supreme Court in the case *Tantaros v. Fox News Network, et al.*, Index No. 157054/2016 ("NYS Supreme Action"), alleging sexual harassment by Roger Ailes, Bill O'Reilly and others, followed by retaliation by other senior executives at Fox. This is the case which is now being arbitrated. According to a recent *New York Times* article, Bo Dietl's ("Dietl") top investigator, Mark Pucci, admitted that Dietl's firm had been hired to investigate Ms. Tantaros and Gretchen Carlson,[2] and that "[o]ne investigator tried to persuade the ghostwriter **[again, we note, a complete mischaracterization of Mr. Krechmer's work]** of Ms. Tantaros's book to provide compromising information about her. Several staff members followed the women in hopes of overhearing them discuss plans for extravagant purchases." (Exhibit E hereto) Plainly, the "ghostwriter" to whom the article refers was Mr. Krechmer because he is the **only person** who has ever claimed, albeit falsely, that he was Ms. Tantaros's "ghostwriter."

On October 7, 2016, Fox's efforts to use Mr. Krechmer to seek to embarrass Ms. Tantaros bore fruit when Mr. Krechmer commenced this lawsuit with wholly gratuitous and scandalous allegations which were fabricated, including falsely denominating himself, for the first time ever, as Ms. Tantaros's "ghostwriter." The facts that this case was filed (a) less than two months after Ms. Tantaros had commenced the NYS Supreme Action and Dietl had been retained to investigate her, but (b) four months after the last demand letter sent on Mr. Krechmer's behalf, make for a very unlikely mere coincidence.

On October 10, 2016, even without the subsequent revelations concerning Dietl, I wrote to Your Honor, stating "I believe that Fox News is working in conjunction with [Mr. Krechmer] to use this case as a means of discrediting Ms. Tantaros." (Exhibit F hereto at 2) On October 25,

---

[2] Dietl's investigation of Ms. Carlson is notable because Fox later admitted that her allegations of sexual harassment by Roger Ailes were true – but only after it was revealed that she had recorded Ailes's advances. Until that time, Fox was prepared to seek to destroy Ms. Carlson's life by digging up "dirt" on her even though it knew that Mr. Ailes was guilty. The Carlson affair is a prime example of the ugliness that prevails at Fox.

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 3

2016, the parties participated in a conference before the arbitrators,[3] at which time it was agreed that it was premature to set a firm date for the arbitration hearing because Fox had moved to compel arbitration of the claims set forth in Ms. Tantaros's NYS Supreme Action complaint. Nonetheless, a June 7, 2017 date was set as a placeholder. To the best of my recollection, the date was set at the request of Fox because its counsel claimed they needed a date so that they could issue subpoenas to ensure that witnesses would be available.

A week later, on November 1, 2016, Fox asked the arbitrators to sign just **one** subpoena – a subpoena directed to Mr. Krechmer, which subpoena was ultimately quashed by the Panel. The subpoena made it obvious that Fox was colluding with Mr. Krechmer, because it asked for "[a]ll documents filed in any civil litigation brought by [Mr. Krechmer] against [Ms.] Tantaros" (Exhibit G hereto at 7), but did not ask for any documents filed in any litigation brought by Ms. Tantaros against Mr. Krechmer. The timing of the subpoena, the fact that it was the only subpoena served, and the fact that it asked only for documents relating to litigation brought by Mr. Krechmer against Ms. Tantaros (but not by Ms. Tantaros against Mr. Krechmer) surely was not fortuitous.

When I wrote to Your Honor, on November 2, 2016, expressing my concern that Mr. Krechmer or his counsel had violated the Court's sealing Order, Mr. Wolman (that same day) acknowledged that he had spoken to counsel for Fox News, but made the incredible claim that he had not disclosed the existence of this litigation. His rationale for the one-way request for litigation papers was ludicrous:

> We were asked whether there had been litigation. Given that *Tied Up* in *Knots* was published earlier this year, Fox could easily assume that Mr. Malice completed his work to Ms. Tantaros' satisfaction. Fox News would unlikely be unaware of any counterclaims Ms. Tantaros might believe she possesses against Mr. Krechmer. The only logical plaintiff would be Mr. Malice. Because the matter was under seal, we did not confirm the existence of the lawsuit.

(Exhibit H hereto at 1)

This explanation made no sense because no competent lawyer (and Fox's lawyers are extremely competent) would limit document requests only to litigation brought by Mr. Malice against Ms. Tantaros, and not try to cover the bases by asking about litigation brought by Ms. Tantaros against Mr. Malice. The only rational explanation for the limited request by Fox's counsel is that they already knew that only Mr. Krechmer had filed the suit, and that it was designed to permit disclosure of the supposedly (but false) embarrassing details which Dietl's investigators had sought from Mr. Krechmer.

---

[3]   In May of 2016, Fox had commenced an arbitration against Ms. Tantaros alleging that she had published a book which violated the Book Guidelines in her employment agreement.

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 4

On April 24, 2017, I filed the SDNY Action against Fox and others. (SDNY Action Dkt. Nos. 1 and 5) It alleges that Fox (a) hacked Ms. Tantaros's computer,[4] (b) engaged in illegal electronic surveillance of Ms. Tantaros's private communications, and (c) engaged in a malicious "sockpuppet" social media campaign designed in part to alert Ms. Tantaros to the fact that she was being electronically surveilled. **I heard nothing from Mr. Wolman in the weeks following this filing**. On May 24, 2017, Fox – in an obvious attempt to bully me and Ms. Tantaros – filed an utterly frivolous sanctions motion.[5] **Again, I heard nothing from Mr. Wolman for a month**.

On June 19, 2017, I responded to Fox's requests in the arbitration for documents concerning Mr. Krechmer by stating that there were certain documents which Ms. Tantaros was "judicially barred" from producing. Four days later, on June 23, 2017, I received a letter from Mr. Wolman noting that he had learned of the SDNY Action and of Fox's motion to compel arbitration, and further stating:

> Those defendants have recently moved to dismiss or compel arbitration. Given your adverse outcome in the [NYS Supreme Action], we expect those defendants to prevail in their motions at any moment, at which point any duty they may have had to preserve under the Federal rules may dissipate. It is incumbent upon us, therefore, to put them on notice to preserve information relative to this case.
>
> Simply put, if Fox News or the other defendants did, in fact, spy upon her, as you alleged under your Rule 11 obligations, then they would be expected to be able to show the communications introduced by Mr. Malice are authentic.
>
> It is our intent, therefore, on Monday, June 25, 2017, to send those defendants, through their counsel of record, a request, in the following terms:
>
>> "to preserve any and all communications, including, but not limited to, email messages, SMS messages, Twitter messages, WhatsApp messages, or messages transmitted through any other electronic messaging system, between Ms. Tantaros and Mr. Malice, in furtherance of the matter of *Doe v. Doe*, 16-cv-7820, pending in the United States District Court for the Southern District of New York."

---

[4] Annexed hereto as Exhibit I are excerpts from a report by CYCURA, one of the world's leading computer forensics experts (with clients such as the Department of Homeland Security and the Department of Defense), after it conducted a forensic examination of Ms. Tantaros's computer. CYCURA found "technical and procedural irregularities, which, in [their] opinion as forensic and security experts are alarming...." Only Fox had the motive and means to hack Ms. Tantaros's computer.

[5] Read together, the sanctions motion (SDNY Action Dkt. Nos. 18-20) and my response to it on June 28, 2017 (SDNY Action Dkt. Nos. 52, 58-59) reveal that Fox's sanctions motion has inadvertently provided compelling, additional support for Ms. Tantaros's allegations in the SDNY Action.

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 5

>   Should you have any objection or a proposal of alternate language, please let us know immediately.

(Exhibit J hereto at 2)

Given that the SDNY Action had been filed two months earlier and the motion to compel arbitration had been filed one month earlier, it seems clear that this letter was sent because, just four days earlier, I had told Ms. Goldstein that I was not prepared to produce any responsive sealed documents (in the unlikely event that they are properly subject to disclosure) until I first went to the arbitrators to ask for permission to make a request of Your Honor. On June 26, 2017, I engaged in a telephonic "meet and confer" with Ms. Goldstein. During the conversation, I told Ms. Goldstein that I was limited to revealing that there were potentially relevant documents concerning Mr. Krechmer which I could not produce because they were subject to a sealing Order. I further told Ms. Goldstein that (a) I did not believe any of the documents were in fact relevant to Fox's claims because, to my knowledge, there is nothing in the documents suggesting that Ms. Tantaros was acknowledging that she was violating her employment agreement's Book Guidelines, but (b) on the off-chance that there might be some relevant documents, I would make an *ex parte* application to the arbitration panel for an exception to the panel's confidentiality order so as to permit me to ask Your Honor for permission to produce sealed documents if I found any of them to be relevant.[6] During this call, I told Ms. Goldstein that the sealed proceeding was a case before Your Honor. I do not recall whether I gave her the docket number of this case, but I did conduct an ECF search of the docket number while I was on the phone with Ms. Goldstein, and informed her that it yielded no information other than the fact that this case was sealed.

Also, on June 26, 2017, I responded to Mr. Wolman's June 23, 2017 letter (through his paralegal, Trey Rothell) as follows:

>   I strongly suggest that you order the transcript of the appearance before Judge Forrest. My recollection is that she granted you permission to mention the suit **only** if you and your client were asked about it. So if you write to Fox News, I will ask the Court to hold you in contempt.
>
>   Moreover, there is no danger. I have already requested a litigation hold on everything you want protected, and much more. I will ensure that it is also protected for you if the case is not dismissed. Further, what possible rush could there be? My response to Fox News's motion is not due until Tuesday, and they have additional time to file reply papers. There is nothing imminent that would justify you acting without securing the transcript or seeking guidance from Judge Forrest.

---

[6] I did not believe that it would be appropriate for me to write to Your Honor without the panel's permission because that would be a violation of the panel's confidentiality order.

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 6

> This is plainly a transparent effort to collude with Fox News. I think your client should be more worried about what happens when I subpoena Bo Dietl. According to yesterday's NY Times, Dietl's investigator sought to secure embarrassing information from Ms. Tantaros's "ghostwriter." The only people who have ever described (falsely) Mr. Malice as Ms. Tantaros' ghostwriter are Mr. Malice and the lawyers in your firm. So one of you spoke with someone working for Fox – plainly a breach of the confidentiality provision of the agreement[.]

(Exhibit K hereto) (Emphasis in original)

A few days after Mr. Wolman's and Ms. Goldstein's attempts to create a justification for Mr. Wolman to disclose information about this case to counsel for Fox, Mr. Wolman employed a new tactic: writing his letter to Your Honor asking that the SDNY Action be designated a related case to this action because "[a]nything [Ms.] Tantaros would seek to shield in this litigation is subject to discovery in the related litigation (as well as the pending arbitration between Ms. Tantaros and Fox)." (Exhibit A hereto at 2) Absent learning about details of the arbitration from counsel for Fox (in violation of the arbitration panel's confidentiality order), Mr. Wolman would have had no basis for opining about what might be discoverable in the Fox arbitration. Of greater significance is the fact that **Mr. Wolman's letter did not suggest that he had spoken with Fox's counsel about the SDNY Action or the arbitration**.

Yet, as shown by Ms. Goldstein's July 5, 2017 letter to the Court, she or one of her compatriots had spoken to Mr. Wolman because she stated that "[c]ounsel for the Writing Coach consents to this application for relief from the Court's [O]rder." (Exhibit B hereto at 2) Ms. Goldstein's use of the term "Writing Coach" is particularly telling in that (a) the *New York Times* article referred to Mr. Krechmer's false characterization of his role as that of a "ghostwriter," and (b) my June 26, 2017 email to Mr. Wolman (Exhibit K hereto) had expressed my view that he or his client had improperly communicated with Dietl's investigator because the fallacious term, "ghostwriter," had been used in the *New York Times* article, and Mr. Krechmer was the only person who had ever used that term. It seems obvious that Ms. Goldstein was trying to undermine the significance of those facts.

Moreover, how Ms. Goldstein knew that Mr. Wolman was counsel of record in this case, and how she knew the details of the Court's sealing directive, remain mysteries. According to Ms. Goldstein:

> We have inferred the identities of the *Doe* parties based on the identities of their counsel. We understand that the Court has directed that any application for relief from the Court's sealing order not refer to the parties to this action by name, and hence we do not refer to either of the *Doe* parties by name in this letter.

JUDD BURSTEIN, P. C.

Honorable Katherine B. Forrest
July 11, 2017
Page 7

(Exhibit B hereto, at fn. 1)

      We do not understand the basis for this inference because, as I recall the Court's oral Order on November 3, 2016 (I am ordering the transcript), Mr. Wolman and his client were barred from even acknowledging the existence of a litigation between Ms. Tantaros and Mr. Krechmer, and certainly were not permitted to tell anyone about the terms of the sealing Order. Rather, the parties were limited to stating that documents could not be disclosed by Order of Judge Forrest in *Doe v. Doe*, Case No. 16-cv-7820. Nor did I tell Ms. Goldstein that there was any litigation between Mr. Krechmer and Ms. Tantaros. Rather, as confirmed by a letter sent by Ms. Goldstein to me on July 5, 2017 (Exhibit L hereto), I followed the Court's November 3, 2016 Order by telling her only that I could not produce documents "covered by a sealing order in a case called *Doe v. Doe*." (*Id.*, at 3)

      More importantly, given that, as stated in Ms. Goldstein's July 5, 2017 letter to me, I had refused to provide her with a copy of the Court's sealing Order, **how did she come to "understand that the Court has directed that any application for relief from the Court's sealing order not refer to the parties to this action by name, and hence we do not refer to either of the *Doe* parties by name in this letter"?** (Exhibit B hereto at fn. 1) (Emphasis supplied) Plainly, Ms. Goldstein understood the terms of the sealing Order because Mr. Wolman had breached it by conveying information about its terms to her.

B.    **THE APPROPRIATE RELIEF HERE**

      I have always believed that the SDNY Action and this case are related cases which should be assigned to Your Honor. However, I did not know how to make the request without violating the Court's sealing Order. Now that Mr. Wolman has breached the sealing Order, and Fox knows about this litigation, the SDNY Action should be transferred to Your Honor as a related case because (a) in light of what has transpired of late, I plan to amend the SDNY Action to include a claim that Fox tortiously procured a breach by Mr. Krechmer of the confidentiality provisions of his agreement with Ms. Tantaros, (b) if any portion of Mr. Krechmer's case survives, Ms. Tantaros will counterclaim against Mr. Krechmer for breach of contract, and (c) given that Fox and Mr. Krechmer have so obviously colluded in breaching Your Honor's sealing Order, the production of any sealed documents to Fox in the arbitration (although I do not believe that there are any documents which need to be produced) should be governed by a judicial sealing order carrying with it the penalty of contempt in the event of a breach. Reliance upon the confidentiality order in the arbitration is inadequate because Fox so obviously breached it by copying Mr. Wolman on Ms. Goldstein's July 5, 2017 letter without making appropriate redactions.

                                                          Respectfully yours,

                                                          Judd Burstein

Encls.
cc:     Jay M. Wolman, Esq. (via email; w/ encls.)