UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MICHAEL KRECHMER, a/k/a                          :
"Michael Malice," an individual,                 :
                                                 :
                 Plaintiff,                      :          Case No.: 16-cv-7820 (KBF)
                                                 :
-against-                                        :
                                                 :
ANDREA K. TANTAROS, an individual;               :
and ASTERO, LLC, a New Jersey limited            :
liability company,                               :
                                                 :
                 Defendants.                     :
                                                 :
-------------------------------------------------------x

**<u>PLAINTIFF MICHAEL KRECHMER'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT AND FOR RELATED RELIEF</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD ..................................................................................... 3

III.  ANALYSIS ................................................................................................... 4

    A.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER COPYRIGHT CLAIMS ................... 4

       1.  *The First Claim Arises Under the Copyright Act* ......................................... 5

       2.  *The Second Claim Also Arises Under the Copyright Act* ............................... 7

    B.   ALL CLAIMS FOR RELIEF WERE PROPERLY STATED .......................................... 9

       1.  *The Complaint is Not Inconsistent* ...................................................... 9

       2.  *The Letters of Counsel Are Irrelevant* .................................................. 11

       3.  *Sections 4 & 5.1 Do Not Preclude Declaratory Judgment* ........................... 13

       4.  *All Material Terms of the Ghostwriting Agreement Were Alleged* ................. 14

    C.   PARAGRAPH 40 CONTAINS TANTAROS'S ADMISSION OF PLAINTIFF'S AUTHORSHIP

       AND FULFILLMENT ............................................................................... 15

IV.  CONCLUSION ............................................................................................ 17

## TABLE OF AUTHORITIES

**CASES**

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)........................................................................................... 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................... 3

*Black Radio Network, Inc. v. Nynex Corp.*,
    44 F. Supp. 2d 565 (S.D.N.Y. 1999)........................................................................... 17

*Buckley v. Valeo*, 424 U.S. 1 (1976) ................................................................................ 18

*Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*,
    No. 4:11CV1299 RWS, 2014 U.S. Dist. LEXIS 25054 (E.D. Mo. Feb. 27, 2014)................. 17

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989).............................................................................................. 6, 7, 15

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
    74 N.Y.2d 475 (1989)................................................................................................. 14

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)........................................................................................... 3

*Flores v. Southern Peru Copper Corp.*,
    343 F.3d 140 (2d Cir. 2003)........................................................................................... 3

*Graziano v. Pataki*,
    689 F.3d 110 (2d Cir. 2012)........................................................................................... 3

*Green v. Dist. Council 1707, AFSCME*,
    2014 U.S. Dist. LEXIS 103750 (S.D.N.Y. July 29, 2014),
    aff'd 600 Fed. Appx. 32 (2d Cir. Apr. 17, 2015) ......................................................... 11

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004)........................................................................... 8

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)......................................................................... 10

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)........................................................................................... 3

*Med. Broad. Co. v. Flaiz*,
   2003 U.S. Dist. LEXIS 22185 (E.D. Pa. Nov. 25, 2003)..........................................8

*Metrokane, Inc. v. Wine Enthusiast*,
   160 F. Supp. 2d 633 (S.D.N.Y. 2001)...................................................................15

*Morris v. Castle Rock Entm't*,
   246 F. Supp. 2d 290 (S.D.N.Y. 2003)...................................................................13

*Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.)*,
   509 F.3d 116 (2d Cir. 2007)...................................................................................7

*Nat. Union Fire Ins. Co. of Pittsburgh v. BP Amoco PLC*,
   319 F.Supp.2d 352 (S.D.N.Y. 2004).......................................................................3

*New York v. UPS*,
   160 F. Supp. 3d 629 (S.D.N.Y. 2016)......................................................................3

*Nolan v. Williamson Music, Inc.*,
   300 F. Supp. 1311 (S.D.N.Y. 1969).......................................................................14

*Playboy Enters. Int'l v. Mediatakeout.com LLC*,
   2016 U.S. Dist. LEXIS 29249 (S.D.N.Y. Mar. 8, 2016) ..........................................8

*Psihoyos v. John Wiley & Sons, Inc.*,
   748 F.3d 120 (2d Cir. 2014)...................................................................................7

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154, 168-69 (2010)..................................................................................7

*Schwartz v. Houss*,
   800 N.Y.S.2d 356 (Kings Cty. Sup. Ct. Jan. 3, 2005) ............................................14

*T.B. Harms Co. v. Eliscu*,
   339 F.2d 823 (2d Cir. 1964)...............................................................................5, 6

*Talbot v. Robert Matthews Distr. Co.*,
   961 F.2d 654 (7th Cir. 1992) ...............................................................................15

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998)...................................................................................5

*Thron v. HarperCollins Publrs., Inc.*,
   2002 U.S. Dist. LEXIS 13670 (S.D.N.Y. July 24, 2002) ..........................................8

*XL Specialty Ins. Co. v. Otto Naumann, LTD*,
   No. 12-CV-8224 (DAB), 2015 U.S. Dist. LEXIS 45028 (S.D.N.Y. Mar. 31, 2015) ...............10

## STATUTES

17 U.S.C. § 101 .................................................................................... 4, 5, 6, 15

17 U.S.C. § 1202 ..................................................................................... 7, 8, 17

17 U.S.C. § 1203 ........................................................................................... 7

17 U.S.C. § 204 ..................................................................................... 6, 13, 15

17 U.S.C. § 302 ........................................................................................... 7

17 U.S.C. § 408 ........................................................................................... 7

17 U.S.C. § 411 ......................................................................................... 7, 8

28 U.S.C. § 1331 ........................................................................................ 4, 7

28 U.S.C. § 1338 ........................................................................................ 4, 7

28 U.S.C. § 2201 ........................................................................................... 4

Section 101 ................................................................................................ 5

## OTHER AUTHORITIES

Berne Convention Implementation Act of 1988,
    Pub. L. 100-568, § 12, 102 Stat. 2853 .................................................. 6

L. Brandeis, Other People's Money (National Home Library Foundation ed. 1933) ................. 18

Uruguay Round Agreements Act,
    Pub. L. 103-456, 108 Stat. 4809 .......................................................... 6

## RULES

Fed. R. Civ. P. 12 .................................................................................... 3, 4, 11

Fed. R. Civ. P. 8 ....................................................................................... 10

Fed. R. Evid. 408 ...................................................................................... 11

Local Rule 26.1 .......................................................................................... 4

**TREATISES**

Berne Convention for the Protection of Literary and Artistic Works, July 24, 1971 ..................... 6

The Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS),
    Apr. 15, 1994, 1867 U.N.T.S. 154 ............................................................................................ 6

## MEMORANDUM OF LAW IN OPPOSITION

Plaintiff Michael Krechmer (a/k/a Michael Malice) ("Malice"), by and through his counsel of record, Randazza Legal Group, PLLC, hereby opposes Defendants Andrea K. Tantaros and Astero, LLC's Motion to Dismiss the Complaint and for Related Relief.  As set forth below, the Court has subject matter jurisdiction over this case and claims were properly stated.  Plaintiff requests that the Court not delay in denying the motion, issuing a summary order before a memorandum of decision, in order that the First Amendment be vindicated and the case be unsealed.  Even Defendants agree that no seal would be proper after their motion is denied, and the Motion to Dismiss appears to have been filed only to unnaturally extend the seal.[1]

### I.      Introduction

As set forth in the Verified Complaint (Doc. No. 1) Defendant Andrea Tantaros ("Tantaros") was, until her suspension, a Fox News television personality, whose business affairs were managed through her company, Defendant Astero, LLC ("Astero").  Complaint at ¶¶ 2-3.  Tantaros had an agreement to write a book entitled *Tied Up in Knots* with her publisher, HarperCollins.  *Id.* at ¶ 11.  Unfortunately, she failed to make any significant progress for approximately two years.  *Id.* at ¶ 8.

Plaintiff Michael Krechmer, who publicly uses the name "Michael Malice", is a two-time *New York Times* best-selling author.  *Id.* at ¶ 1.  Because of her inability to write the book, Tantaros asked Mr. Malice to guide her through the process and act as an editor, and he agreed.  *Id.* at ¶¶ 8-10.  Thereupon, on or about May 4, 2015, the parties entered into the Collaboration Agreement.  *Id.* at ¶ 11 and Ex. 1 thereto.

Although Mr. Malice performed under the Collaboration Agreement, Tantaros continued to struggle to make progress on the book.  *Id.* at ¶ 15.  On July 21, 2015, she gave up and asked Mr. Malice to write the book on her behalf as her ghostwriter.  *Id.* at ¶ 17.  Mr. Malice was willing

---

[1]    Plaintiff notes that Defendants have exceeded the scope of their original proffer to the Court: that the subject motion to dismiss would be solely on the issue of subject matter jurisdiction. As the additional questions presented have no merit, it appears that they were submitted solely to needlessly multiply the proceedings and bog down the Court, delaying a ruling, extending the seal.

to do this, but as the scope of work far exceeded the expectations of the parties when they entered into the Collaboration Agreement, that agreement was terminated. *Id*. at ¶¶ 18, 19, 23, 24 & 25. Unlike the requirement that modifications be in writing (Complaint, Ex. 1, Sec. 12), there is no writing requirement for termination. *Id*. at Ex. 1, Sec. 13/12.1 [sic]. The parties then entered into a new, oral Ghostwriting Agreement. *Id*. at ¶¶ 23-24. It was an oral agreement at Tantaros's request because she wished to reduce the likelihood HarperCollins and Fox News would learn that she was no longer writing the book herself. *Id*. at ¶¶ 20-23.

The Ghostwriting Agreement proposed by Defendants contained only the essential material terms: Mr. Malice would write the book, in exchange for which he would be paid a total of $150,000, utilizing, where appropriate, the payment schedule from the Collaboration Agreement. *Id*. at ¶¶ 13, 25-30, & 32-33. Unlike the Collaboration Agreement, the Ghostwriting Agreement did not include any provision regarding rights and there was no written assignment of copyright. *Id*. at ¶¶ 29-31. Although Defendants had the capacity to ensure one or both of these writing were made, they failed to do so.[2]

Mr. Malice lived up to his obligations and wrote *Tied Up in Knots*. *Id*. at ¶¶ 39-41, 78, & 112. Defendants fully approved of the work performed by Mr. Malice. *Id*. at ¶¶ 40, 48, & 49. HarperCollins accepted the manuscript and, on April 26, 2016, the book was published. *Id*. at ¶¶ 44 & 67. Defendants caused the published book to falsely state that Ms. Tantaros was the author and copyright owner. *Id*. at ¶¶ 68-70. Defendants only paid Mr. Malice $30,000 of the $150,000 owed for writing the book. *Id*. at ¶¶ 14, 16, 36-38, 42-43, 45-47, 53, 75, & 76. Further, because Ms. Tantaros failed to obtain approval for the book by Fox News, she was suspended, depriving Mr. Malice of the potential that her on-air promotion of the book could cause it to

---

[2]   Defendants dispute that the Ghostwriting Agreement was a separate agreement and suggest that the terms of the Collaboration Agreement extend to the ghostwriting. *See* Motion at 13. As the Court is aware, the Collaboration Agreement contained a confidentiality clause. Complaint at Ex. 1, ¶ 10. If the terms of the Collaboration Agreement applied to the Ghostwriting Agreement, Defendants would not have demanded, individually and through counsel, on multiple occasions, that Mr. Malice execute a new non-disclosure agreement. Complaint at ¶¶ 54, 57-59, 61, 63, & 64.

become, in effect, his third *New York Times* bestseller, for which he would be owed an additional $10,000. *Id.* at ¶¶ 13 & 71-74.

## II.   Legal Standard

Defendants appear to challenge both the legal and factual sufficiency of plaintiffs' assertion of jurisdiction under Fed. R. Civ. P. 12(b)(1). *Nat. Union Fire Ins. Co. of Pittsburgh v. BP Amoco PLC*, 319 F.Supp.2d 352, 371 (S.D.N.Y. 2004). The Court must accept as true all material factual allegations in the Verified Complaint, without drawing favorable inferences. *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). Evidence outside of the pleadings may be considered. *See Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 161 n.30 (2d Cir. 2003); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The evidence and allegations demonstrate that this Court possesses subject matter jurisdiction. Claims under the Copyright Act are claims over which the Court has jurisdiction, and this case arises under that act.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (Rule 12(b)(6)); *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (Rule 12(c)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Malice has pleaded factual content for each count that would show liability, as a matter of law, if proven; Defendants simply have a factual dispute over the nature of the Ghostwriting Agreement, and the ownership of the copyright.

Finally, although Fed. R. Civ. P. 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter", this Court has observed that "[m]otions to strike are generally disfavored." *New York v. UPS*, 160 F. Supp. 3d 629, 636-37 (S.D.N.Y. 2016) (Forrest, U.S.D.J.). Ms. Tantaros's language may show a lack of discretion, but it is relevant to the claims at bar, and if she now regrets her indiscreet language, the

Plaintiff cannot be placed at a disadvantage in proving his facts because Ms. Tantaros now regrets her choice of words.[3]

### III.    Analysis

The parties agreed that Mr. Malice would be paid $150,000 for ghostwriting the book; he did so and did not get paid. All of his rights under the Ghostwriting Agreement were retained and Mr. Malice can properly pursue each of the claims.

A. <u>This Court Has Subject Matter Jurisdiction over Copyright Claims</u>

As set forth in the Verified Complaint, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over the claims asserted in the First and Second Claims for Relief, as they arise under the U.S. Copyright Act, including 17 U.S.C. § 101, the Digital Millennium Copyright Act, and the Declaratory Judgments Act. *See* Complaint at ¶ 4. And, because the Court has subject matter jurisdiction over these claims, Defendants do not dispute that the Court may exercise supplemental jurisdiction over the remaining state law claims.[4] *See* Motion at Point VII.

If, assuming *arguendo*, the Court were to agree there was not a Federal question presented, Plaintiff requests that the Court retain jurisdiction in order to permit him to amend the Complaint and potentially plead diversity jurisdiction. Tantaros is believed to have moved from her last known residence and Astero is a New Jersey limited liability company. Consistent herewith, Plaintiff has made a request to Tantaros under Local Rule 26.1. Dismissal under Fed. R. Civ. P. 12(b)(1) would be improper.

---

[3]    That said, the Plaintiff attempted, in good faith, to assuage Ms. Tantaros's concerns. *See* <u>Exhibit 4</u>. The fact that Mr. Malice satisfactorily wrote the book should not seriously be at issue, although the <u>legal</u> determination of authorship may require debate. This <u>fact of satisfactory writing</u> only requires proof, by Ms. Tantaros's own words, because the Defendants unreasonably insist upon denying the undeniable.

[4]    Notably, Defendants have not sought to dismiss the Third and Fifth Claims for Relief on the merits. Thus, it must be observed that the present seal on the case was frivolously pursued by Defendants. In the unlikely event Defendants prevail on their motion, Plaintiff will refile those unchallenged claims in the state court, and Defendants have agreed that such litigation may not be sealed.

1.  The First Claim Arises Under the Copyright Act

With respect to the First Claim for Relief, seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiff is the owner of the copyright in *Tied Up in Knots*, Plaintiff understands why Defendants rely on *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964). Plaintiff agrees that a typical dispute based on contractual interpretation that would govern who is the copyright owner is, oddly, not a dispute "aris[ing] under" the Copyright Act. In *T.B. Harms,* the "crucial issue" was "whether or not Eliscu executed the assignment"; no interpretation of the Copyright Act was required. 339 F.2d at 827. Here, although Plaintiff agrees that state law issues of contract interpretation, termination, and rescission may be present, they are dominated by multiple related questions requiring interpretation of the Copyright Act.

Under 17 U.S.C. § 101, in relevant part, the book could be deemed a "work made for hire" if "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." Although Defendants, throughout their motion, assert that the Collaboration Agreement expressly states it is a "work for hire" (*e.g.* Motion at 14), such language does not actually appear in Sections 4 or 5.1(d) or elsewhere. To the contrary, because Mr. Malice was to have the *de minimis* role of collaborator, providing editorial assistance, Sections 4 and 5.1(d) address the question of whether Mr. Malice would be deemed a joint author contributing to a "joint work" under 17 U.S.C. § 101. *See Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998). Specifically, they establish he would not be a joint author. No mention is made at that point as to "work for hire" because the work was not then specially ordered by Defendants from Mr. Malice. Similarly, a book such as *Tied Up in Knots* does not fit within the nine categories of "specially ordered or commissioned works" set forth in § 101(2), and there is no assertion, nor can there be, that Mr. Malice was an employee of Defendants under § 101(1).[5]  *Compare Cmty. for Creative*

---

[5]  Section 101 of provides that a work is "for hire" under two sets of circumstances:

(1) a work prepared by an employee within the scope of his or her employment; or
(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a

*Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (setting forth the factors determining whether one is an employee or independent contractor for Section 101(1) purposes). Thus, to the extent the Collaboration Agreement governs the work performed thereunder, this Court must determine whether language disclaiming joint authorship suffices to otherwise establish the contributions are "expressly agreeing" are a "work made for hire" even if no such language is explicitly used. Further, where the Ghostwriting Agreement terminated the Collaboration Agreement, the Court must determine whether there exists any writing establishing the work performed thereunder as a "work made for hire," as required under 17 U.S.C. § 101.

Similarly, under 17 U.S.C. § 204(a), a transfer of copyright ownership must be in writing and signed by the owner of the rights conveyed. Thus, once more, this Court must determine whether language disclaiming joint authorship suffices to otherwise act as an assignment, even if no such language is explicitly used. And, again, where the Ghostwriting Agreement terminated the Collaboration Agreement, the Court must determine whether there exists any writing establishing an assignment. Because these questions require interpretation of the Copyright Act, this case arises under the act and subject matter jurisdiction exists.

This case is not simply about the plain meaning of clauses in contracts that would be governed by state law. Although issues of common law may be present, such as the definition of who is an employee for purposes of the Copyright Act, these arise under federal common law, not state law. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (looking to Restatement of Agency, rather than the law of a particular state). Ownership of a copyright cannot vary from state to state; such would threaten the universality of the Copyright Act that did not exist when *T.B. Harms* was decided. Since that time, the United States has acceded to the Berne Convention for the Protection of Literary and Artistic Works, July 24, 1971 [Paris Text], S Treaty Doc No. 99-27 [amended 1979] enacted into law by the Berne Convention Implementation Act of

---

translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

1988, Pub. L. 100-568, § 12, 102 Stat. 2853, as well as The Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS), Apr. 15, 1994, 1867 U.N.T.S. 154, enacted into law by the Uruguay Round Agreements Act, Pub. L. 103-456, 108 Stat. 4809. Uniformity in copyright under Federal and international law is not subordinate to the peculiarities of state courts and legislatures. This Court has subject matter jurisdiction to consider the questions raised thereunder.

    2.  <u>The Second Claim Also Arises Under the Copyright Act</u>

       Although Defendants state that registration or application for registration under 17 U.S.C. § 411(a) is precondition for bringing claims under the Copyright Act, and that the absence of same precludes a claim under 17 U.S.C. §§ 1202 & 1203, such is an argument for failure to state a claim, not one regarding subject matter jurisdiction. The Supreme Court has expressly held that registration requirement imposed by 17 U.S.C. § 411(a) does not implicate a federal court's subject matter jurisdiction, but is rather a claim-processing rule. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168-69 (2010). The claims raise Federal questions under 28 U.S.C. § 1331, and they arise under Title 17 of the United States Code, *i.e.* the Copyright Act, under 28 U.S.C. § 1338.

       Moreover, the registration requirement for copyright infringement suits does not apply to actions under 17 U.S.C. §§ 1202 & 1203. Copyright protection is afforded at the moment of creation. *See* 17 U.S.C. § 302(a); *see also* 17 U.S.C. § 408(a) ("Such registration is not a condition of copyright protection."), *Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.)*, 509 F.3d 116, 130-31 (2d Cir. 2007). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Thus, at the moment Mr. Malice authored *Tied Up in Knots,* he was afforded copyright protection.

       Tellingly, Defendants point to no cases addressing whether registration is a precondition of filing suit for falsification of copyright management information. Defendants highlight *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) for the proposition that 17 U.S.C. § 411(a) requires registration, but it is inapposite to the instant matter. *Psihoyos*, and Section

411(a), only speaks to a claim for copyright infringement.  748 F.3d 120.  Actions under 17 U.S.C. §§ 1202 & 1203 relate to the falsification or removal/alteration of copyright management information; the word "infringement" appears nowhere in those sections.  Although cases under Section 1202 are few, this Court has specifically held:

> An owner's copyrighted work can be unregistered.  Unlike its effect on its infringement claim, plaintiff's failure to register its copyrighted work is not a bar to a DMCA action.

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*, 307 F. Supp. 2d 521, 530 n.9 (S.D.N.Y. 2004); *see also Med. Broad. Co. v. Flaiz*, 2003 U.S. Dist. LEXIS 22185, at *8 (E.D. Pa. Nov. 25, 2003) ("We reiterate our prior ruling that no such registration is required.  Nothing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit.  While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter.")  Plaintiff is aware of one decision in which a court, in dicta, suggested that a claim under Section 1202 relating to removal or alteration of copyright management information of an "invalid copyright," where a registration had been found defective.  *See Thron v. HarperCollins Publrs., Inc.*, 2002 U.S. Dist. LEXIS 13670, at *5 (S.D.N.Y. July 24, 2002).  However, *Thron* has been found unpersuasive "where a defendant purposefully attaches false CMI to unregistered copyright material in order to mask its misappropriation."  *Playboy Enters. Int'l v. Mediatakeout.com LLC*, 2016 U.S. Dist. LEXIS 29249, at *12 (S.D.N.Y. Mar. 8, 2016).  By attaching Tantaros's name and copyright notice to *Tied Up in Knots*, Defendants purposefully attached false CMI to Mr. Malice's unregistered work.  Moreover, as discussed, Plaintiff's copyright is not invalid—it attached at creation.  It does not appear that the *Thron* court addressed this issue and, just as two other judges in this District essentially found, it is unpersuasive.  Therefore, the Court has subject matter jurisdiction to hear this properly stated claim.

B. <u>All Claims for Relief Were Properly Stated</u>

Just as the Verified Complaint demonstrates subject matter jurisdiction, it also properly states a claim. Notably, none of the challenges raised are as to whether any of the elements are missing; rather, Defendants raise factual disputes that they can neither prevail on before the trier of fact, let alone at the dismissal stage.

1. <u>The Complaint is Not Inconsistent</u>

Although Plaintiff expected that, upon entering into the Ghostwriting Agreement, the work would be published under Ms. Tantaros's name, he also expected that he would be paid, whereupon he would have readily assigned the copyright to Defendants and authorized publication under her name. However, Defendants have not even requested an assignment and authorization, let alone paid him for his work, and thus Mr. Malice's original copyright, vested at the time of creation, is intact. Defendants claim this is "wholly implausible," suggesting the entire Verified Complaint is internally inconsistent, warranting dismissal of the First, Second, Fourth, and Sixth Claims for Relief. *See* Motion at 19.

Defendants point to no contradiction; they simply do not like to admit failure. Essentially, Defendants were represented by experienced individuals at the time the Collaboration Agreement was made; Ms. Tantaros took it upon herself to terminate that agreement and entire into a new one without such representation. As a result, she failed to include those terms that might normally have been desirable in a ghostwriting agreement, such as terms relating to work-for-hire and confidentiality.

The five supposed contradictions are not contradictory. *See* Motion at 17-18. First, it is not inconsistent to allege payments were due under the schedule of the Collaboration Agreement where that schedule was expressly incorporated into the Ghostwriting Agreement, despite termination of the remainder of the agreement. *See* Complaint at ¶¶ 32-33. Second, although Paragraphs 74 & 76 of the Complaint speaks of payments owed under the "agreements," Defendants' semantic games should not be validated. It is otherwise accurate where a portion of one agreement is incorporated into another, even though they can also be referred to as a unit.

Third, Defendants are free to dispute whether the Bestseller clause in the payment schedule was incorporated into the Ghostwriting Agreement when the whole schedule was incorporated by reference, or whether the parties intended otherwise. But a dispute over the meaning of terms in an oral agreement does not present a contradiction.

Fourth, Defendants argue that pleading claims based solely on the Collaboration Agreement in the Third and Fifth Claims otherwise contradict the remaining claims. Defendants do not point to an inconsistent factual statement, rather they take issue with potentially inconsistent legal theories. The Ghostwriting Agreement is, admittedly, an oral one; if Defendants denied its existence and a jury believed them, Plaintiff would still be entitled to recover under the Collaboration Agreement. These alternate theories are permitted by Fed. R. Civ. P. 8(a)(3) & 8(d)(3). As noted in *XL Specialty Ins. Co. v. Otto Naumann, LTD*, No. 12-CV-8224 (DAB), 2015 U.S. Dist. LEXIS 45028, at *4 (S.D.N.Y. Mar. 31, 2015) *and In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001), cited by Defendants, only inconsistent assertions of fact are prohibited. No factual assertions are inconsistent. And fifth, once more, Paragraph 53 of the Verified Complaint refers to the fact that the payment schedule of the Collaboration Agreement was incorporated into the Ghostwriting Agreement.[6]

Finally, the fact that Plaintiff, in good faith, filed the Verified Complaint under seal is not an admission that the Ghostwriting Agreement incorporated other terms, such as the confidentiality clause. Plaintiff brought claims, in the alternative, under the Collaboration Agreement. To the extent the confidentiality clause survived termination, or if a jury found the Collaboration Agreement was not terminated, Plaintiff was required to seek a sealing order where he disclosed his involvement in the work. A closer reading of the Motion to Seal and the pre-filing notice

---

[6]   Although perhaps not normally appropriate for a motion to dismiss, as Defendants have otherwise padded the record with extraneous matter, and as the document was itself referenced in the Verified Complaint, Plaintiff submits the March 2, 2016 e-mail message as Exhibit 1. Unlike the summary description in Paragraph 53, the actual message does not specifically discuss agreements and clauses by name, but rather shows that Plaintiff expected payment totaling $120,000, but adapted to the written schedule of the Collaboration Agreement.

shows that Plaintiff never admitted the clause was applicable, but that the Motion was brought out of an abundance of caution.

    2.  <u>The Letters of Counsel Are Irrelevant</u>

    Defendants submitted several inadmissible settlement communications in support of their motion. *See* Fed. R. Evid. 408; *Green v. Dist. Council 1707, AFSCME*, 2014 U.S. Dist. LEXIS 103750, at *33-34 (S.D.N.Y. July 29, 2014), aff'd 600 Fed. Appx. 32 (2d Cir. Apr. 17, 2015). They are irrelevant to the issues at hand and, moreover, there is no basis on which judicial notice of letters may be found to be considered under Fed. R. Civ. P. 12(b)(6). None of the cases cited by Defendants suggest as much, with the possible exception of the May 27, 2016 letter because it was referenced in the Verified Complaint. But, even if it might otherwise be considered, it remains inadmissible under Rule 408. However, the following observations must be made:

    In the March 29, 2016 letter, Attorney Heraty specifically sought the full $120,000 recognizing that the Collaboration Agreement was not the only agreement between the parties. Further, although Attorney Heraty referenced performance of all obligations under the Collaboration Agreement and gave notice under Section 9 thereof, such is not dispositive. Just as parties may formally plead multiple theories, a party may make demands under multiple theories as well.

    Defendants also state, well beyond the scope of a Rule 12(b)(6) motion, that the letter was in response to one from Defendants' other attorney, Mr. Cane, and it does not disclaim the confidentiality clause. If the absence of argument in a letter is to be deemed an admission, it should be noted that Defendants did not make any pre-suit argument that Mr. Malice did not meet that most fundamental obligation of writing the book. Of course, Plaintiff recognizes the absurdity of this line of thinking.

    In the May 27, 2016 letter, Attorney Randazza again pursued an amount beyond the scope of the Collaboration Agreement, consistent with the Ghostwriting Agreement. Under the Collaboration Agreement, Mr. Malice was to have been paid $40,000, with a $10,000 bonus for bestseller status. Complaint at ¶ 13. He was only paid $30,000. Thus, if the Collaboration

Agreement governed, he was only owed $10,000, not the $25,000 offer of settlement made by Attorney Randazza. Further, although Attorney Randazza made an argument for rescission under the Collaboration Agreement, such is not otherwise inconsistent with the claim that the Ghostwriting Agreement superseded it. In fact, Defendants both argue that rescission is improper because the breach was immaterial (only $10,000) and that Section 5.1 applied to the Ghostwriting Agreement; they cannot have it both ways. Mr. Malice was only paid 1/5 of what he was owed under the Ghostwriting Agreement; the breach thereof was material and, if Section 5.1 otherwise applies, rescission is proper. Finally, although Attorney Randazza inartfully used the word "modified" rather than "superseded," such does not negate that Mr. Malice, in his Verified Complaint pleaded termination and a new agreement made. To the extent Attorney Randazza's statement has any evidentiary value, such question represents, ultimately, what weight a jury may give the unsworn hearsay of an agent as opposed to the sworn testimony of a principal.

In the May 27 letter, Attorney Randazza gave notice that he would send DMCA notices. Counsel for Defendants did not object to the issuance of such notices. As a lesser measure, Attorney Randazza sent the letter of June 7, 2016 to HarperCollins. Once more, the $25,000 offer was mentioned and Attorney Randazza specifically alleged the existence of the Ghostwriting Agreement. Although Attorney Randazza once more argued rescission, such is not inconsistent with the claim the Ghostwriting Agreement superseded it. Importantly, as the Ghostwriting Agreement was not in writing and HarperCollins would be expected to know of the Collaboration Agreement, Attorney Randazza would have been remiss if he did not also demonstrate that a rescission was proper.

A review of these letters, to the extent such a review is even appropriate, shows that there is no factual inconsistency within them, let alone within the pleading. Defendants are free to present their claims of factual dispute to a jury, but the Verified Complaint otherwise properly alleges facts sufficient to support the claims raised.

3.  <u>Sections 4 & 5.1 Do Not Preclude Declaratory Judgment</u>

In Point IV of their Motion, Defendants argue that the failure to pay $120,000 is not a material breach justifying rescission.  Plaintiff agrees that he has not specifically sought a rescission; instead, he claims that the book was written pursuant to the Ghostwriting Agreement, which contains no work-for-hire or assignment clause.  *See* Complaint at ¶ 79.  Thus, a declaratory judgment that he is the author and owner of the copyright is warranted.

Similarly, in Point VI, Defendants argue that if they committed a material breach, Mr. Malice cannot "reclaim any ownership interests he may have had."  Motion at 26.  Defendants misunderstand.  Mr. Malice is not primarily seeking to reclaim ownership interests; because the parties terminated the Collaboration Agreement, Defendants have no interest in the book Mr. Malice wrote.  The Ghostwriting Agreement contained no written work-for-hire provision or written assignment of copyright.  They agree these must be in writing and they do not point to any such writing that applies to work performed subsequent to the termination of the Collaboration Agreement or under any other agreement.  Mr. Malice did not need a writing under Section 204(a) to transfer copyright back to him in a book he had not yet written, where the prior agreement had been terminated.  A declaration that Tantaros is not the true copyright owner, in the face of the false statement in the published book, is thus warranted.

However, to the extent clauses such as Sections 4 or 5.1 of the Collaboration Agreement might extend to all or part of the work, the Court should nonetheless disregard them and deem them rescinded.  *Id.* at ¶¶ 80-81.  Although "rescission" does not appear in the Prayer for Relief, it would be "other relief deemed just and proper" in furtherance of the declaratory judgment sought.  If necessary, Plaintiff will seek to amend the Complaint to specifically seek a rescission.

Defendants claim that Mr. Malice can be adequately compensated in the amount of $10,000 and that the failure to pay was not a material breach.  Defendants seem to ignore that the claim is not primarily for $10,000, but rather for an unpaid $120,000, which is 80% of the contract amount.  Such is a nearly "total failure" to perform their obligations, which they have repudiated.  *See Morris v. Castle Rock Entm't*, 246 F. Supp. 2d 290, 294 (S.D.N.Y. 2003); *Nolan v. Williamson*

- 13 -

*Music, Inc.*, 300 F. Supp. 1311, 1318 (S.D.N.Y. 1969). Although Defendants assert that Mr. Malice breached the confidentiality clause, relieving them of their obligation to make payment, acting as a repudiation, it is telling that they have yet to provide any alleged detail of that breach. Yet, they were provided the opportunity to do so. *See* Declaration of Burstein at Ex. A. Thus, if adverse inferences are being made from an attorney's failure to respond to a particular point, as Defendants wish the Court to make (Motion at 20-21), such would also be appropriate as against Defendants. In any event, the provisions of the Collaboration Agreement do not preclude a declaratory judgment that Mr. Malice is the copyright owner of *Tied Up in Knots.*

    4. <u>All Material Terms of the Ghostwriting Agreement Were Alleged</u>

    Defendants argue that the absence of confidentiality provisions and rights provisions from the oral Ghostwriting Agreement makes it unenforceable as lacking definiteness. Defendants provide no explanation as to how those terms are material or precedent suggesting they must be. Neither could they possibly do so.

    Defendants direct this Court's attention to *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989). That case also states, in relevant part:

> Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear. The conclusion that a party's promise should be ignored as meaningless is at best a last resort.

74 N.Y.2d at 483 (internal citations and quotation marks omitted). The agreement is reasonably certain and its meaning is clear. The material terms were (1) that Mr. Malice would ghostwrite the book and (2) that Defendants would pay him $150,000. Oral contracts are enforceable where parties agree upon the work to be performed and the terms of compensation. *See, e.g., Schwartz v. Houss*, 800 N.Y.S.2d 356, 356 (Kings Cty. Sup. Ct. Jan. 3, 2005). Defendants' promise to pay Mr. Malice the outstanding $120,000 should not be ignored as meaningless.

    Further, although the written Collaboration Agreement payment schedule could not have accounted for the increased amount due, Mr. Malice would show that the parties incorporated it and adapted it for the Ghostwriting Agreement. *See* <u>Exhibit 1</u>. Once more, if Defendants deem a

lack of a response an admission, Tantaros did not repudiate this payment schedule.   More important, even if Defendants demonstrate that the prior payment schedule could not be adapted to the Ghostwriting Agreement, there is no reason to ignore their material promise to pay the total amount where Mr. Malice fully performed.   Such schedule is not material.

A transfer of rights or explicit work-for-hire clause is not a required material term and Defendants offer nothing beyond their *ipse dixit*.   The law fills in the default provision: Mr. Malice is the copyright owner in the absence of written terms to the contrary.   *See* 17 U.S.C. §§ 101 & 204; *see also Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989).   Similarly, a confidentiality clause is not a material term; Defendants point to no caselaw requiring parties to contracts for services to negotiate a confidentiality clause.   The default rule, of course, is that the agreement would not be confidential, and Mr. Malice properly pleaded that the only provision of the Collaboration Agreement incorporated was the payment schedule, necessarily disclaiming confidentiality.   Although Ms. Tantaros may lament not having negotiated a rights transfer and confidentiality, she only has herself to blame.   Therefore, the agreement is sufficiently definite and dismissal is not warranted.

C. Paragraph 40 Contains Tantaros's Admission of Plaintiff's Authorship and Fulfillment

It is understandable why Defendants seek to strike the masturbation quotation from Paragraph 40 of the Verified Complaint.   However, a motion to strike should be granted only when the material at issue bears no possible relation to the controversy or may cause prejudice to the party opposing the motion.   *See Talbot v. Robert Matthews Distr. Co.*, 961 F.2d 654 (7th Cir. 1992).   Similarly, "[t]o have redundant, immaterial or impertinent matters stricken from a pleading, the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001) (internal citation and quotation marks omitted). Mr. Malice has previously represented its relation to the case to the Court and Defendants and shown why the text would be admissible and have bearing.   Why Defendants state that the

language "serves no purpose, and was included simply to smear Ms. Tantaros's reputation" in the face of the previously given reason is unclear. They do not even acknowledge such explanation, let alone show why the language does not serve those purposes. The complete text message from Tantaros to Mr. Malice reads "Little does he know that after reading the book manuscript I actually ███████ to yours." See Exhibit 2.[7] As previously indicated to the Court and Defendants, it demonstrates that Mr. Malice is the author of the book manuscript and the approval of Tantaros of the work performed; the omission of the "to yours" portion was a scrivener's error and Mr. Malice would seek leave, if necessary, to correct it and include the remainder. See Declaration of Counsel at ¶ 7.

Moreover, Tantaros has not shown it is scandalous or would smear her reputation. Though, perhaps, some would be embarrassed by a discussion of ██████, not everyone is. In fact, in the book published under her name, for which she claims credit, Mr. Malice wrote:

- While the sex therapists whom I've talked to acknowledge that ██████ is healthy, they also concur that it can become highly antisocial behavior by its very nature. (P. 161).
- We're not just keeping up with the Joneses. We're keeping up with Debbie, too—and she's done an entire city in Texas (P. 163).
- Sex is power, and women control sex. (P. 229).
- Culturally, I can point to many influences on my generation. Look at icons like Madonna, simulating sex as if she were a man and dominating dozens of submissive male dancers around her. I recall watching Demi Moore in *G.I. Jane* infamously shout out "Suck my dick!" Sure it was a movie, but I've heard many women use the phrase over time. Why do women feel they need to have a penis to exude power? An honest man once told me having a penis is a constant disadvantage. Besides, women carry around the most powerful weapon with us everywhere we go. (P. 40).
- There's been many an instance where I've taken control in a playful way behind closed doors. This can be sexy and hot. (P. 48)
- Here's my approach to the man I love: I give him space; I give him lots of love; I respect him; I give him intimacy all the time. (P. 230)
- There's a terrible joke I once heard. Why is a woman smiling so big on her wedding day? Because she knows she gave her last you-know-what. Now imagine if the joke were reversed: Why is a man smiling so big on his

---

[7]   The bolding of "██████" in the exhibit appears to be an artifact of the automated search process that retrieved it; Plaintiff does not wish to suggest Tantaros sent it in bold letters.

wedding day? Because he doesn't have to go down on a woman again. Women would be rioting in the streets. (P. 231).

- There's no harm in ordering some hot lingerie or pulling a man into the bathroom of a restaurant. (P. 232).
- Many on the right are uncomfortable discussing sexuality at all, so how are they supposed to criticize misbehavior? In the same way that some feminists expand the definition of rape beyond all meaning, so too do these conservatives paint all sexual behavior with the same broad, disapproving brush. (P. 228)

*See* Excerpts from *Tied Up In Knots*, attached hereto as <u>Exhibit 3</u>.

Tantaros is painting her own ████ behavior with the same broad, disapproving brush decried in the book. An admission that she ████████ is not scandalous for Tantaros and it could not smear her reputation beyond anything she allowed to be published in the book under her name.

Finally, Defendants fail to inform the Court that Mr. Malice offered to remove the quotation, but did not wish to do so in a manner that would cause him prejudice. Thus, he offered a compromise—he would remove it if Defendants would stipulate to <u>factual</u> authorship (not legal) and satisfaction. *See* <u>Exhibit 4</u>. Defendants declined. *See* <u>Exhibit 5</u>. Mr. Malice has no desire to smear Tantaros's reputation; he even erred on the side of caution and sought to seal the case. Though the proposed stipulation was rebuffed, Mr. Malice would be willing, upon the expiration of the present seal, to have the word '████████' sealed and file on the public docket a copy of the Verified Complaint or any amended complaint with that word redacted. The motion to strike should not otherwise be granted.

## IV.   Conclusion

Mr. Malice is owed $120,000 from Defendants, who have appropriated his work in denigration of their promise. Then, even though they did not pay him, they have taken credit for his work. And, with the exception of their failure to understand that a Section 1202 claim does not require registration, Defendants cannot and do not suggest that the claims, as stated, are not properly before the Court. Instead, they continue to abuse the law by taking a "kitchen-sink approach to litigation." *Black Radio Network, Inc. v. Nynex Corp.*, 44 F. Supp. 2d 565, 588 (S.D.N.Y. 1999); *see also Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*,

No. 4:11CV1299 RWS, 2014 U.S. Dist. LEXIS 25054, at *2 n.2 (E.D. Mo. Feb. 27, 2014) (decrying a "'throw everything against the wall and see what sticks' approach to litigation.") None of their arguments have merit and a prompt decision is required to unseal the matter for, in the words of Justice Brandeis, in language even Defendants would approve of:

> Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.

*Buckley v. Valeo*, 424 U.S. 1, 67 (1976) quoting L. Brandeis, Other People's Money 62 (National Home Library Foundation ed. 1933).

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendants Andrea K. Tantaros and Astero, LLC's Motion to Dismiss the Complaint and for Related Relief *in toto*.

Dated: October 27, 2016                    Respectfully Submitted,

Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

Ronald D. Green
*Pro Hac Vice* Motion Forthcoming
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

*Attorneys for Plaintiff, Michael Krechmer
a/k/a "Michael Malice"*

- 18 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2016, I served a true and correct copy of the foregoing document via electronic mail and U.S. Mail upon counsel for Defendants identified below:

> Judd Burstein, Esq.
> 5 Columbus Circle
> New York, NY 10019
> <jburstein@bursteinlaw.com>

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC