# **<u>EXHIBIT A</u>**



**Jay Marshall Wolman, JD**
Licensed in CT, MA, NY, DC

**11 October 2016**

<u>Via Hand Delivery — FILED UNDER SEAL</u>

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

>   Re:   *Krechmer v. Tantaros* | 16-cv-7820
>         *Opposition to Letter-Motion seeking Extension of Seal and Briefing*

Dear Judge Forrest:

I am writing on behalf of Plaintiff in response to Mr. Burstein's letter.

Contrary to the representation of Defendants, Plaintiff does not object to a limited extension of the sealing order. In fact, on Friday, October 6, 2016, Attorney Joseph Cane, who also represents Defendants, specifically requested a fifteen (15) day extension of both the time to answer the complaint and to file a more substantive application for an extended sealing order, to which Plaintiff agreed. See **Exhibit 1**. That a different attorney now seeks to ignore that agreement and make spurious allegations is disappointing. Plaintiff, however, remains willing to abide the earlier agreement.

However, Defendants provide no argument as to why the matter should remain sealed. To the contrary, they "do not believe that this case would merit sealing if it were to go forward". Although they provide a citation to *Zappin v. Cohen*, 15-cv-7271 (S.D.N.Y. May 27, 2016), that case provides no basis to seal the case if the disposition favors a defendant, but not seal the case if the disposition favors a plaintiff. Rather, it speaks to a general basis to seal a case where privacy interests outweighed the public interest. As the public has a clear interest here, as noted by Defendants, it should not matter whether Defendants prevail on a motion to dismiss.

In fact, in other litigation filed by Defendants, they and their counsel argue against defendants "desperate to have this dispute heard behind closed doors, because they do not want their appalling conduct to be subject to public scrutiny." For, "[i]n the words of Justice Brandeis, which are as applicable here today as they were when he wrote them back in 1913: 'Sunlight is said to be the best of disinfectants.'" *See Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016, at pp. 1 & 4 (N.Y. County, Sup. Ct. of N.Y., Sept.28, 2016) (Memorandum in Opposition to Motion to Compel Arbitration) (**Exhibit 2**).

Plaintiff does not believe it appropriate to argue the merits of a non-filed motion to dismiss in this letter. However, certain allegations must be addressed to avoid prejudice.

*Krechmer v. Tantaros | 16-cv-7820*



First, there is nothing improper were Plaintiff to be working in conjunction with Fox News. But Defendants are misguided in any belief that the instant matter was filed to help Fox News.  In what appears to be another instance of a failure of Defendants' attorneys to speak with each other, Plaintiff raised his claim for the unpaid $120,000 almost a month before Ms. Tantaros was even suspended by Fox News.  See **Exhibit 3**.  Although subsequent letters sought "at least $25,000", the amount remaining on the Collaboration agreement, Plaintiff never abandoned his claim for the full $120,000.

Second, the Ghostwriting Agreement did not merely modify the Collaboration Agreement; it terminated it.  Defendants point to no provision suggesting termination must be in writing.  The Ghostwriting Agreement was made because the scope of work sought by Ms. Tantaros, unable to meet her commitments, far exceeded the editing and minor writing of Plaintiff as a collaborator.  The termination is pleaded.  A new contract is pleaded.  There were no writings required by the Copyright Act to consider the new ghostwriting as a work for hire or to otherwise assign copyright.  Even if Section 5.1 of the Collaboration Agreement might govern what was written before the Ghostwriting Agreement was created, the termination of the Collaboration Agreement precludes application of Section 5.1 to everything written thereafter.  Thus, the Section 1202 claim is a valid basis for the exercise of subject matter jurisdiction, as well as the declaratory judgment claim over the dispute as to copyright ownership.

Finally, Defendants take issue with the inclusion of the allegation in Paragraph 40 as to the salacious statement of Ms. Tantaros to Mr. Malice.  That there is salacious content in that statement was not the purpose of pleading it; rather, it was intended to show an admission by Ms. Tantaros that Mr. Malice was the author of the book.  A scrivener's error cut the last two words—the relevant excerpt is actually "after reading the book manuscript I actually █████████ *to yours*".  See **Exhibit 4** (emphasis added).  Plaintiff is certainly willing to amend the complaint to add those two words to clarify its purpose.

There is no good cause to continue the seal and no reason to modify briefing as would otherwise be applicable under the rules.

Thank you for your attention to this matter.

Sincerely,

Jay Marshall Wolman

cc:     Judd Burstein
        <JBurstein@burlaw.com>

# <u>EXHIBIT 1</u>

Emails between Ronald D. Green
and Joseph C. Cane

10/10/2016  Randazza Legal Group Mail - Malice adv. Tantaros - Notice RE: Confidentiality

Case 1:16-cv-07820-KBF  Document 109-1  Filed 08/25/17  Page 5 of 44



Trey Rothell <tar@randazza.com>

---

## Malice adv. Tantaros - Notice RE: Confidentiality

**Joseph C. Cane, Jr.** <jcane@arendsenlaw.com>                    Fri, Oct 7, 2016 at 3:34 PM
To: Ron Green <rdg@randazza.com>, "Jay M. Wolman" <jmw@randazza.com>
Cc: Trey Rothell <tar@randazza.com>, "Christian S. Molnar" <cmolnar@arendsenlaw.com>

Thank you.  We agree to the terms as you have outlined them below and we will be back to you next week.


**JOSEPH C. CANE, JR.**

ATTORNEY

**ARENDSEN CANE MOLNAR LLP**

*LOS ANGELES —SAN DIEGO*

12400 WILSHIRE BOULEVARD

LOS ANGELES, CALIFORNIA 90025

310.820.9900 x. 901 (OFFICE)

310.489.7793 (CELL)

310.919.1950 (FAX)

JCANE@ARENDSENLAW.COM

*This communication may contain information that is legally privileged, confidential or exempt from disclosure.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**From:** Ron Green [mailto:rdg@randazza.com]
**Sent:** Friday, October 07, 2016 3:25 PM
**To:** Jay M. Wolman <jmw@randazza.com>
**Cc:** Joseph C. Cane, Jr. <jcane@arendsenlaw.com>; Trey Rothell <tar@randazza.com>
**Subject:** Re: Malice adv. Tantaros - Notice RE: Confidentiality


Dear Mr. Cane:


Thanks for your call. We are willing to grant Ms. Tantaros a 15-day extension to respond to the Complaint. Thus, her responsive pleading would be due 36 days after service. We are additionally willing to grant Ms. Tantaros a 15-day extension to move to extend the seal. Thus, that motion would be due 15 days from the date of service. In turn, we request that you agree that service is effective as of today, October 7, 2016. We also request that you contact the Court on Tuesday morning to inform the Court of this agreement and that you prepare the necessary stipulation and proposed order. The stipulation should additionally state that you have accepted service for Ms. Tantaros effective October 7, 2016.

_____

**Ronald D. Green\*** | **Randazza Legal Group, PLLC**
4035 S. El Capitan Way | Las Vegas, NV 89147
Tel: 702-420-2001 | Email: rdg@randazza.com

_____

\* Licensed to practice law in Nevada.


On Oct 7, 2016, at 11:47 AM, Jay M. Wolman <jmw@randazza.com> wrote:


Dear Attorney Cane,


I am writing in furtherance of my voicemail message.  We attempted service at 154 W. 70th, which is your client's address of record, but we were advised by building management she no longer resides there.  If there is a new address for service, please let us know.


Thank you.


Sincerely,

Jay Wolman


_____

**Jay Marshall Wolman, CIPP/US, Counsel\***

**Randazza Legal Group, PLLC**
100 Pearl Street, 14th Floor | Hartford, CT 06103
Tel: 702-420-2001 | Email: jmw@randazza.com

_____

\* Licensed to practice law in Connecticut, Massachusetts, New York and the District of Columbia.


The information contained in this message may be privileged, confidential and/or exempt from disclosure under applicable law.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of any information contained herein or attached to this message is strictly prohibited.  If you have received this email in error, please immediately notify the sender and destroy the original transmission and its attachments in their entirety, whether in electronic or hard copy format, without reading them.  Thank you.


On Fri, Oct 7, 2016 at 11:02 AM, Jay M. Wolman <jmw@randazza.com> wrote:

Dear Attorney Cane,


In furtherance of my e-mail and voicemail yesterday, please find attached a copy of the documents that have been and/or will be served on your clients, Astero & Ms. Tantaros, today.

Note that each defendant will be served a copy of each of these documents, excepting that Ms. Tantaros will not be served the specific Astero Summons and vice versa.

If we should notify Ms Tantaros herself by email or her attorney in the Fox News matter, Attorney Burstein, please let us know immediately. We are continuing otherwise to communicate with you as you were the last representative of Defendants to communicate with us and we have not been given notice that you no longer represent her with respect to this matter.

Thank you for your continued attention to this matter.

Sincerely,

Jay Wolman

_____

**Jay Marshall Wolman, CIPP/US, Counsel***

**Randazza Legal Group, PLLC**

100 Pearl Street, 14th Floor | Hartford, CT 06103

Tel: 702-420-2001 | Email: jmw@randazza.com

_____

* Licensed to practice law in Connecticut, Massachusetts, New York and the District of Columbia.

The information contained in this message may be privileged, confidential and/or exempt from disclosure under applicable law.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of any information contained herein or attached to this message is strictly prohibited.  If you have received this email in error, please immediately notify the sender and destroy the original transmission and its attachments in their entirety, whether in electronic or hard copy format, without reading them.  Thank you.

On Thu, Oct 6, 2016 at 2:08 PM, J. Marshall Wolman <jmw@randazza.com> wrote:

> Dear Attorney Cane,
>
> As per yesterday's notice, suit was filed today in the Southern District of New York. We will be serving your clients shortly. The case was filed under seal. The seal will expire in seven days unless a motion to extend is made by October 11 at 9:30 in the morning.
>
> Please note that although we filed in White Plains, the case will from here be in Manhattan.
>
> If we should notify Ms Tantaros herself by email or her attorney in the Fox News matter, please let us know immediately.
>
> Thank you.
>
> Sincerely ,

Jay Wolman

_____

Jay Marshall Wolman, CIPP/US, Counsel*
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor | Hartford, CT 06103
Tel: 702-420-2001 | Email: jmw@randazza.com
_____
* Licensed to practice law in Connecticut, Massachusetts, New York and the District of Columbia.

The information contained in this message may be privileged, confidential and/or exempt from
disclosure under applicable law. The information is intended only for the use of the individual or entity
named above. If you are not the intended recipient, you are hereby notified that any use,
dissemination, distribution or reproduction of any information contained herein or attached to this
message is strictly prohibited. If you have received this email in error, please immediately notify the
sender and destroy the original transmission and its attachments in their entirety, whether in electronic
or hard copy format, without reading them. Thank you.

On Wed, Oct 5, 2016 at 2:36 PM -0400, "Trey Rothell" <tar@randazza.com> wrote:

Mr. Cane,

Please find attached a Notice Pursuant to Paragraph 10(c) of the Collaboration Agreement
regarding the dispute between our client, Mr. Michael Krechmer (a/k/a Michael Malice) and your
clients, Ms. Andrea Tantaros and Astero, LLC.

Thank you,

**Trey A. Rothell*** | **Randazza Legal Group, PLLC**

4035 S. El Capitan Way, Las Vegas, NV 89147

Tel: (702) 420-2001 | Email: tar@randazza.com

* Paralegal; not licensed to practice law.

# <u>EXHIBIT 2</u>

Tantaros v.
Fox News Network, LLC, et al.,

Index No. 157054/2016,
(N.Y. County, Sup. Ct. of N.Y.,
Sept.28, 2016)

Memorandum in Opposition to Motion
to Compel Arbitration

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ANDREA TANTAROS,

                        *Plaintiff,*            Index No. 157054/2016

      – against –

                                         Motion Seq. No. 3

FOX NEWS NETWORK, LLC, ROGER AILES,
WILLIAM SHINE, DIANNE BRANDI,
IRENA BRIGANTI, and SUZANNE SCOTT,

                    *Defendants.*

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROGER AILES' MOTION TO COMPEL ARBITRATION

JUDD BURSTEIN, P.C.
Judd Burstein
Peter B. Schalk
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
*Attorneys For Plaintiff Andrea Tantaros*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

A.     RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.     RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I

THE STANDARD GOVERNING THIS MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT II

PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO ARBITRATION . . . . . . . . . . . . . . . . 10

POINT III

DEFENDANTS CANNOT RELY UPON PLAINTIFF'S
ARBITRATION AGREEMENT WITH FOX NEWS DUE
TO ITS PRIOR MATERIAL BREACH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

POINT IV

THE DEFENDANTS OTHER THAN FOX NEWS
LACK STANDING TO COMPEL ARBITRATION . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT V

ALTERNATIVELY, PLAINTIFF WOULD DISCONTINUE
AGAINST FOX NEWS AND PROCEED ONLY AGAINST
THE INDIVIDUAL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

TABLE OF AUTHORITIES

<u>CASES</u>

*Amisill Holdings, Ltd. v. Clarium Capital Mgmt. LLC,*
    622 F. Supp. 2d 825 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Arnold v. Arnold Corp. Printed Commc'ns for Bus.,*
    920 F.2d 1269 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Arrigo v. Blue Fish Commodities,*
    704 F. Supp. 2d 299 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Beame v. DeLeon,*
    87 N.Y.2d 289 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Carrero v. New York City Housing Authority,*
    890 F.2d 569 (2d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cicchetti v. Davis Selected Advisors,*
    No. 02 CIV.10150 RMB, 2003 WL 22723015 (S.D.N.Y. Nov. 17, 2003) . . . . . . . . 12, 15

*Contec Corp. v. Remote Sol., Co.,*
    398 F.3d 205 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Coors Brewing Co. v. Molson Breweries,*
    51 F.3d 1511 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Deering v. Graham,*
    No. CIV. 14-3435, 2015 WL 424534 (D.N.J. Jan. 30, 2015) . . . . . . . . . . . . . . . . . . . . 14

*Devon Robotics v. DeViedma,*
    No. 09-cv-3552, 2012 WL 3627419 (E.D.Pa. Aug. 23, 2012) . . . . . . . . . . . . . . . . . . . 21

*Di Martino v. Dooley,*
    No. 08 Civ. 4606, 2009 WL 27438 (S.D.N.Y. Jan. 6, 2009) . . . . . . . . . . . . . . . . . . . . . 9

*Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.,*
    4 N.Y.3d 247 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Endriss v. Eklof Marine Corp.,*
    No. 96 CIV. 3137, 1998 WL 1085911 (S.D.N.Y. July 28, 1998) . . . . . . . . . . . . . . . . . 10

*Fletcher v. Kidder, Peabody & Co.*,
    81 N.Y.2d 623 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Fuller v. Guthrie*,
    565 F.2d 259 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-14

*Guyden v. Aetna, Inc.*,
    544 F.3d 376 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hirschfeld Prods., Inc. v. Mirvish*,
    88 N.Y.2d 1054 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*In re The Containership Co.*,
    No. 11-12622-JLG, 2016 WL 2341363 (Bankr. S.D.N.Y. Apr. 29, 2016) . . . . . . . . 13, 20

*Jones v. Halliburton Co.*,
    583 F.3d 228 (5th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Letizia v. Prudential Bache Securities, Inc.*,
    802 F.2d 1185 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Markham Gardens L.P. v. 511 9th LLC*,
    38 Misc. 3d 325, 954 N.Y.S.2d 811 (Sup. Ct. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Massen v. Cliff*,
    No. 02 CIV 9282, 2003 WL 2012404 (S.D.N.Y. May 1, 2003) . . . . . . . . . . . . . . . . . . 22

*McCarthy v. Azure*,
    22 F.3d 351 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Moss v. BMO Harris Bank, N.A.*,
    No. 13–CV–05438, 2014 WL 2565824 (E.D.N.Y. June 9, 2014) . . . . . . . . . . . . . . . . 10

*Norcast S.AR.L v. Castle Harlan, Inc.*,
    No. 12 Civ. 4973, 2014 WL 43492 (S.D.N.Y. Jan. 6, 2014) . . . . . . . . . . . . . . . . . . . . . 11

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.,*
    No. 00 CIV. 4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) . . . . . . . . . . . . . . . . . 22

*Pritzker v. Merrill Lynch, Pierce, Genner & Smith, Inc.,*
    7 F.3d 1110 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ragone v. Atl. Video at Manhattan Ctr.,*
    No. 07 CIV. 6084 (JGK), 2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008),
    *aff'd*, 595 F.3d 115 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13, 15

*Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.,*
    No. 13 CIV. 7147, 2014 WL 4377852 (S.D.N.Y. Sept. 4, 2014) . . . . . . . . . . . . . . 18-19

*Republic of Iraq v. ABB AG,*
    769 F. Supp. 2d 605 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*RN Solution, Inc. v. Catholic Healthcare West,*
    165 Cal.App.4th 1511(2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Robert Lawrence Co. v. Devonshire Fabrics, Inc.,*
    271 F.2d 402(2d Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Roby v. Corporation of Lloyd's,*
    996 F.2d 1353 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ross v. Am. Exp. Co.,*
    547 F.3d 137 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20-21

*Thomas v. Pub. Storage, Inc.,*
    957 F. Supp. 2d 496 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13, 15

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,*
    64 F.3d 773 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Tong v. S.A.C. Capital Mgmt., LLC,*
    52 A.D.3d 386, 860 N.Y.S.2d 84 (1st Dep't 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.,*
    774 F.2d 524 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

iv

*Washington v. CentraState Healthcare Sys., Inc.*,
     No. CIV. 10-6279, 2011 WL 1402765 (D.N.J. Apr. 13, 2011) . . . . . . . . . . . . . . . . . . . . 14

*Zuckerman v. CB Richard Ellis Real Estate Servs., LLC*,
     2013 NY Slip OP 30997(U) (Sup. Ct. N.Y. Cty. May 3, 2013) . . . . . . . . . . . . . . . . . . 23

STATUTES AND OTHER AUTHORITIES

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

v

## INTRODUCTION

Plaintiff Andrea Tantaros ("Plaintiff" or "Tantaros") respectfully submits this Memorandum of Law ("MOL") in joint opposition to the motions to compel arbitration filed by (a) Defendant Roger Ailes ("Ailes"), which is Motion Seq. No. 3, and (b) Defendants Fox News Network, LLC ("Fox News"), William Shine, Diane Brandi, Irena Briganti, and Suzanne Scott (collectively, the "Fox Defendants"), which is Motion Seq. No. 4 (the Fox Defendants and Ailes are collectively referred to herein as "Defendants"), together with (c) such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

By way of these motions to compel arbitration, Defendants seek to transfer this dispute out of the spotlight of a public courtroom, and into the shadows of a private arbitration. Defendants are desperate to have this dispute heard behind closed doors, because they do not want their appalling conduct to be subject to public scrutiny: not only did Ailes subject Tantaros to repulsive and illegal harassment, but all of the Defendants zealously sought to cover it up, and then punished Tantaros when she refused to go along with Ailes's program.

Nonetheless, if Defendants were actually entitled to arbitrate this dispute under the law, and they are not based upon our facts, they could have achieved that goal by filing straightforward motions to compel arbitration. But Defendants did not do that. Instead, and true to form, Defendants responded with a vicious, blame-the-victim stye personal assault against Tantaros. In particular, the Fox Defendants smeared Tantaros as "an opportunist" and a "'wannabe'" who filed a complaint "filled with falsehoods" (Fox Defendants' MOL, p. 1, 2, n. 1), while Ailes has the temerity to state

that Tantaros deserved whatever she got because she dared to post some vacation pictures which showed her in a bikini. (Ailes's MOL, p. 2).[1]

Unbeknownst to Defendants, who felt free to publicly impugn Tantaros's character without fear of the consequences, Plaintiff has unimpeachable, contemporaneous evidence confirming the truthfulness of her allegations. In particular, back in 2014, 2015, and early 2016, when Tantaros was suffering the worst of the harassment she experienced at Fox News, she spoke with one of the few sources of comfort available to her at the time – her psychotherapist, Michele Berdy, Ph.D ("Dr. Berdy"). While she could not have imagined it then, by seeking help from her therapist, Tantaros was also creating contemporaneous, independent evidence of Defendants' harassment. Thus, long before this lawsuit was filed, at a time when Plaintiff had no conceivable motive to fabricate allegations about Defendants, Tantaros told Dr. Berdy everything that was happening at Fox News.

Accordingly, in partial response to Defendants' motions – where they saw fit to call Tantaros a liar in Memoranda of Law signed by attorneys with no personal knowledge of the facts – Plaintiff has submitted an affidavit from Dr. Berdy, which confirms that years before this lawsuit was filed, Plaintiff told her therapist in real time about the harassment and retaliation perpetrated against her by Defendants. (*See* Ex. D to Plaintiff's accompanying September 28, 2016 affirmation of Judd

---

[1]   While inappropriate generally, Ailes's argument that Tantaros essentially asked to be sexually harassed because she posted some bikini pictures is particularly hypocritical, considering that he holds Kimberly Guilfoyle out as a paragon of what a Fox News commentator should be. (Ailes's MOL, p. 3). Before joining Fox News, Ms. Guilfoyle was a Victoria's Secret model and there are numerous pictures of her on the Internet wearing revealing lingerie. To be sure, Plaintiff does not take issue with Ms. Guilfoyle's work as a model or the existence of these photographs. Rather, the point is that based on Ailes's position on this motion, Ms. Guilfoyle's co-workers at Fox News have *carte blanche* to sexually harass her based on these pictures.

2

Burstein, Esq. ("Burstein Aff."), which is a true and accurate copy of Dr. Berdy's affidavit ("Berdy Aff."), duly sworn to on September 15, 2016).

Importantly, Tantaros did not ask Dr. Berdy to provide corroboration of her claims. Instead, when Dr. Berdy saw that Defendants and their surrogates were falsely claiming that Tantaros had lied about having been sexually harassed at Fox News, Dr. Berdy reached out to Plaintiff and volunteered to corroborate her account. In particular, on September 7, 2016, Dr. Berdy sent Plaintiff an unsolicited email stating: "**I know that you're telling the truth**…. **If I can be of help in validating your claims, please get in touch**." (Ex. B to Burstein Aff.) (Emphasis supplied). Dr. Berdy only reached out to Plaintiff because "the excoriation of [Tantaros] in the press as an opportunist and a liar [was] repugnant to [her]." (*See* Dr. Berdy's September 11, 2016 email to Tantaros, which is Ex. C to Burstein Aff.)

In light of Plaintiff's prior consistent statements to her therapist, Defendants' assault upon her integrity is all the more shameful, because they know full well that she is telling the truth. Indeed, Defendants have personal knowledge that Plaintiffs' allegations are true, considering that (a) in the case of Ailes, he perpetrated the initial sexual harassment and then torpedoed Tantaros's career when she rebuffed him, (b) Tantaros went to Defendants Bill Shine ("Shine"), Suzanne Scott ('Scott"), and Dianne Brandi ("Brandi"), for protection from Ailes, only to have Shine warn Tantaros that Ailes was a powerful man and that she had better forget what happened, and (c) in the case of Irena Briganti, she served as Ailes's personal enforcer, waging a coordinated public relations campaign to ruin Tanatros both professionally and personally. Still, it is hardly surprising that

3

Defendants have resorted to smear tactics with no basis in fact, because that approach has worked so well for Ailes and Fox News in the past.[2]

Apart from responding to Defendants' baseless personal attacks, the substance of Plaintiffs' opposition to these motions is relatively straightforward: the arbitration clause does not encompass Defendants' illegal conduct, and even if it did, Defendants cannot rely upon it because they materially breached it. Additionally, numerous non-signatories to Tantaros's employment agreement are seeking to invoke its arbitration provision – *i.e.*, every Defendant other than Fox News. However, the Employment Agreement bars any Defendant other than Fox News from seeking to invoke rights under it, including the right to arbitrate. Even if this were not so, Defendants other than Fox News still would not have standing to compel arbitration, because Plaintiff's claims do not arise out of Tantaros's Employment Agreement. In all events, if this Court should find (respectfully erroneously) that Tantaros is required to arbitrate this dispute with Fox News, Plaintiff would agree to discontinue against Fox News and proceed only against the individual Defendants.

For these reasons, Defendants' motions should be denied, with this dispute being allowed to proceed in a public forum. In the words of Justice Brandeis, which are as applicable here today as they were when he wrote them back in 1913: "Sunlight is said to be the best of disinfectants."

---

[2]   At least that was true until very recently, when, as reported in the *New York Times* and other media outlets, Gretchen Carlson had the courage and foresight to record Ailes's grotesque advances on her iPhone. It was only then, when Defendants were caught red-handed, that Fox News changed its tune and publicly apologized to Ms. Carlson for Ailes's sordid conduct and settled with her financially. It is, of course, troubling that Fox News still saw fit to shower Ailes with a $40 million golden parachute after he was forced to resign in disgrace, and then paid Carlson another $20 million largely on Ailes's behalf, without any contribution from him.

4

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   RELEVANT FACTS

The facts are relevant only with respect to the issue of whether Plaintiff's claims fall within the scope of the agreement to arbitrate.  Accordingly, we summarize them here:

In 2011, Plaintiff signed a contract with Fox News to serve as a regular co-host of the Fox News television show, *The Five,* which aired at the highly desirable time of 5:00 p.m. each weekday. (Complaint ("Compl.") ¶ 1).  The agreement ("Employment Agreement") contained an arbitration provision with a strict confidentiality provision.  (Ex. A to the August 29, 2016 affirmation of David Garland, Esq. ("Garland Aff."), filed in support of Motion Seq. No. 4, at p. 11, § 8).

In the late summer of 2014, Tantaros's tenure at Fox News devolved into a nightmare of sexual harassment by Ailes, Fox News's then-President, and others, followed by retaliation by Ailes and others.  This conduct included:

a.   Ailes asking Tantaros on two occasions, with no success, to "turn around so I can get a good look at you," which requests were part of a pervasive course of conduct on the part of Ailes towards other Fox News female on-air personalities such that his "turn around" requests were generally referred to by Fox News personnel as "the twirl";

b.   On one of the occasions when Tantaros was asked to perform "the twirl,"Ailes also asked her to "come over here so I can give you a hug";

c.   On a later occasion, Ailes told Tantaros that she "looked good," and that "I bet you look good in a bikini";

d.   Ailes unsuccessfully sought to ask Tantaros outrageous questions about the sexual relationships of other Fox News employees, such as whether (i) Fox News Host Greg

5

Gutfeld ("Gutfeld") was "gay," (ii) Fox News Contributor Dana Perino ("Perino") was "a lesbian," or (iii) Gutfeld and Perino were "sleeping together"; and

e.   Ailes also forced Tantaros to suffer through his demeaning comments about other Fox News employees, such as Ailes's statement to Tantaros that Fox News host Kimberly Guilfoyle was a "Puerto Rican whore." (Compl. ¶ 5).

In the wake of Tantaros's rebuffing of Ailes's sexual harassment and his effort to engage in inappropriate conversations about Fox News employees, Ailes initially retaliated against Tantaros in a host of ways, including:

a.   Removing Tantaros as a host of *The Five*, a very popular program airing weekdays at 5:00 p.m., to *Outnumbered*, a show airing five times a week at the daytime graveyard time of Noon, and then failing to promote or even publicly announce that she had been moved to *Outnumbered*;

b.   On information and belief, directing Defendant Irena Briganti ("Briganti"), the Group Senior Vice President at FOX News Channel & FOX Business Network who is in charge of Fox News's media relations, to turn Fox News's widely-reported, vindictive media relations department against Tantaros. This conduct included Briganti:

(i)   Demonstrably failing to provide media support for Tantaros;

(ii)    Repeatedly denying all requests by prominent and credible media outlets to interview Tantaros;

(iii)   Enforcing an unspoken -- but very real -- embargo preventing access to Tantaros from other media outlets;

6

(iv)    Only arranging for, and giving, Tantaros permission to participate in a single interview -- one with Headline and Global News, a website reportedly controlled by Ailes.  At this interview, Tantaros was humiliated by the interviewer, who asked outrageous questions concerning, *inter alia*, her breasts -- all while a Fox News media relations staffer stood by and made no effort to intercede or stop these entirely inappropriate questions;

(v)    Repeatedly crafting and placing insulting stories about Tantaros, based upon baseless and malicious leaks about Tantaros from unnamed Fox News sources, in web sites such as TVNewser, BlastingNews.com, and The Cable Gamer, which are widely reported to be financially supported and/or controlled by Fox News; and

(vi)    Posting, or directing the posting of, numerous negative comments about Tantaros from "sock puppet" social media accounts (accounts operated by Fox News's media relations Department designed to make it appear that they were maintained by persons unrelated to Fox News).  (Compl. ¶ 6).

One of the most shocking encounters of all was a Spring 2015 meeting between Tantaros and Fox News Senior Executive, Defendant Shine, during which Tantaros sought relief from Ailes's sexual harassment and Briganti's retaliatory media vendetta against her.  In response, Shine told Tantaros that Ailes was a "very powerful man" and that Tantaros "needed to let this one go." (Compl. ¶ 7).

When Tantaros refused to follow Shine's instruction and began complaining even more vociferously to Shine, Defendant Brandi (Fox News's chief in-house lawyer), and Defendant Scott

7

(head of programming at Fox News), the retaliation intensified to the point where, in April 2016, Brandi sent a letter to Tantaros's counsel informing him that Tantaros was being removed from appearing on the air based upon the outrageously false and pretextual claim that Tantaros's still unpublished book had been written in violation of Fox News's rules for books authored by Fox News employees. Even more incredibly, Brandi accused Tantaros of manufacturing claims of sexual harassment to deflect attention from Fox News's absurd objections in her book. (Compl. ¶ 8).

In 2014, 2015, and 2016, when Plaintiff was being subjected to horrible sexual harassment and retaliation by Defendants, Tantaros confided about it to her therapist. (Ex. D to Burstein Aff.).

## B.    RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this lawsuit by way of filing the Summons and Complaint on August 22, 2016. On August 29, 2016, Defendants filed Motion Seq. Nos. 3 and 4, seeking to compel arbitration. While Plaintiff was required to provide detailed allegations about the harassment perpetrated against her to meet her pleading obligations to demonstrate, for example, "pervasiveness," *see Carrero v. New York City Housing Authority*, 890 F.2d 569, 578 (2d Cir.1989), Defendants had no such requirement in moving to compel arbitration. Nonetheless, they engaged in a public relations campaign to discredit Plaintiff by, as discussed above in the "Preliminary Statement," accusing her of filing false allegations and being a "'wannabe.'"

Dr. Berdy witnessed Defendants' attacks against Tantaros with revulsion because she knew they were unfounded based upon their therapy sessions from years before. (Ex. C to Burstein Aff.). Accordingly, Dr. Berdy reached out to Tantaros and offered to help validate her claims. (Ex. B to Burstein Aff.). Following a limited waiver of the patient-doctor privilege, Dr. Berdy signed an affidavit confirming the truth of Tantaros's allegations. (Ex. D to Burstein Aff.).

8

## ARGUMENT

**POINT I:**     **THE STANDARD GOVERNING THIS MOTION**

The arbitration provision at issue here, which is contained in Plaintiff's employment agreement with Fox News, is subject to the Federal Arbitration Act ("FAA"). The FAA provides that a written arbitration provision in "a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "where a contract containing an arbitration provision 'affects' interstate commerce, disputes arising thereunder are subject to the FAA." *Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.*, 4 N.Y.3d 247, 252 (2005).

Plaintiff's employment agreement affects interstate commerce considering that, among other reasons, the contract contemplates Tantaros appearing on national broadcasts and she has done so. Accordingly, the FAA is applicable and federal common law controls. As held by the New York State Court of Appeals:

> in situations where the FAA is applicable, it preempts State law on the subject of the enforceability of arbitration clauses. Indeed, the provisions of the FAA are controlling even though the dispute itself may arise under State law. Thus, regardless of what our own State's policies or case law might dictate in other circumstances, we are bound by the policies embodied in the Federal statute and the accompanying case law, and our prior State law holdings remain independently operative only to the extent that they have not been preempted by Federal law and policy.

*Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 630–31 (1993) (internal citations omitted).

In addition, "[o]n a motion to compel arbitration, the standard the court applies is similar to the standard applied on a motion for summary judgment: If there is a dispute as to a material issue of fact, then a trial to resolve the issue of fact is necessary." *Di Martino v. Dooley*, No. 08 Civ. 4606, 2009 WL 27438 at *4 (S.D.N.Y. Jan. 6, 2009). Because the legal standard on a motion to compel

9

arbitration is similar to that of a motion for summary judgment, the Court may consider matters outside the pleadings. *Endriss v. Eklof Marine Corp.*, No. 96 CIV. 3137, 1998 WL 1085911, at *2 (S.D.N.Y. July 28, 1998) (considering matters outside the pleadings submitted by the parties on a motion to dismiss and compel arbitration). Accordingly, the proof submitted herewith is properly before the Court.[3]

Courts have also allowed discovery on issues of fact relating to arbitration clauses. *Moss v. BMO Harris Bank, N.A.,* No. 13–CV–05438, 2014 WL 2565824 (E.D.N.Y. June 9, 2014) ("In a typical motion to compel arbitration ... some discovery may be allowable or necessary.")[4]

**POINT II:    PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO ARBITRATION**

> It is well settled that arbitration is a matter of consent, not coercion.  Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.  Thus, while the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so.

*Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (internal citations and quotations omitted).

---

[3]     To the extent the Court does not consider matters outside of the pleadings, it must nonetheless accept the allegations in the Complaint as true. *Guyden v. Aetna, Inc.*, 544 F.3d 376, 379 n. 1 (2d Cir.2008) ("When a court considers the motion to compel before discovery has taken place, and in the context of a motion to dismiss, it treats the allegations in plaintiffs' complaint as true.")

[4]     This principle could be important here if the Court does not deny these motions outright.  Under that scenario, discovery in anticipation of an evidentiary hearing could be highly probative of Defendants' purported right to compel arbitration.  For example, Ailes was recently forced out of Fox News once it became impossible to conceal his long history of serial harassment of women.  The scope of Ailes's termination agreement with Fox News – which the media has reported included a $40 million parting gift – could contain provisions relating to Ailes's ability to invoke rights as a former officer of Fox News.  However, those potentially material facts can only be uncovered through discovery of Ailes's termination agreement, and Plaintiff requests leave to take discovery if it becomes necessary.

10

A decision to arbitrate a claim must be "consciously made," because by agreeing to arbitrate, "a party relinquishes his courtroom rights, including that to subpoena witnesses, in favor of arbitration with all its well-known advantages and drawbacks." *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1974). Precisely because an agreement to arbitrate requires a party to relinquish such important rights, courts "should not 'override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Norcast S.AR.L v. Castle Harlan, Inc.*, No. 12 Civ. 4973, 2014 WL 43492 at \*4 (S.D.N.Y. Jan. 6, 2014) (internal citation omitted). Considering that arbitration provisions are creatures of contract, the determination of whether parties agreed to arbitrate a particular dispute turns on the language of the agreement. As held in *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 609 (S.D.N.Y. 2011):

> When the matter hinges on interpretation of a disputed contract provision, a court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use and it should grant summary judgment when the words of the contract convey a definite and precise meaning.

(internal quotations omitted).

Here, Tantaros did not consent to arbitrate any claim unrelated to her employment at Fox News. Rather, the plain language of the arbitration provision in Tantaros's Employment Agreement does not cover claims of sexual harassment:

> Any controversy, claim or dispute arising out of or relating to this Agreement or your employment shall be brought before a mutually selected three-member arbitration panel and held in New York City in accordance with the rules of the American Arbitration Association then in effect. The arbitrators shall issue a full written opinion setting forth the reasons for their decisions. Such arbitrators, all filings, evidence and testimony connected with the arbitration, and all relevant allegations and events leading up to the arbitration, shall be held in strict confidence. Judgment may be entered on the arbitrators' award in any court having jurisdiction; however,

11

all papers filed with the court either in support of or in opposition to the arbitrators'
decision shall be filed under seal. Breach of confidentiality by any party shall be
considered to be a material breach of this Agreement.

(Ex. A to the Garland Aff. at p. 11, § 8).

This is the entirety of the parties' arbitration provision. The words "harassment" or
"retaliation" do not appear anywhere in it. Nonetheless, despite this plain language, Defendants
erroneously argue that this dispute is subject to mandatory arbitration based upon authority where,
unlike here, the arbitration provisions expressly encompassed sexual harassment claims. *See* Fox
Defendants' MOL, at pp. 13-14 (citing *Ragone v. Atl. Video at Manhattan Ctr.*, No. 07 CIV. 6084
(JGK), 2008 WL 4058480, at *1 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010);
*Cicchetti v. Davis Selected Advisors*, No. 02 CIV.10150 RMB, 2003 WL 22723015 (S.D.N.Y. Nov.
17, 2003)), and Ailes's MOL at p. 5, (citing *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496
(S.D.N.Y. 2013)).

In all of these cases, the arbitration provisions specifically referenced claims for sexual
harassment.[5] By way of contrast to *Ragone, Thomas*, and *Cicchetti*, the arbitration provision in this
case does not state that it encompasses claims of sexual harassment. That key distinction renders

---

[5]        *See Thomas*, 957 F. Supp. 2d at 498 ("The Agreement provides that an employee shall
'submit to final and binding arbitration, and not to any other forum, any claims by Employee or
[PSCC] under state, federal or local law which arises out of or relates to Employee's employment
with [PSCC], **including without limitation claims for sexual harassment, discrimination,
wrongful termination ...**'") (emphasis supplied); *Ragone*, 595 F.3d at 118 ("I shall submit to the
American Arbitration Association ('AAA') for final and binding arbitration by one arbitrator ... any
and all claims or controversies arising out of my employment or its termination including, but not
limited to, claims concerning discipline and discharge; ... claims for discrimination ...; **claims of
sexual harassment;....**'") (emphasis supplied); *Cicchetti*, at *2, n. 1 ("The parties agree that any
controversy or claim arising out of or relating to (1) Employer's employment of Employee
**(including without limitation claims of discrimination and/or harassment)**'") (emphasis
supplied).

12

these authorities inapposite to our facts, especially considering that the courts themselves acknowledged the importance of the arbitration provisions' inclusion of sexual harassment claims in deciding to compel arbitration.[6]

Unlike Defendants' case law, the arbitration agreement here does not contain a clear indication that Plaintiff made a "conscious decision" to arbitrate claims of sexual harassment and retaliation pursuant to her employment agreement. *Fuller*, 565 F.2d at 261. To the contrary, there is no such indication whatsoever.[7]

The Second Circuit's decision in *Fuller* makes the point. In that case, Arlo Guthrie had agreed to perform at a venue pursuant to a standard musical services contract containing an arbitration provision. During the performance, Mr. Guthrie was alleged to have breached the contract by failing to complete his performance and also slandering the promoter on stage, who Mr. Guthrie claimed had not paid anyone involved in the production. In *Fuller*, the Second Circuit

---

[6]     *See, e.g., Ragone*, 595 F.3d at 120 ("Ragone complains of acts of sexual harassment and ... the arbitration agreement at issue in this case expressly states that 'claims of sexual harassment' are subject to arbitration."); *Thomas*, 957 F. Supp. 2d at 498 ("Thomas does not ... dispute that the terms of the [arbitration] Agreement would encompass her sex discrimination and retaliation claims.")

[7]     Defendants' reliance upon case law where the arbitration agreements expressly incorporated sexual harassment claims is highly significant here, because it shows that they knew how to draft a provision that would have applied to Plaintiff's causes of actions, but chose not to do so. This is especially true considering that by all reported accounts, Ailes has been a notorious sexual harasser and misogynist for decades. Therefore, Fox News knew exactly who it was dealing with in Ailes, and if it wanted to invoke confidential arbitration agreements to conceal the inevitable litigation arising from his illegal conduct, it could have expressly included harassment claims. Consequently, the absence of language referencing claims of sexual harassment in Tantaros's arbitration provision takes on additional meaning under standard principles of contract interpretation. *See In re The Containership Co.*, No. 11-12622-JLG, 2016 WL 2341363, at *12 (Bankr. S.D.N.Y. Apr. 29, 2016) ("Thus, TCC knew exactly how to structure a contract that specifically required the shipper to ship goods evenly throughout the contract term. The plain language of the Service Contracts at issue in this case evidences no such specific requirement.")

13

confirmed that "absent a clear, explicit statement . . . in the contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the (parties) did not intend to withdraw such disputes from judicial authority." (*Id.*, at 261).

The Court held that "[a]lthough the agreement to arbitrate was undoubtedly intended to cover disputes arising from the character of Guthrie's performance and his payment for it, it is **highly unlikely that the parties could have foreseen, no less intended, to provide a forum for wholly unexpected tortious behavior.**" *Fuller*, 565 F.2d at 261 (emphasis supplied). Notably, the court reached this decision while fully "cognizant of the federal policy favoring arbitration, and accept[ing] the standard rule of construction that arbitration agreements are to be liberally construed," yet nonetheless held that "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope." *Id.*

Essentially, Defendants contend that any cause of action sounding in tort that involves any agent of Fox News and Tantaros, no matter how unrelated it is to the perpetrators' job description or Tantaros's employment contract, are subject to mandatory arbitration. The overwhelming weight of authority is to the contrary.[8] The only cases Defendants cite that construe an arbitration provision

---

[8]     *See e.g.*, *Deering v. Graham*, No. CIV. 14-3435, 2015 WL 424534, at *8 (D.N.J. Jan. 30, 2015) ("plaintiff's NJLAD, assault, and sexual battery claims are not covered when one examines the contract terms, the surrounding circumstances, and the purpose of the contract."); *Washington v. CentraState Healthcare Sys., Inc.*, No. CIV. 10-6279, 2011 WL 1402765, at *5 (D.N.J. Apr. 13, 2011) (finding that "arising under" in an arbitration clause cannot encompass all possible torts including assault and battery that could occur in the workplace); *RN Solution, Inc. v. Catholic Healthcare West*, 165 Cal.App.4th 1511, 1523-1524 (2008) (arbitration clause contained in a nursing services contract did not encompass the plaintiff's sexual assault and battery claims.); *Jones v. Halliburton Co.*, 583 F.3d 228, 236 (5th Cir.2009) (employee's claims of assault and battery were not "related to" her employment and thus not arbitrable under the FAA); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) ("For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we (continued...)

14

to cover sexual harassment claims when such claims were not explicitly incorporated into it are *Tong v. S.A.C. Capital Mgmt., LLC*, 52 A.D.3d 386, 860 N.Y.S.2d 84 (1st Dep't 2008) and *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 498 (S.D.N.Y. 2013). However, *Tong* is a New York State case and the federal authority governs. *See Fletcher*, 81 N.Y.2d at 630–31. Moreover, to the extent that *Tong* and *Thomas* are inconsistent with the case law cited in footnote 8, as well as *Ragone, Thomas*, and *Cicchetti*, *supra*, their holdings are against the vast weight of authority and they should not be adopted by this Court.

Defendants' remaining case law is not on point. Indeed, in citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998), the Fox Defendants fail even to mention that it was expressly abrogated by *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015) (Abrogating *Oldroyd* and instead holding that the FAA requires a stay of legal proceedings, as opposed to dismissal, when all claims have been referred to arbitration). (*See* Fox Defendants' MOL, pp. 7-8). *Oldroyd* is materially distinguishable as well, because the plaintiff employee sued the defendant former employer for retaliatory discharge based upon the assertion that the plaintiff was terminated because he informed the United States Treasury Department Office of Thrift Supervision of illegal loan activity at his employer. Under those facts, the plaintiff's alleged constructive termination was found to be within the scope of the employment agreement, because it dealt extensively with termination. *Oldroyd*, 134 F.3d at 77. Here, Tantaros has alleged sexual harassment, which is not even mentioned in the arbitration provision, let alone dealt with extensively therein.

---

[8](...continued)
would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract.").

15

In sum, Tantaros has a statutory right under the New York City Human Rights Law and Executive Law to have her claims heard in open court, which is an important matter of public policy in New York: "The governmental policy against discrimination enjoys the highest statutory priority, based upon legislative findings that discrimination "threaten[s] the rights and proper privileges of [the City's] inhabitants and menace[s] the institutions and foundation of a free democratic state.'" *Beame v. DeLeon*, 87 N.Y.2d 289, 296 (1995) (internal citation omitted).   Plaintiff did not contract away that right by entering into an employment agreement with Fox News that does not call for the arbitration of harassment claims.

## POINT III:   DEFENDANTS CANNOT RELY UPON PLAINTIFF'S ARBITRATION AGREEMENT WITH FOX NEWS DUE TO ITS PRIOR MATERIAL BREACH

Assuming, *arguendo*, that the arbitration provision applied to Tantaros's claims for sexual harassment and retaliation, Defendants still would not be able to compel arbitration, because of Fox News' prior material breach – not of the employment contract generally, but of the arbitration provision in particular.  As alleged in Paragraph 73 of the Complaint:

> On information and belief, Fox News immediately leaked the fact that Fox News had commenced an arbitration against Tantaros and the date by which Tantaros was required to file her responsive pleading because, the very next day, August 10, 2016, Lloyd Grove, a writer for the *Daily Beast*, sent an email to counsel for Tantaros stating, *inter alia*, that he was "hearing" that Tantaros "has received a notice from the American Arbitration Association that she as 14 days to respond to FNC...."

Importantly, the basis for the information and belief is stated in the Complaint, specifically, an email from a Daily Beast reporter sent to Plaintiff's counsel.  Moreover, Plaintiff has submitted the email in question as part of her opposition to this motion.  (*See* Ex. A to Burstein Aff.).

Accordingly, at most, there should be a hearing to determine whether Fox News was the source of this breach of the arbitration provision's confidentiality requirement.

But a hearing is not even necessary here, considering that the Fox Defendants openly admit that they violated the arbitration clause's confidentiality provision.   In this regard, the Fox Defendants' MOL provides: "Fox News responded to their false accusations by factually reporting that Fox News had filed the Demand for Arbitration against Tantaros and that she had not responded to it." (Fox Defendants' MOL, p. 10).

It cannot reasonably be disputed that the Fox Defendants' disclosures to reporters about (a) the existence of an arbitration provision, (b) the commencement of an arbitration, and (c) the fact that Tantaros had yet to respond in the arbitration, violated the arbitration agreement's confidentiality provision.   That clause expressly states that "**all filings**, evidence and testimony connected with the arbitration, and all relevant allegations and events leading up to the arbitration, **shall be held in strict confidence**.   * * * **Breach of confidentiality by any party shall be considered to be a material breach** of this Agreement." (Employment Agreement).   (Emphasis supplied).

Unquestionably, the Fox Defendants did not keep "all filings" in "strict confidence" when they told the media that "Fox News had filed the Demand for Arbitration against Tantaros and that she had not responded to it."   (Fox Defendants' MOL, p. 10).   This disclosure was also, by definition, a "material breach" of the arbitration provision.   Consequently, any argument from Defendants in reply that their breach was *de minimis* or immaterial must be rejected out-of-hand. Fox News bargained for an arbitration agreement with a strict confidentiality clause, and then it chose to violate that provision when it suited its purposes.   Defendants must bear the consequences of that choice:

17

> When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract (*Grace v. Nappa*, 46 N.Y.2d 560, 415 N.Y.S.2d 793, 389 N.E.2d 107 [1979]; *Unloading Corp. v. State of N.Y.*, 132 A.D.2d 543, 517 N.Y.S.2d 276 [2d Dept.1987] [contractor could not recover for breach of contract where it failed to establish that it had performed its obligations under the contract]; *see also Roberts v. Borg*, 35 A.D.3d 617, 826 N.Y.S.2d 409 [2d Dept.2006]).

> The non-breaching party is discharged from performing any further obligations under the contract and may elect to terminate the contract and sue for damages or continue the contract (*Awards.com v. Kinko's, Inc.*, 42 A.D.3d 178, 834 N.Y.S.2d 147 [1st Dept.2007]; *New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 117 [2d Cir.2006]; *see also Albany Medical College v. Lobel*, 296 A.D.2d 701, 745 N.Y.S.2d 250 [3d Dept.2002] ).

*Markham Gardens L.P. v. 511 9th LLC*, 38 Misc. 3d 325, 331, 954 N.Y.S.2d 811, 815 (Sup. Ct. 2012).

To be clear, Plaintiff is not arguing that she is excused from arbitration because Fox News breached her employment agreement generally, and we are aware that the case law holds to the contrary in such situations. Instead, Plaintiff's position is that because of Defendants' admitted prior material breach of the arbitration agreement in particular, arbitration cannot be compelled. The question of what consequences flow from the breach of an arbitration provision itself, not the contract in which it is embedded, is properly before this Court, because disputes arising under a contract are subject to arbitration **except** those that make "an independent challenge to the making of the arbitration clause itself." *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir. 1985); *see also Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.*, No. 13 CIV. 7147, 2014 WL 4377852, at *6 (S.D.N.Y. Sept. 4, 2014) ("courts should only decide ... challenges to the validity of the arbitration agreement.").

18

The precise question presented here – whether a party who materially breaches an arbitration provision can compel arbitration – appears to be a matter of first impression. However, there is analogous authority standing for the proposition that a party cannot compel arbitration when the party resisting it was fraudulently induced to enter into an arbitration agreement in particular. *See Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 411 (2d Cir. 1959) ("If [the] arbitration clause was induced by fraud, there can be no arbitration; and if the party charging this fraud shows there is substance to [t]his charge, there must be a judicial trial of that question before a stay can issue in a case of the type with which we are now dealing."). Based upon this line of authority, and the general principles espoused in *Unionmutual* and *Ralph Lauren Corp.*, Defendants cannot compel arbitration based upon the Fox News Defendants' prior material breach.

**POINT IV:   THE DEFENDANTS OTHER THAN FOX NEWS LACK STANDING TO COMPEL ARBITRATION**

Ailes and all of the Fox Defendants other than Fox News (collectively, the "Non-Signatory Defendants") contend that they can compel Tantaros to arbitrate her claims against them even though they are not signatories to her employment agreement which contains the arbitration provision. The Non-Signatory Defendants are incorrect, and they lack standing to compel arbitration under an agreement that they did not sign.

Perhaps most damning to the Non-Signatory Defendants' standing argument, the Employment Agreement glaringly fails to include Ailes or any of the other Non-Signatory Defendants. Instead, the Employment Agreement explicitly states that the only parties to it are Tantaros and Fox News, and the contract affirmatively excludes other employees by stating that "[t]his agreement shall inure to the benefit of Fox's successors, assignees, and Affiliates.... As used

19

in this Agreement, the term 'Affiliate' shall mean any company controlling, controlled by or under common control with Fox." (Ex. E to Burstein Aff., at § 15.1).

Clearly, if the parties intended that other Fox News employees or officers would be entitled to rights under the contract, and in particular its arbitration provision, they would have included language to that effect. *See Republic of Iraq*, 769 F. Supp. 2d at 614 ("had the parties intended to extend the right of arbitration, they would not have drafted an arbitration provision that singled out the 'Parties' and omitted any mention whatsoever of the Republic, as they did."); *McCarthy v. Azure*, 22 F.3d 351, 360 (1st Cir. 1994) ("A corporation that wishes to bring its agents and employees into the arbitral tent can do so by writing contracts in general, and arbitration clauses in particular, in ways that will specify the desired result."). The failure to incorporate such language in Tantaros's employment contract confirms that the Non-Signatory Defendants lack standing to compel arbitration of this dispute. *In re The Containership Co.*, 2016 WL 2341363, at *12.

But even if the Employment Agreement did not expressly bar the Non-Signatory Defendants from piggy backing onto whatever arbitration rights Fox News may have, they still could not legitimately compel arbitration of Plaintiff's claims. The Second Circuit's decision in *Ross v. Am. Exp. Co.*, 547 F.3d 137 (2d Cir. 2008), is illustrative. There, American Express ("Amex") was sued in an anti-trust class action lawsuit brought by cardholders who had entered into cardholder agreements with financial services companies other than Amex. In response, Amex sought to compel arbitration pursuant to arbitration provisions contained in the cardholder agreements to which Amex was not a signatory. In holding that Amex could not compel arbitration under such circumstances, the Second Circuit cautioned that "the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so[,]" and this

20

"principle renders problematic any holding that the plaintiffs can be compelled to arbitrate with Amex.  Arbitration is a matter of contract, but the plaintiffs have not entered into any contract whatever with Amex, let alone any contract containing an arbitration clause." (*Id.*, at 142-43).

As reflected in *Ross*, the federal presumption in favor of arbitrability "has never been extended to claims by or against non-signatories" in actions unrelated to the contract containing the arbitration provision.  *Devon Robotics v. DeViedma*, No. 09-cv-3552, 2012 WL 3627419 at *9 (E.D.Pa. Aug. 23, 2012).  Courts "will allow a nonsignatory to invoke an arbitration agreement only in rare circumstances." *Devon Robotics,* at *9.  The Second Circuit has identified the following five rare circumstances where a non-signatory can possibly have standing to compel a signatory to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773. 776 (2d Cir. 1995).  The Non-Signatory Defendants incorrectly argue that they can compel Tantaros to arbitrate under two of these "rare circumstances."

**First**, the Non-Signatory Defendants rely upon an "estoppel theory," pursuant to which "[n]on-signatories may have standing to compel arbitration against a signatory, thereby estopping the signatory from avoiding arbitration, when the issues which the nonsignatory wants to resolve are intertwined with the agreement that the signatory signed." *Devon Robotics*, at *10.  However, an estoppel theory does not apply to our facts, where Defendants' tortious conduct is neither related to Tantaros' employment agreement nor her duties at Fox News.  Put another way, Plaintiff's claims are not "intertwined" with her employment agreement with Fox News. (*Id.*)

21

As elucidated by the Second Circuit in *Thomson-CSF, S.A.*:

> estoppel cases all involve claims which are **integrally related** to the contract
> containing the arbitration clause. The same cannot be said of the case at hand. ... E
> & S's claims against Thomson amount to the assertion that Thomson purchased
> Rediffusion in order to eliminate it as a competitor. While a cause of action may lie
> against Thomson for such alleged predatory business practices, the violation can
> hardly be characterized as arising out of or being integrally related to the Working
> Agreement between E & S and Rediffusion. Thus, the analogy to this line of
> estoppel cases again must fail.

64 F.3d at 779–80 (emphasis supplied).[9]

**Second**, the Non-Signatory Defendants argue that they have standing to compel arbitration

under an agency theory. Nonetheless, agents can only invoke an arbitration agreement entered into

by their employer "to the extent that the alleged misconduct relates to their behavior as officers or

directors or in their capacities as agents of the corporation." *Hirschfeld Prods., Inc. v. Mirvish*, 88

N.Y.2d 1054, 1056 (1996). In other words, a non-signatory to an agreement may only compel

arbitration when "the parties have a sufficient relationship to each other and to the **rights created**

**under the agreement.**" *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005)

(emphasis supplied). That scenario is simply not present here, where Ailes's sickening conduct and

his colleagues' retaliation against Tantaros are unrelated to the Non-Signatory Defendants' actions

"in their capacities" as agents of Fox News. *See Hirschfeld*, 88 N.Y.2d at 1056.

---

[9]      *See also Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 CIV. 4730, 2000 WL
1858556, at *6 (S.D.N.Y. Dec. 19, 2000) (Schwartz, J.) ("Because there is only a loose nexus
between Orange's claims against Nambé and Target in this action and the Orange–Zeisel Agreement,
the Court declines to estop Orange from pursuing its claims here.") (citing *Thomson, supra*, 64 F.3d
at 70); *Massen v. Cliff*, No. 02 CIV. 9282, 2003 WL 2012404, at *4 (S.D.N.Y. May 1, 2003)
(Pitman, M.J.) (Real estate sales person seeking brokerage commissions from Corcoran and one of
its real estate agents individually could not compel the individual agent to arbitrate pursuant to an
arbitraiton provision contained in the sales person's contract with Corcoran).

22

The cases cited by the Non-Signatory Defendants are materially distinguishable precisely because in all of those decisions, the claims being asserted against the non-signatories arose out of the agreements that contained the arbitrations provisions.[10]  In contrast to this authority, Tantaros' claims are statutory in nature and are founded upon the conduct of agents of Fox News that was decidedly outside the scope of their employment.  As a result, Tantaros is not suing for a breach of her employment agreement, which contained the arbitration provision.  **Fundamentally, Tantaros would be entitled to bring these claims even without the existence of the contract.**

Defendants' remaining legal arguments on this point are also unpersuasive.  In this regard, Ailes cites to *Hirschfeld Prods.*, 88 N.Y.2d at 1054, for the proposition that a plaintiff cannot artfully plead around an arbitration clause by naming individual defendants rather than their corporate employer.  In view of the plainly actionable conduct of the Defendants other than Fox News, Plaintiff is not trying to artfully plead around the arbitration clause.  Moreover, and contrary to Ailes's view, the reasoning he cites from *Hirschfeld Prods.* only applies when the alleged conduct complained of

---

[10]     *See e.g.*, *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) (breach of contract claims against non-signatory employees and agents of syndicates were subject to mandatory arbitration because the alleged misconduct was within the scope of the agreements sued upon in the lawsuit); *Pritzker v. Merrill Lynch, Pierce, Genner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) (non-signatory employees of a principal were bound under an arbitration clause for claims for breach of a cash management agreement that was directly at issue in the dispute); *Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269 (6th Cir. 1990) (non-signatory officers of corporation entitled to mandatory arbitration for claims arising out of a stock purchase agreement containing the agreement to arbitrate); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986) (non-signatory employees bound by arbitration clause for claims arising from a brokerage agreement); *Amisill Holdings, Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825 (N.D. Cal. 2007) (non-signatory officers and managers of company could enforce arbitration provision with respect to breach of contract claims arising out of operating agreement); *Zuckerman v. CB Richard Ellis Real Estate Servs., LLC*, 2013 NY Slip OP 30997(U) at *13 (Sup. Ct. N.Y. Cty. May 3, 2013) (enforcing arbitration provision under an employment agreement because plaintiff's claims of unpaid commissions were "central to the Employment Agreement").

23

"relates to [Defendants'] behavior as officers or directors or in their capacities as agents of the corporation." *Id.* at 1056.  As explained by the Court of Appeals, "[t]he rule is necessary not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal **in furtherance of the agreement**." *Id.* (emphasis supplied).   In this case, Ailes's abhorrent and perverse conduct, and the Fox Defendants' cover ups and retaliation, have no bearing on Tantaros's employment agreement and also lie far outside the legitimate scope of the Non-Signatory Defendants' duties at Fox News.

Ailes also cites to *Arrigo v. Blue Fish Commodities*, 704 F. Supp. 2d 299, 303 (S.D.N.Y. 2003), for the proposition that if an officer "is not a party to the [arbitration agreement], it nevertheless protects him from the instant suit," because "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  However, *Arrigo* involved a class action suit against an employer for failure to pay overtime under the Fair Labor Standards Act and New York Labor Laws.  The representative plaintiff's claims arose directly out of his employment agreement, which dictated the terms of his compensation.  Further, the representative plaintiff's claims against the individual defendant were "based on [the individual defendant's] status as an employee and agent of [the corporate employer]." *Id.* at 303.

**POINT V:    ALTERNATIVELY, PLAINTIFF WOULD DISCONTINUE AGAINST FOX NEWS AND PROCEED ONLY AGAINST THE INDIVIDUAL DEFENDANTS**

Based upon the foregoing, these motions to compel arbitration should be denied outright. However, if the Court should disagree, and instead conclude that Plaintiff must arbitrate this dispute as long as Fox News is a Defendant, Plaintiff would consent to discontinuing against Fox News in

24

order to proceed in this Court against only the Non-Signatory Defendants, because she believes so strongly in her right to proceed in a public forum with the procedural benefits afforded a normal litigant.  To eliminate any risk of inconsistent verdicts, Plaintiff would also agree not to invoke the sexual harassment and retaliation claims brought here to defend against the Arbitration proceeding that Fox News has acknowledged filing.

## CONCLUSION

**WHEREFORE**, this Court should deny Motion Seq. Nos. 3 and 4 to compel arbitration, together with such other and further relief as this Court deems just and proper.

Dated: September 28, 2016
      New York, New York

Respectfully submitted,

JUDD BURSTEIN, P.C.

By: _____

Judd Burstein
Peter B. Schalk

25

# <u>EXHIBIT 3</u>

Heraty letter to Cane
dated March 29, 2016



151 1st Ave, Ste 216
New York NY 10003
212-473-1390 – tel
quinn@heratylaw.com

sent via email and UPS overnight delivery
*(pursuant to Section 9 of the Collaboration Agreement)*

Joseph C. Cane, Jr.
Arendsen Cane Molnar LLP
12400 Wilshire Blvd, Ste 1180
Los Angeles CA 90025

March 29, 2016

re:    <u>Andrea Tantaros</u>

Dear Mr. Cane,

My name is Quinn Heraty and this firm represents Michael Malice, Andrea Tantaros's collaborator in connection with "Tied Up in Knots."

We are in receipt of your letter dated yesterday, March 28, 2016. I look forward to working with you to resolve the issues you raised, as well as the payments currently due to my client.

I would appreciate it if you would fill me in on the details of your claimed breach of Section 10 of the Collaboration Agreement, relating to Confidential Information. In particular, your letter refers to "certain third-parties." Please let me know who those third parties are alleged to be, as well as the nature of the Confidential Information that was allegedly disclosed.

Furthermore, my client has performed all of his obligations under the Collaboration Agreement, and the book is scheduled to be published on April 26, 2016. He has received two separate payments of $15,000 for his work, and is currently owed $120,000 by your client. Please let me know when we can expect to receive payment. Please consider this a notice pursuant to Section 9 of the Collaboration Agreement.

We would appreciate a substantive response, including information regarding the delivery of payments due to my client, no later than Friday, April 1, 5pm ET.

Thank you for your courtesy, and I look forward to working with you on this matter.

Best regards,

Quinn Heraty, Esq.

cc:    file

# <u>EXHIBIT 4</u>

Screenshot of Text Messages