# EXHIBIT 1

Fully Executed
Collaboration Agreement

## COLLABORATION AGREEMENT

AGREEMENT (this "Agreement") dated the 4 day of May 2015, by and between Andrea Tantaros of Astero LLC ("Client") with an address of _____, and Mr. Michael Malice with an address of 945 4th Avenue #3, Brooklyn, NY 11232 ("Collaborator").

WHEREAS, Client desires to retain Collaborator to provide editing and writing services on a book-length work of non-fiction titled Tied Up in Knots ("Work") to be published by HarperCollins ("Publisher");

NOW, THEREFORE, in consideration of the terms and conditions herein contained, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Engagement. Client hereby engages Collaborator to provide services to edit and rewrite the Work in a matter satisfactory to Client and Publisher. Collaborator shall address all changes requested by Client and Publisher until Work is considered "accepted" by Publisher.

2. Services.
    2.1 Collaborator will edit and rewrite the work. Specifically, Collaborator's duties shall include, but not be limited to: writing original material, with attribution from all other sources; making revisions in response to editorial changes requested by Client and by publisher; and assuring that the Work is grammatically correct, unified, coherent and clear in content.
    2.2 Collaborator will deliver to Client, in a mutually agreed upon electronic format, the Work on or before July 1, 2015.
    2.3 Collaborator will subsequently edit and make changes requested by Client and/or Publisher until Work is considered "accepted" by Publisher.

3. Compensation.

    3.1 In consideration of the Collaborator's promises and obligations under this Agreement, the Client shall pay the Collaborator.

    3.2 The Compensation shall be payable as follows:

    (i) Five thousand dollars ($5,000.00) on execution of this Agreement;

    (ii) Ten thousand dollars ($10,000.00) once Client and Publisher have reviewed and are satisfied with a chapter produced by Collaborator;

    (iii) Ten thousand dollars ($10,000.00) upon delivery of manuscript totaling not less than 75,000 words to Publisher;

    (iv) Fifteen thousand dollars ($15,000.00) upon acceptance of manuscript by Publisher;

    (v) An additional ten thousand dollars ($10,000.00) if Work is listed on the printed New York Times Bestseller list (any of the top 20 positions) upon publication.

  3.3 Should Client decide, upon prompt review of Collaborator's work as provided in subsection 3.2 (ii) and after one opportunity to revise and rewrite work in a matter satisfactory to Client, that she wishes to void this agreement, she may do so with no further payments owed to Collaborator, other than the amount specified in subsection 3.2 (i).

4. <u>Rights.</u> The Work and any derivative works thereof shall be owned and held solely by Client or Client's assignees.

 5. <u>Representations and Warranties.</u>

  5.1 Collaborator represents, warrants and agrees that:
   (a) Collaborator has no other contractual commitments of any kind that will or might conflict or interfere with the performance of his obligations under this agreement.
   (b) Collaborator further represents and warrants that no material or element of the Work added by Collaborator:
    (i) is in the public domain;
    (ii) violates, conflicts with or infringes upon any personal or property rights whatsoever of any person or entity, including without limitation, any copyright, trademark or other proprietary right of others; or
    (iii) contains any matter that is libelous, an invasion of privacy or infringes upon the copyright, trademark or other intellectual property rights of any third person, or is otherwise unlawful; and
   (c) The representations and warranties made in this Paragraph 5.1 shall survive the termination of this Agreement for any reason.
   (d) Collaborator is providing writing services to the Client for Client's sole use and Collaborator relinquishes all rights to said work and any subsequent proceeds derived therefrom.

  5.2 Client hereby represents, warrants and agrees that:
   (a) Client will cooperate with Collaborator in the preparation of the Work;
   (b) All material furnished by Client for use in the Work will be wholly original with Client or Client's licensors, will not be copied in whole or in part from any unlicensed work, will not violate, conflict with or infringe upon any personal or property rights whatsoever of any person or entity, including without limitation, any copyright, trademark or other proprietary right of others and contain no matter that is libelous, an invasion of privacy or infringe upon the copyright, trademark or other intellectual property rights of any

2

third person, or are otherwise unlawful.

5. Creative Control. Collaborator shall consult with Client with respect to the form, style, tone and content of the Work, and editorial comments in connection therewith. Ultimate creative control shall reside with Client.

6. Credit. Collaborator shall not receive credit for work on jacket or elsewhere in Work. If Collaborator fulfills obligations satisfactorily as outlined in the Agreement, Collaborator shall be thanked by name in the acknowledgments.

7. Agency Clause. Collaborator hereby appoints THE GERSH AGENCY, 41 Madison Avenue, 33rd Floor, New York, New York 10010, as the sole and exclusive agent with respect to all rights in and to the Work. The Collaborator authorizes and directs Publisher to make all payments due or to become due to the Collaborator hereunder and with respect to the sale, lease, license or other disposition of any rights therein and thereto, to and in the name of Collaborator and delivered to Collaborator c/o THE GERSH AGENCY, and to accept the receipt by said agent as full evidence and satisfaction of such payments. As the sole and exclusive agent, said agent is authorized to negotiate for the Collaborator throughout the world as to the disposal of all rights in and to the Work. The agent is further empowered to engage sub-agents. In consideration for services rendered, said agent is entitled to receive as its commission a sum equal to fifteen percent (15%) of all monies payable to the Collaborator hereunder and/or by reason of such sale, lease, license or other disposition and from all other rights in and to the Work, prior to deductions from or charges against such monies for any reason whatsoever, except that such commission shall be twenty percent (20%) plus out-of-pocket expenses with respect to foreign rights in and to the Work not included in this agreement. Said agent is also entitled to receive as its commission a sum equal to twenty percent (20%) plus out-of-pocket expenses with respect to the sale, lease, license or other disposition of any ancillary and subsidiary rights to the Work. The agent may also charge the Collaborator for other out-of-pocket expenses incurred directly on the Collaborator's behalf in connection with its representation of the Work.

8. New York Law; Injunctive Relief. This Agreement shall be governed by the laws of the State of New York applicable to contracts entirely made and performed therein. All actions to enforce the terms of this Agreement will be brought in, and the parties irrevocably consent to the exclusive jurisdiction of, a court of appropriate subject matter jurisdiction located in New York.

9. Notices. All notices hereunder shall be made in writing to the addresses first set forth above (or to such other address as such party may designate by written notice to the other party in accordance with the provisions of this Paragraph 12) and shall be given personally, by nationally recognized overnight express service, or by certified or registered mail, postage prepaid, return receipt requested. Notice shall be deemed to have been given and effective: (i) on the day it is delivered personally; (ii) two (2) days after the postmark date if given by nationally recognized overnight express service; or (iii) three (3) days after the postmark date if mailed by certified or registered mail, postage prepaid, return receipt requested.

3

10.     Confidentiality. Client's confidentiality is essential to this agreement. Collaborator may not discuss or mention his involvement in the Work in any venue without prior approval, in writing, from Client. Confidential Information means any non-public information disclosed by Client to Collaborator. Client's Confidential Information will be held in confidence by Collaborator and will not be disclosed to any third party or otherwise made public. Collaborator will: (a) not use the Confidential Information for any purpose other than in the performance of its obligations under this Agreement; (b) take all reasonable and necessary steps to ensure that its employees, principals, officers, agents, and contractors, representatives who have access to Confidential Information comply with Collaborator's obligations pursuant to this Section; (c) disclose any Confidential Information as required in response to a valid court order or other legal process, but only to the extent required by that order or process and only after Collaborator has provided Client with written notice and the opportunity for Client to seek a protective order or confidential treatment of such Confidential Information (with the reasonable assistance of Collaborator, if Client so requests); and (d) return all Confidential Information to Client or destroy the same, at the Client's request, by no later than fifteen (15) calendar days after such request or when Collaborator no longer needs Confidential Information for its purposes.

11.     Expenses. Client shall not be responsible for expenses incurred by Collaborator in connection with the preparation and writing of the Work, unless approved in advance in writing.

12.     Miscellaneous. This Agreement shall inure to the benefit of, and shall be binding upon, each party's respective executors, administrators, successors and assigns; provided, however, that Collaborator shall not have the right to assign this Agreement or any rights, duties or obligations hereunder. This Agreement constitutes the entire agreement between Collaborator and Client and supersedes all prior agreements, understandings and proposals (whether oral or written) concerning the subject matter of this Agreement. No waiver or modification of any provisions hereunder shall be binding unless in writing and signed by the party to be charged. No waiver of any breach hereof shall be construed to be a continuing waiver or consent to any subsequent breach hereof.

13.     Termination.

12.1 This Agreement may be terminated by either party at any time without cause. Upon termination by either party, Client agrees to pay Collaborator sums equivalent to the amount of work then provided and to reimburse all existing expenses.

12.2 In the event neither party can agree on amount of work provided, the dispute shall be submitted to a single arbitrator for binding arbitration under proceedings conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect. Either party may choose to have the AAA administer the arbitration if such party advances all AAA fees and expenses, subject to final apportionment. Otherwise, a neutral arbitrator mutually agreed upon by the Parties shall administer the arbitration in a mutually agreeable arbitration forum. The Parties agree that any law school arbitration clinic or program is an acceptable arbitration forum. The award of the arbitrator shall be limited to remedies otherwise available in

4

court and shall include a written explanation of the decision. The non-prevailing party shall bear the fees of arbitration and the other party's reasonable attorneys' fees.

12.3 The termination of this Agreement shall not revoke or terminate the Agreement between the Parties whereby Collaborator acts as agent for the Client with regard to the Work, and all provisions of the Agents' Agreement shall remain in full force and effect and shall survive the termination of this Agreement, including but not limited to the provisions related to payment by Publisher of royalty payments to Collaborator for and on behalf of the Client.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed effective as of the day and year first above written.

ACCEPTED AND AGREED:
CLIENT

*[signature]*

*Andrea Tantaros*

ACCEPTED AND AGREED:
COLLABORATOR

By: *[signature]*

*Michael Malice*

5