UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
MICHAEL KRECHMER, a/k/a
"Michael Malice," an individual,

                 Plaintiff,

    -against-

ANDREA K. TANTAROS, an individual; and
ASTERO, LLC, a New Jersey limited liability
company,

                Defendants.
------------------------------------------------------------x

Case No.: 1:16-cv-07820-KBF

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

Plaintiff Michael Krechmer (a/k/a Michael Malice) ("Malice"), by and through his counsel of record, Randazza Legal Group, PLLC, hereby brings his First Amended Complaint and Jury Demand against Defendants Andrea K. Tantaros ("Tantaros"), and Astero, LLC ("Astero") as follows:[1]

**THE PARTIES**

    1.    Plaintiff Michael Malice resides and is domiciled in the State of New York and is an author, ghostwriter, columnist, and political commentator. He has co-authored two *New York Times* best-selling books.

    2.    Defendant Andrea Tantaros resides and is domiciled in the State of New Jersey and is a well-known conservative political analyst and commentator. She was one of the original co-

---

[1] Pursuant to the Order of October 2, 2017 (Dkt. No. 116), the Court ruled that "Plaintiff is granted one final opportunity to replead as alleging presumably the contract or other non-copyright (and no DMCA/copyright-dependent) claims (along with a basis for diversity jurisdiction)." As permitted by the Order, Plaintiff hereby files the instant amended complaint. Pursuant to the order, Plaintiff is omitting the allegation that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and omitting claims for a declaration that he is the true author and copyright owner and for violation of Section 1202 of the Digital Millennium Copyright Act. However, such omissions are as ordered by the Court and are not intended as and should not be construed as a waiver of such claims or jurisdictional basis.

hosts of the Fox News television program *The Five* and was one of the hosts of the Fox News television program *Outnumbered* until she was suspended from the network in April of 2016.

3. Defendant Astero, LLC, is a New Jersey limited liability company controlled by Ms. Tantaros that manages her business affairs and, at all relevant times herein, conducted business in the State of New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) as Plaintiff is a citizen of the State of New York and Defendants are citizens of the State of New Jersey and the matter in controversy exceeds the sum or value of $75,000.[2]  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the other claims as they are part of the same case and controversy.

5. This Court has personal jurisdiction over Defendant Andrea K. Tantaros pursuant to N.Y. CPLR § 302(a) because she committed the tortious acts described herein in the State of New York, and regularly does and solicits business and derives substantial revenue for services rendered in the State of New York.  Defendant Tantaros otherwise consented to personal jurisdiction in the State of New York.

6. This Court has personal jurisdiction over Defendant Astero pursuant to N.Y. CPLR § 302(a) because it transacts business in the State of New York, committed the tortious acts described herein in the State of New York, and regularly does and solicits business and derives substantial revenue for services rendered in the State of New York.  Defendant Astero otherwise consented to personal jurisdiction in the State of New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and/or (c).

---

[2] At the time Plaintiff filed the initial Complaint, he believed Defendant Tantaros to be a citizen of the State of New York. He has since obtained information that her citizenship is in the State of New Jersey.

## FACTS COMMON TO ALL CLAIMS

A. <u>Citizenship of the Defendants</u>

8. On or about June 6, 2012, Defendant Astero was organized pursuant to Section 42:2B-11 of the New Jersey Limited Liability Company Act via Certificate of Formation filed with the State of New Jersey by Attorney Timothy J. McIlwain, its registered agent, with an address in Linwood, New Jersey. *See* <u>Exhibit 1</u>, Astero, LLC Certificate of Formation.

9. Pursuant to the said Certificate of Formation, Defendant Astero had two or more members.

10. At all times relevant herein, Defendant Tantaros was a member of Defendant Astero and authorized to act on its behalf.

11. At some point prior to October 7, 2016, when Plaintiff attempted to serve Defendant Tantaros at her presumed residence at 154 W. 70th Street, in New York, New York, Plaintiff vacated such residence.

12. When Plaintiff's process server attempted to serve Ms. Tantaros at that address, he was informed by the person in charge at 154 W. 70th Street that she no longer lived there. *See* <u>Exhibit 2</u>, Email from Process Server to Tantaros dated October 7, 2016.

13. On October 27, 2016, Plaintiff served Defendants with a Demand Pursuant to Local Civil Rule 26.1, which required a verified response identifying the residence and domicile of Defendant Tantaros and the members of Defendant Astero.

14. On November 1, 2016, Defendant Tantaros responded to the demand with an unverified statement that was not subscribed in accordance with 28 U.S.C. § 1746 stating, in relevant part:

> Although I rent a vacation home in New Jersey at which I reside on occasion, my primary residence is in New York State, the State in which, among other things, I rent an apartment, I am registered to vote, I pay city and state taxes, I register my car and pay insurance.

15. Because Ms. Tantaros's statement was unverified and conflicts with the information provided to Plaintiff's process server, as well as Ms. Tantaros's failure to provide the address of her alleged primary residence, that response lacks credibility.

16. On or about October 10, 2013, Defendants filed a complaint in the United States District Court for the District of New Jersey alleging that Defendant Astero was a New Jersey business and that Defendant Tantaros was a resident of both New York and New Jersey. *See Astero, LLC & Andrea K. Tantaros v. Talk Radio Network Entertainment, Inc., et al.*, Case No. 1:13-cv-06005 (D. N.J. Oct. 10, 2013) (Complaint).

17. On or about May 24, 2017, a report from Spokeo, filed in the matter of *Andrea Tantaros v. Fox News Network, LLC, et al.,* Case No. 1:17-cv-02958 (S.D. N.Y May 24, 2017) (Dkt. No. 20-20), set forth that Defendant Tantaros had a "current address" of 16 W Joan Rd, Beach Haven, NJ 08008.  *See* Exhibit 3, Spokeo Report.

18. In response to the Spokeo report, Defendant Tantaros, in a carefully worded declaration, did not refute that the New Jersey address identified by Spokeo is her now-current address.  *See* Exhibit 4, Amended Declaration of Andrea Tantaros.

19. According to Twitter, Defendant Tantaros has been found in Beach Haven, New Jersey, since at least 2015.  *See* Exhibit 5, Tweet by @ericbolling dated July 11, 2015.

B. Factual Background

20. On or about April 2, 2015, representatives for Ms. Tantaros and Astero contacted Plaintiff Malice's representatives because Ms. Tantaros had intended, for about two years, to write a book, *Tied Up in Knots,* without making any significant progress.

21. According to Defendants' representatives, Ms. Tantaros was in need of a writing coach and editor to guide her through the writing process, which she had not yet begun in earnest.

22. Malice agreed to assist Defendants in writing the book, provided that he receive some written acknowledgment for his work.

23. On or about May 4, 2015, Malice signed a Collaboration Agreement with Ms. Tantaros and Astero.  The Collaboration Agreement provided that Mr. Malice would "edit and

rewrite" *Tied Up in Knots* in a manner satisfactory to Ms. Tantaros and her publisher, HarperCollins. A true and correct copy of the Collaboration Agreement as executed is attached hereto as <u>Exhibit 6</u>.

24. While he would not be credited for his work on the book, he would be thanked by name in its acknowledgements.

25. Mr. Malice was to be paid for his work pursuant to the Collaboration Agreement as follows:

   a. $5,000 upon execution of the Collaboration Agreement;
   b. $10,000 once Ms. Tantaros and HarperCollins reviewed and approved of one chapter edited by Mr. Malice;
   c. $10,000 upon delivery of the manuscript to HarperCollins;
   d. $15,000 upon acceptance of the manuscript by HarperCollins; and
   e. $10,000 if the book was listed on the *New York Times* best seller list.

26. The initial $5,000 payment was provided to Mr. Malice when he executed the Collaboration Agreement.

27. Following the execution of the Collaboration Agreement, Mr. Malice began work on the book immediately. Defendant Tantaros struggled to produce anything for Mr. Malice to edit.

28. In mid-June, 2015, Defendants paid Mr. Malice the $10,000 payment for his delivery and their approval of a chapter of *Tied Up in Knots*.

29. On or about July 21, 2015, Ms. Tantaros informed Mr. Malice that she was too busy to do any additional writing on *Tied Up in Knots* and asked him to ghostwrite it. The factual content would be based upon interviews with her, but the prose itself, being the creative elements of the book, would be authored by Mr. Malice.

30. On or about July 22, 2015, Mr. Malice responded to her suggestion. He pointed out that her suggestion went far beyond his initial tasks on the book and that the rate he was being paid in the Collaboration Agreement was far less than he would have received as a ghostwriter.

31. Mr. Malice suggested that Ms. Tantaros and Astero contact Mr. Malice's agent to negotiate a new deal.

32. When Mr. Malice suggested that Defendants contact his agent, Defendants became agitated because they feared that it would cause her editor to discover that she was not writing the book herself.

33. Defendants feared that HarperCollins would cancel the book if they discovered that there were any new negative issues in the writing process, particularly since she was already running more than two years behind schedule.

34. Defendants feared that Ms. Tantaros would suffer professional repercussions and personal humiliation if her colleagues at Fox News discovered that the publication agreement with HarperCollins was cancelled.

35. Ms. Tantaros instead proposed a new oral agreement with Mr. Malice, terminating the Collaboration Agreement, whereby she would pay Mr. Malice to ghostwrite the book.

36. He agreed.

37. Specifically, he agreed to ghostwrite the book for 30% of Ms. Tantaros' $500,000 advance, making his share $150,000.

38. She agreed.

39. The monies that Mr. Malice had been paid pursuant to the Collaboration Agreement would be credited to the amounts he was owed under the new, oral Ghostwriting Agreement.

40. The Ghostwriting Agreement did not contain an express written agreement that the work to be performed by Mr. Malice should be considered a work made for hire.

41. No written instrument signed by Plaintiff and Defendants exists stating that the work to be performed by Mr. Malice under the Ghostwriting Agreement should be considered a work made for hire.

42. The Ghostwriting Agreement did not contain an instrument of conveyance or a note or memorandum of a transfer of copyright in the work to be performed by Mr. Malice under the Ghostwriting Agreement.

43. No written instrument of conveyance or note or memorandum of a transfer of copyright in the work performed by Mr. Malice under the Ghostwriting Agreement, signed by Mr. Malice or his agent, exists.

44. The parties agreed to incorporate the payment schedule of the Collaboration Agreement into the Ghostwriting Agreement.

45. No other provisions of the Collaboration Agreement were incorporated into the Ghostwriting Agreement.

46. Immediately after making their binding oral agreement, Ms. Tantaros sent Mr. Malice a text message: "I feel so much better and even more so that I have not just gained a writer but a friend."

47. On July 27, 2015, Michael Malice sent Defendants an email instructing that the new payments for ghostwriting would need to be addressed to his legal name (Michael Krechmer) and not his professional name (Michael Malice).

48. On or about July 30, 2015, Defendants made a first payment of $15,000 to Mr. Malice under the Ghostwriting Agreement.

49. Unbeknownst to him at the time, this was the last payment Mr. Malice would receive from Defendants.

50. Thus, the total paid to Mr. Malice under the agreements was $30,000.

51. For several months, Mr. Malice's writing of *Tied Up in Knots* proceeded smoothly. He interviewed Tantaros and then wrote the book, providing her with chapters to review after he completed them.

52. Ms. Tantaros consistently informed Mr. Malice regarding how thrilled she was with his writing of the book, at one point telling him "after reading the book manuscript I actually ▇▇▇▇▇▇▇▇▇▇▇.[3]"

---

[3] Pursuant to the Order of August 9, 2017 (Dkt. No. 47), the last word of the quote is redacted. Plaintiff is not filing an unredacted version of this First Amended Complaint; this paragraph is a repetition of Paragraph 40 of the original complaint and the Court and Defendants already possess the unredacted form of the quote.

53. On October 4, 2015, Mr. Malice delivered to Defendants and HarperCollins a completed copy of the manuscript of *Tied Up in Knots* he had written.

54. This acceptance triggered the next payment due under the Collaboration Agreement.

55. Defendants did not make that payment.

56. On January 20, 2016, HarperCollins announced that it would be sending copies of *Tied Up in Knots* to reviewers. This confirmed that, despite some remaining copy editing, the publisher had officially accepted the manuscript.

57. This acceptance triggered yet another payment due under the Collaboration Agreement.

58. Once more, Defendants failed to make payment.

59. At the time, Mr. Malice was unaware that Defendants would issue no further payments to him pursuant to the Agreements.

60. In early February 2016, Ms. Tantaros discussed the acknowledgements for *Tied Up in Knots* with Mr. Malice. Initially, she told Mr. Malice that she was going to identify him as the "King of Awesomeness" but it eventually said, "I'm eternally thankful to my editor, coach, and buddy, Michael Malice: you restored my faith in people. Even Russians."

61. On February 21, 2016, Defendant Andrea Tantaros again emailed Mr. Malice to convey Defendants' appreciation for his ghostwriting services, stating "MM, thank you for your attention to making this perfect. You are a trusted friend and angel. You have given me peace of mind when others haven't and I am eternally appreciative of how you have completed my vision and dream, by keeping every promise you made. Nobody is like you."

62. HarperCollins repeated Defendants' thanks the next day when Defendant Tantaros' editor emailed Mr. Malice, telling him, "I really appreciate your dedication to this project. Without you, we wouldn't have a book at all."

63. In late February 2016, Ms. Tantaros informed Mr. Malice that Defendants had unilaterally decided that her literary agent was in breach because he was "useless" and attempted

8

to have HarperCollins send future payments directly to her, rather than to him. As it was contrary to the terms of her agreement with HarperCollins, the publisher refused to honor her demand.

64. Ms. Tantaros' inability to defraud her literary agent initiated her attempts to defraud, threaten, and harass Michael Malice.

65. After receiving no additional payment since July 30, 2015, despite the delivery of the manuscript to Defendants and HarperCollins, as well as the acceptance of the manuscript by HarperCollins, Mr. Malice emailed Defendants on March 2, 2016, which detailed how payments should be apportioned relative to the initial Collaboration Agreement and the subsequent Ghostwriting Agreement.

66. On March 17, 2016, Ms. Tantaros emailed Mr. Malice that she was preparing financial disbursements for the *Tied Up in Knots* book and attached a non-disclosure agreement that she demanded he sign, stating that she's "having everyone who was involved in the process" sign it.

67. Upon information and belief, no one else was requested to sign such a non-disclosure agreement.

68. Mr. Malice was not obligated to sign a non-disclosure agreement and it provided no consideration to which he was not otherwise entitled.

69. The proffered non-disclosure agreement was overly broad: not only was it retroactive to January 1, 2016, but it also forbade Mr. Malice from discussing or mentioning anyone associated with Ms. Tantaros, even if the information was public knowledge.

70. It additionally forbade Mr. Malice from disclosing that he had initially agreed to be the editor of *Tied Up in Knots* or that he worked on the book in any capacity, even though, at a minimum, the acknowledgements section of the published book and the Collaboration Agreement made such disclosure.

71. Finally, the proffered non-disclosure agreement contained a $500,000 liquidated damages provision, even though compliance with its terms was literally impossible.

72. Mr. Malice did not sign the non-disclosure agreement.

73. On March 21, 2016, Ms. Tantaros again emailed Mr. Malice that she was preparing to attend a disbursement meeting and needed the executed non-disclosure agreement prior to that meeting. Neither the Collaboration Agreement nor the Ghostwriting Agreement required the execution of any further agreements in order that Mr. Malice be paid either the past-due amounts or the amounts to be paid.

74. Mr. Malice inferred that the email was meant to inform him that he would not be paid if he did not sign the onerous non-disclosure agreement. He was, unfortunately, correct.

75. On March 28, 2016, Mr. Malice received an email from Defendants, through their counsel, accusing him of disclosing "confidential information" in breach of the Collaboration Agreement. Defendants did not and would not specify what "confidential information" Mr. Malice was allegedly disclosing or who was allegedly receiving "confidential information" from Mr. Malice.

76. Defendants' counsel unethically demanded that, if he wished to avoid a lawsuit, Mr. Malice sign the non-disclosure agreement and an affidavit stating that he had not breached the Collaboration Agreement by the close of the next business day.

77. By demanding the signature on an affidavit disclaiming breach, Defendants' counsel, on behalf of Defendants, admitted that Mr. Malice had not breached the Collaboration Agreement.

78. Since Defendants' attorney had already knowingly and falsely accused Mr. Malice of breaching the Collaboration Agreement, Mr. Malice believed Defendants were likely to sue him regardless of whether he signed the non-disclosure agreement and the affidavit.

79. HarperCollins published *Tied Up in Knots* on April 26, 2016 (hereinafter "the published book").

80. The published book falsely states that Defendant, Andrea Tantaros is the author of *Tied Up in Knots*.

81. The published book contains a false notice of copyright identifying Defendant Andrea Tantaros as the copyright owner.

82. Defendants caused the published book to falsely identify Andrea Tantaros as the author.

83. On April 27, 2016, the very next day, Fox News announced that it was suspending Ms. Tantaros for unspecified reasons.

84. However, in litigation between Defendant Tantaros and Fox News, Fox News pleaded that she was actually suspended on April 25, 2016 "in accordance with the terms of her Employment Agreement because of her failure to obtain approval of her book." See *Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016 (Supreme Ct. of N.Y, N.Y. County. Aug. 29, 2016) (Memorandum at p. 5).

85. At no time before or in the course of Plaintiff's work writing the published book did Defendants inform him that Tantaros would likely be sanctioned by her employer, Fox News Network, for violating the terms of her Employment Agreement, with the result that such sanction would jeopardize her ability to promote the sale of the published book.

86. Without a television platform for Ms. Tantaros to promote the sale of the published book, it is unlikely the published book will become a New York Times Bestseller, entitling Plaintiff to additional payment under the agreements.

87. On May 27, 2016, Plaintiff made demand of Defendants to make all payments due and owing under the agreements.

88. As of the filing of this Complaint, Defendants have not paid Mr. Malice the remaining $120,000 owed under the agreements.

. . .

. . .

. . .

. . .

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Declaratory Judgment – 28 U.S.C. § 2201
*Against Defendants Tantaros and Astero*

89.  By the Order of October 2, 2017 (Dkt. No. 116), the claim for Declaratory Relief under 28 U.S.C. 2201(a), that Plaintiff is entitled to a declaration that he is the true author and copyright owner regarding the published book, is not presented in this First Amended Complaint, but it is not waived and Plaintiff reserves the right to contest the Order on appeal.

### SECOND CLAIM FOR RELIEF
### Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202)
*Against Defendants Tantaros and Astero*

90.  By the Order of October 2, 2017 (Dkt. No. 116), the claim for willful Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, for falsely stating that Defendant Tantaros, not Plaintiff, was the true author and copyright owner of the book, is not presented in this First Amended Complaint, but it is not waived and Plaintiff reserves the right to contest the Order on appeal.

### THIRD CLAIM FOR RELIEF
### Breach of Contract – Collaboration Agreement
*Against Defendants Tantaros and Astero*

91.  Plaintiff Michael Malice repeats and realleges each and every allegation as if set forth fully herein.

92.  On or about May 4, 2015, Plaintiff and Defendants entered into a Collaboration Agreement, whereby Defendants agreed to compensate Mr. Malice for editing and rewriting a book Defendant Tantaros was writing entitled *Tied Up in Knots*.

93.  The Collaboration Agreement is valid and binding.

94.  Plaintiff has performed in full all of his obligations, covenants, and conditions contained in the Collaboration Agreement, except for those obligations, covenants, and conditions from which he has been lawfully excused from performing.

95. Defendants have breached the Collaboration Agreement by failing to compensate Plaintiff pursuant to the terms of the Collaboration Agreement.

96. This dispute is not about the amount of work provided by Plaintiff pursuant to the Collaboration Agreement; it is about Defendants' failure to compensate Plaintiff for his full performance of the work.

97. As a direct and proximate result of Defendants' breaches of the Collaboration Agreement, Plaintiff Malice has been damaged at an amount to be determined at trial.

98. Plaintiff has been forced to retain legal counsel to pursue his rights and seeks recovery of his attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract – Ghostwriting Agreement**
*Against Defendants Tantaros and Astero*

99. Plaintiff Michael Malice repeats and realleges each and every allegation as if set forth fully herein.

100. In or around July of 2015, Plaintiff and Defendants entered into the Ghostwriting Agreement, whereby Plaintiff agreed to write the book *Tied Up in Knots* for Defendants in exchange for compensation.

101. The Ghostwriting Agreement is valid and binding.

102. Plaintiff has performed in full all of his obligations, covenants, and conditions contained in the Ghostwriting Agreement, except for those obligations, covenants, and conditions from which he has been lawfully excused from performing.

103. Defendants have breached the Ghostwriting Agreement by failing to compensate Plaintiff pursuant to the terms of the Ghostwriting Agreement.

104. As a direct and proximate result of Defendants' breaches of the Ghostwriting Agreement, Plaintiff Malice has been damaged at an amount to be determined at trial.

105. Plaintiff has been forced to retain legal counsel to pursue his rights and seeks recovery of his attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**Breach of the Implied Covenant of Good Faith**
**and Fair Dealing – Collaboration Agreement**
*Against Defendants Tantaros and Astero*

106. Plaintiff Michael Malice repeats and realleges each and every allegation as if set forth fully herein.

107. Under applicable law, the Collaboration Agreement contained an implied covenant of good faith and fair dealing.

108. By their actions, omissions, and/or false representations, Defendants violated the implied covenant of good faith and fair dealing.

109. As a direct, proximate, and legal result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff Michael Malice has been injured in an amount to be proven at trial.

110. Plaintiff Malice has been forced to retain legal counsel to pursue his rights under the terms of the Collaboration Agreement and seeks recovery of his attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**Breach of the Implied Covenant of Good Faith**
**and Fair Dealing – Ghostwriting Agreement**
*Against Defendants Tantaros and Astero*

111. Plaintiff Michael Malice repeats and realleges each and every allegation as if set forth fully herein.

112. Under applicable law, the Ghostwriting Agreement contained an implied covenant of good faith and fair dealing.

113. By their actions, omissions, and/or false representations, Defendants violated the implied covenant of good faith and fair dealing.

114. As a direct, proximate, and legal result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff Michael Malice has been injured in an amount to be proven at trial.

115. Plaintiff Malice has been forced to retain legal counsel to pursue his rights under the terms of the Ghostwriting Agreement and seeks recovery of his attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiff Michael Malice respectfully requests that this Court hereby:[4]

1. Enter a judgment declaring that:

    (a) Defendants Tantaros and Astero willfully violated the express terms of the Collaboration Agreement;

    (b) Defendants Tantaros and Astero willfully violated the express terms of the Ghostwriter Agreement;

    (c) Defendants Tantaros and Astero willfully violated the implied covenant of good faith and fair dealing with respect to the Collaboration Agreement; and

    (d) Defendants Tantaros and Astero willfully violated the implied covenant of good faith and fair dealing with respect to the Ghostwriter Agreement;

2. Award Mr. Malice unpaid monies owed to him under the Collaboration Agreement and the Ghostwriter Agreement;

3. Award Mr. Malice punitive damages for Defendants' willful conduct;

4. Award Mr. Malice his reasonable attorneys' fees and costs incurred in bringing this suit; and

5. All other relief deemed just and proper by the Court.

---

[4] By the Order of October 2, 2017 (Dkt. No. 116), Plaintiff is not seeking injunctive relief, Defendants' profits, actual damages, statutory damages, or fees specifically under 17 U.S.C. §§ 1202 & 1203 or a declaration of authorship and copyright ownership in this amended complaint. Such relief, requested in the original Complaint, is not waived and Plaintiff reserves the right to contest the Order on appeal.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues so triable.

Dated: October 11, 2017                              Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

Ronald D. Green, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

*Attorneys for Plaintiff, Michael Krechmer a/k/a "Michael Malice"*

Case No.: 1:16-cv-07820-KBF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

        Respectfully submitted,

        Trey A. Rothell
        Employee, Randazza Legal Group, PLLC