**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
MICHAEL KRECHMER a/k/a                          :   Case No.: 1:16-cv-07820-KBF
"Michael Malice," an Individual,                :
                                                :
                Plaintiff,   :
         v.                   :
                                                :
ANDREA K. TANTAROS, an individual;              :
and ASTERO, LLC, a New Jersey limited liability :
company,                                        :
                                                :
                Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ANDREA TANTAROS
AND ASTERO, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ............................................................................................................ 2

    I.      THE PARTIES AND THEIR CITIZENSHIP ....................................................... 2

    II.     THE COLLABORATION AGREEMENT ........................................................... 5

    III.    THE ALLEGED ORAL AGREEMENT ............................................................... 7

    IV.   PROCEDURAL HISTORY ..................................................................................... 8

ARGUMENT .................................................................................................................................. 8

    I.      THE COURT LACKS SUBJECT MATTER JURISDICTION ........................... 8

         A.     Subject Matter Jurisdiction Standard ........................................................... 8

         B.     Plaintiff Cannot Establish Complete Diversity Because
               Ms. Tantaros Is Domiciled in New York ................................................... 10

    II.     PLAINTIFF FAILS TO STATE CLAIMS BASED ON THE ALLEGED
         ORAL AGREEMENT ........................................................................................... 11

         A.     The Parties' Written Agreement Could Not Be Modified Orally ............ 12

         B.     The Alleged Oral Agreement Is Too Indefinite to Be Enforceable ......... 14

         C.     The Oral Agreement Is Implausible and Contradicted By Plaintiff's
               Own Additional Allegations ....................................................................... 15

CONCLUSION ............................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................................11

*Astero, LLC v. Talk Radio Network Entm't, Inc.*,
　No. 1:13-cv-06005 (D.N.J. Oct. 10, 2013) ...............................................................................4

*Augienello v. Fed. Deposit Ins. Corp.*,
　310 F. Supp. 2d 582 (S.D.N.Y. 2004) ................................................................................. 8, 9

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................................11

*Palazzo ex rel. Delmage v. Corio*,
　232 F.3d 38 (2d Cir. 2000) .......................................................................................................9

*Durante Bros. & Sons v. Flushing Nat'l Bank*,
　755 F.2d 239 (2d Cir. 1985) ............................................................................................14, 15

*Hai Yang Liu v. 88 Harborview Realty, LLC*,
　5 F. Supp. 3d 443 (S.D.N.Y. 2014) ............................................................................. 5, 9, 11

*Held v. Silver*,
　No. 3:10-CV-00992 CSH, 2013 WL 5346508 (D. Conn. Sept. 23, 2013) .............................11

*Herrick Co. v. SCS Commc'ns, Inc.*,
　251 F.3d 315 (2d Cir. 2001) .....................................................................................................8

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
　52 N.Y.2d 105 (1981) .............................................................................................................15

*LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.*,
　92 F. Supp. 2d 119 (E.D.N.Y. 2000) .....................................................................................12

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*,
　185 F.3d 61 (2d Cir. 1999) .......................................................................................................4

*In re Livent, Inc. Noteholders Sec. Litig.*,
　151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................................................12

*N.S. v. A.S.*,
　No. 11050/2012, 2013 WL 5526064 (Sup. Ct. Nassau County July 1, 2013) .......................12

*Nat'l Artists Mgmt. Co. v. Weaving*,
   769 F. Supp. 1224 (S.D.N.Y. 1991)..........................................................................9, 10

*Orix Credit All., Inc. v. Kim*,
   909 F. Supp. 216 (S.D.N.Y.), *aff'd*, 104 F.3d 353 (2d Cir. 1996) ......................................12, 13

*Pacho v. Enter. Rent-A-Car*,
   510 F. Supp. 2d 331 (S.D.N.Y. 2007).............................................................................9

*Strother v. Harte*,
   171 F. Supp. 2d 203 (S.D.N.Y. 2001).............................................................................9

*Two Wall St. Assocs. Ltd. P'ship v. Anderson, Raymond & Lowenthal*,
   583 N.Y.S.2d 436 (1st Dept. 1992) ...............................................................................12

STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1332............................................................................................................ *passim*

28 U.S.C. § 1746...................................................................................................................3

N.Y. Gen. Oblig. Law § 15–301(1) ................................................................................13

Defendants Andrea Tantaros ("Ms. Tantaros") and Astero, LLC ("Astero," and collectively with Ms. Tantaros, "Defendants"), hereby submit this memorandum of law in support of their motion to (a) dismiss the Amended Complaint ("Amended Complaint" or "Am. Compl.") filed by Plaintiff Michael Krechmer ("Plaintiff") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and (b) dismiss Plaintiff's Fourth and Sixth Claims for Relief for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff seeks to maintain a federal action regarding his breach of contract claims despite having no basis to do so.  All parties in this action are citizens of New York for purposes of the federal diversity jurisdiction statute.  28 U.S.C. § 1332.  Plaintiff is a citizen of New York.  Defendants, as demonstrated through Ms. Tantaros' verified declaration submitted one year ago pursuant to Local Rule 26.1, are citizens of New York.  Accordingly, this Court lacks subject matter jurisdiction, and Plaintiff must bring any claim(s) in state court.  *See infra*, pp. 8-11.

In addition, Plaintiff's claims for relief based on a supposed oral "ghostwriting" agreement must be dismissed for failure to state a claim.  Specifically, the written contract between the parties prohibits any oral modification. Moreover, the alleged oral agreement lacks essential terms, rendering it indefinite and not actionable as a matter of law.  Further, the claimed existence of an oral agreement in the Amended Complaint is simply not tenable, as it is contrary to other alleged events and statements that also are set forth in the Amended Complaint.  *See infra*, pp. 11-16.

Finally, absent the alleged oral agreement, the amount in controversy in this action falls far short of the $75,000 threshold that Plaintiff must establish to invoke diversity jurisdiction. 28 U.S.C. § 1332.

## STATEMENT OF FACTS

### I. THE PARTIES AND THEIR CITIZENSHIP

Plaintiff "resides and is domiciled in the State of New York." Am. Compl. ¶ 1.

Ms. Tantaros is also domiciled in the State of New York. Tantaros Exs. 1-6; Stolley Exs. 1-3.[1] As set forth in the exhibits attached to the accompanying Declarations of Andrea Tantaros and Martha B. Stolley, the following facts establish Ms. Tantaros' domicile in New York:

- Ms. Tantaros rents an apartment in New York. Tantaros Exs. 1-6; Stolley Ex. 1.
- Ms. Tantaros is registered to vote in New York. Stolley Ex. 2.
- Ms. Tantaros filed taxes in New York State and listed New York as her home state in her 2016 federal and state tax returns. Tantaros Exs. 1-2.
- Ms. Tantaros has a New York driver's license. Tantaros Ex. 3.
- Ms. Tantaros' car is registered and insured in New York. Tantaros Ex. 4-5.
- Ms. Tantaros' bank account is in New York. Tantaros Ex. 6.

Ms. Tantaros' New York citizenship – which renders this Court without subject matter jurisdiction due to lack of complete diversity – has even been acknowledged by Plaintiff. Plaintiff's initial Complaint correctly alleged that Ms. Tantaros "resides and does business in

---

[1] "Tantaros Ex. __" refers to exhibits to the accompanying Declaration of Andrea Tantaros, dated November 2, 2017. "Stolley Ex. __" refers to exhibits to the accompanying Declaration of Martha B. Stolley, dated November 2, 2017. Pursuant to, *inter alia*, S.D.N.Y. ECF Instructions 21.3 and 21.4, Tantaros Exhibits 1-6 and Stolley Exhibit 2 are partially redacted to protect Ms. Tantaros' sensitive personal information. Defendants submit these exhibits solely to establish that Ms. Tantaros is domiciled in New York.

the County, City and State of New York."[2] Compl. ¶ 2 (ECF 111). In connection with his initial Complaint, Plaintiff served Ms. Tantaros on October 27, 2016 with a Demand Pursuant to Local Civil Rule 26.1. In response, Ms. Tantaros declared, "under penalty of perjury," that "my primary residence is in New York State, the State in which, among other things, I rent an apartment, I am registered to vote, I pay city and state taxes, I register my car and pay insurance." Stolley Ex. 1.

Plaintiff now alleges that Ms. Tantaros is domiciled in New Jersey, and not New York, based on several incorrect and unsupportable assumptions and inferences:

- *First*, Plaintiff relies on an inadmissible, double-hearsay email, dated October 7, 2016, from a process server to Ms. Tantaros stating, "We attempted to serve you at your residence at 154 W. 70th Street, but we were told you no longer reside there." Am. Compl. Ex. 2. The email does not indicate who told the process server that Ms. Tantaros "no longer reside[s] there." *Id.*

- *Second*, Plaintiff argues that Ms. Tantaros' response to Plaintiff's Demand Pursuant to Local Civil Rule 26.1 "lacks credibility" because it was "an unverified statement that was not subscribed in accordance with 28 U.S.C. § 1746." Am. Compl. ¶¶ 14-15. To the contrary, Ms. Tantaros' Rule 26.1 declaration complies with 28 U.S.C. § 1746.[3]

---

[2] Plaintiff's initial Complaint asserted subject matter jurisdiction **only** on the basis of a federal question concerning copyright law. Compl. ¶ 4. Plaintiff contended that "this case arises under the United States Copyright Act, including the Digital Millennium Copyright Act." *Id.* On October 2, 2017, the Court dismissed the initial Complaint and held that "[t]his is a contract case, not a copyright case. Plaintiff does not hold, and has apparently never applied for, a federal copyright for the work at issue." Oct. 2, 2017 Order (ECF 116).

[3] The statute requires "substantially the following form": "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746. Ms. Tantaros' Rule 26.1 declaration stated, below her signature, "I declare under penalty of perjury that the foregoing is true and correct. Executed on November 1, 2016." Stolley Ex. 1. Plaintiff apparently is arguing that Ms. Tantaros' declaration is technically defective because the statutory language appears after and not before Ms. Tantaros' signature. This is form over substance and inconsistent with the explicit wording of the statute, which requires only

3

- *Third*, Plaintiff relies on a complaint filed by Ms. Tantaros and Astero four years ago in a different litigation in which, Plaintiff alleges, Ms. Tantaros stated that she was a resident of both New York and New Jersey.  Complaint ¶ 2 (citing *Astero, LLC v. Talk Radio Network Entm't, Inc.*, No. 1:13-cv-06005 (D.N.J. Oct. 10, 2013) (ECF No. 1)).  However, Plaintiff conveniently fails to reference or provide the Court with the amended complaint in that litigation, which expressly states that "**Andrea K. Tantaros is a citizen of New York by virtue of her residence in New York and her intent to remain there for the foreseeable future.**"  Second Amended Complaint ¶ 1, *Astero, LLC v. Talk Radio Network Entm't, Inc.*, No. 1:13-cv-06005 (D.N.J. Nov. 8, 2013) (ECF No. 8) (emphasis added), attached to the Stolley Declaration as Exhibit 3.

- *Fourth*, Plaintiff relies on an undated, unverified, hearsay Spokeo.com report filed in a different litigation by Ms. Tantaros' adversary, which lists a "current address" for Ms. Tantaros in Beach Haven, New Jersey.  Am. Compl. Ex. 3.  However, the Beach Haven address is Ms. Tantaros' vacation beach house.  Stolley Ex. 1.  Furthermore, as Spokeo discloses on its web site, "Spokeo gathers information from public sources, which may not be complete, comprehensive, accurate, or up-to-date, so do not use this service as a substitute for your own due diligence."  Stolley Ex. 4.  Furthermore, Spokeo discloses that it "does not verify or evaluate each piece of data, and makes no warranties or guarantees about any of the information offered."  *Id.*

---

that the language and signature be in "substantially" the specified form.  The order in which the signature and language appear are inconsequential and cannot serve as a basis for a claimed violation of the statute.  *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (document "substantially complie[d]" with § 1746 despite not stating that contents were "true and correct").

- *Fifth*, Plaintiff relies on a July 11, 2015 6:04 PM tweet from former Fox News host Eric Bolling, which contains a picture of Mr. Bolling, Ms. Tantaros, and a Fox News producer, and is geo-tagged in Beach Haven, New Jersey. Am. Compl. Ex. 5. Plaintiff's reliance is misplaced. Ms. Tantaros' presence in the town where her part-time beach house is located on a summer evening over two years ago does nothing to establish current New Jersey domicile – especially here, where Ms. Tantaros has submitted ample evidence of her domicile in New York. Tantaros Exs. 1-6.

Plaintiff fails to establish that Ms. Tantaros is domiciled in New Jersey. Rather, Plaintiff had it correct in his initial Complaint, when he alleged that Ms. Tantaros is domiciled in New York.

Lastly, whereas Astero is a New Jersey limited liability company, Ms. Tantaros is the sole member. Stolley Ex. 1 (Tantaros 26.1 Declaration, dated November 1, 2016). Therefore, in light of Ms. Tantaros' domicile in New York, Astero is a New York citizen for purposes of diversity jurisdiction. *See, e.g.*, *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 447 (S.D.N.Y. 2014).

## II. THE COLLABORATION AGREEMENT

On or about May 4, 2015, Plaintiff and Ms. Tantaros entered into a written agreement (the "Collaboration Agreement," Am. Compl. Ex. 6) for Plaintiff to assist Ms. Tantaros in writing her book, *Tied Up in Knots: How Getting What We Wanted Made Women Miserable* ("*Tied Up in Knots*"). Am. Compl. ¶ 23.

The Collaboration Agreement strictly and expressly prohibits any subsequent waiver or modification of that Agreement that is not in writing: "No waiver or modification of any provisions hereunder shall be binding unless in writing and signed by the party to be

5

charged." Collaboration Agreement § 12. Plaintiff does not (and cannot) allege that any such written, signed modification exists. *See* Compl.; Am. Compl. Instead, he claims that the Collaboration Agreement was terminated, and along with it the no modification clause. Am. Compl. ¶¶ 35-36. However, while the Collaboration Agreement provides that it "may be terminated by either party at any time without cause," any notice under that Agreement was required to have been provided in writing pursuant to a specific process set forth in the Agreement. Collaboration Agreement § 12.1 (termination provision); § 9 (notice provision). Just as he did not – and could not – allege written modification, Plaintiff similarly does not (and cannot) allege that there was written notice of termination. *See* Compl.; Am. Compl.

The Collaboration Agreement also sets forth a schedule of payments to Plaintiff that are tied to the execution of the Collaboration Agreement and certain drafting milestones. Collaboration Agreement § 3.2. In total, Plaintiff was to receive $40,000, plus a $10,000 bonus if the book made the New York Times Bestseller list upon publication. Collaboration Agreement § 3.2. Plaintiff does not allege that *Tied Up in Knots* made the New York Times Bestseller list upon publication, which renders him ineligible for the $10,000 bonus. *Id.*

As of July 30, 2015, Ms. Tantaros had paid Plaintiff $30,000 for his services. Am. Compl. ¶¶ 26, 28, 48, 50. Ms. Tantaros withheld the remaining $10,000 otherwise due under the Collaboration Agreement because Plaintiff breached the confidentiality provision of that agreement. *See infra*. Aside from damages associated with the alleged (non-existent) oral agreement, that $10,000 is the only claimed contractual monetary damage.

By signing the Collaboration Agreement, Plaintiff agreed that his duties would "include,

6

*but not be limited to*," a specified list of writing and editing tasks.  Collaboration Agreement § 2.1 (emphasis added).  The list of tasks includes "***writing original material***."  *Id.* (emphasis added).  The Collaboration Agreement also includes a critical confidentiality requirement, which states that "Client's confidentiality *is essential to this agreement*.  Collaborator may not discuss or mention his involvement in the work in any venue without prior approval, in writing, from Client."  Collaboration Agreement § 10 (emphasis added).

### III.  THE ALLEGED ORAL AGREEMENT

In his Amended Complaint, Plaintiff alleges that on July 21, 2015, Ms. Tantaros said that she was too busy to continue writing *Tied Up in Knots*, and asked Plaintiff "to ghostwrite" the book, meaning that "[t]he factual content would be based upon interviews with her, but the prose itself, being the creative elements of the book, would be authored by Mr. Malice."  Am. Compl. ¶ 29.  The next day, Plaintiff allegedly told Ms. Tantaros that "her suggestion went far beyond his initial tasks on the book and that the rate he was being paid in the Collaboration Agreement was far less than he would have received as a ghostwriter."  *Id.* ¶ 30.  Plaintiff allegedly asked Ms. Tantaros to negotiate a new agreement through his agent.  *Id.* ¶ 31.  Plaintiff does not claim that any such negotiation with an agent ever occurred or that any new agreement was reached through his agent.

Instead, Plaintiff alleges that Ms. Tantaros proposed an oral termination and replacement of the Collaboration Agreement (the "Oral Agreement").  Am. Compl. ¶ 35. Pursuant to the purported Oral Agreement, Plaintiff was to "ghostwrite" the book for $150,000 (30% of Ms. Tantaros' advance). Am. Compl. ¶ 37. Plaintiff alleges that the $150,000 figure incorporated by reference the payment schedule of the Collaboration Agreement, but no other terms therefrom.  *Id.* ¶¶ 44-45.  Plaintiff concedes that no writing

7

memorializes the Oral Agreement.

## IV. PROCEDURAL HISTORY

On April 26, 2016, HarperCollins published *Tied Up in Knots*. Am. Compl. ¶ 79. On October 6, 2016, Plaintiff filed the initial Complaint alleging that he authored and owns the copyright to *Tied Up in Knots*, and that Defendants breached the Collaboration Agreement and Oral Agreement by failing to pay him money supposedly owed pursuant to those agreements. Plaintiff further alleged in the initial Complaint that Ms. Tantaros "resides and does business in the County, City and State of New York." He did not assert subject matter jurisdiction on the basis of diversity of citizenship. Compl. ¶ 2 (ECF 11).

On October 2, 2017, the Court dismissed the initial Complaint for lack of federal question subject matter jurisdiction because "Plaintiff does not hold, and has apparently never applied for a federal copyright for the work at issue." ECF No. 116. The Court permitted Plaintiff "one final opportunity to replead" and allege diversity subject matter jurisdiction. *Id*.

On October 11, 2017, Plaintiff filed the Amended Complaint. Without explaining the 180-degree change in position, and contrary to the initial Complaint, Plaintiff now alleges that Ms. Tantaros "resides and is domiciled in the State of New Jersey." Am. Compl. ¶ 2.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION

#### A. Subject Matter Jurisdiction Standard

A complaint may be dismissed for lack of subject matter jurisdiction "if the asserted basis for jurisdiction is not sufficient." *Augienello v. Fed. Deposit Ins. Corp.,* 310 F. Supp. 2d 582, 587 (S.D.N.Y. 2004) (internal citations omitted). "The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence," that it exists. *Id.*

8

at 587-88.  "[N]o presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Id.* at 588.

Diversity-based subject matter jurisdiction requires all adverse parties to be completely diverse in their citizenships.  28 U.S.C. § 1332(a)(1); *see Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).  The diversity inquiry involves a mixed question of fact and law.  *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 41-42 (2d Cir. 2000).  An individual's "domicile" determines his or her citizenship.  *Id.* at 42.  "Domicile" means "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.*  A person can be domiciled in only one state at any given time.  *See Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991).

To determine domicile, "[a] court must consider the entire course of a person's conduct in order to determine the relevant intent."  *Pacho v. Enter. Rent-A-Car*, 510 F. Supp. 2d 331, 333 (S.D.N.Y. 2007).  Relevant factors include voting registration, where taxes are paid, location of brokerage and bank accounts, and driver's and other licenses.  *Id.*  A court must consider a "totality of the evidence," with no single factor being conclusive.  *Id.*  Courts routinely analyze these factors to determine the state of domicile in cases where an individual has residences in more than one state.  *See, e.g.*, *Nat'l Artists Mgmt.*, 769 F. Supp. at 1229.

For the purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members.  *See Strother v. Harte*, 171 F. Supp. 2d 203, 205

(S.D.N.Y. 2001).[4]

### B.  Plaintiff Cannot Establish Complete Diversity Because Ms. Tantaros Is Domiciled in New York

This Court lacks subject matter jurisdiction because Plaintiff has failed to establish, or to even plausibly allege, complete diversity between himself and Defendants.  Plaintiff is a citizen of New York.  Am. Compl. at 1.  Ms. Tantaros also is a citizen of New York.  She rents an apartment in New York, has New York voter registration, pays New York city and state taxes, has her bank account in New York, has a New York driver's license, and has her car registered and insured in New York.  Tantaros Exs. 1-6, Stolley Exs. 1-3.  Indeed, the initial Complaint correctly alleged that Ms. Tantaros is domiciled in New York and, almost one year ago, Ms. Tantaros served Plaintiff with a Local Rule 26.1 declaration setting forth the foregoing facts supporting New York domicile.  Stolley Ex. 1.  In the ensuing year, Plaintiff did not challenge the Rule 26.1 declaration, or seek to amend his complaint to allege diversity of citizenship as an alternative basis for subject matter jurisdiction.  Only after the Court dismissed the initial Complaint, for not presenting a federal question, did Plaintiff suddenly and conveniently change his allegations of domicile with respect to Ms. Tantaros. *See supra*, pp. 2-5.

The only link to New Jersey that Plaintiff claims is Ms. Tantaros' purported tie to a vacation beach house, which is tenuous at best.  It is black-letter law that occasional presence in a state, without more, fails to reflect an intention to establish one's domicile therein. *See Nat'l Artists Mgmt.*, 769 F. Supp. at 1229 (holding defendants were domiciled in New York despite having weekend home in Connecticut).  Therefore, Plaintiff clearly fails to meet his

---

[4] "Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Hai Yang Liu*, 5 F. Supp. 3d at 446.

burden under the diversity statute – especially when considered in conjunction with Ms. Tantaros' extensive and deep ties to New York.  28 U.S.C. § 1332.

Based on Ms. Tantaros' domicile in New York and her position as sole member of Astero (Stolley Ex. 1), Astero also is domiciled in New York.  *See Hai Yang Liu*, 5 F. Supp. 3d at 447; *Held v. Silver*, No. 3:10-CV-00992 CSH, 2013 WL 5346508, at *2 (D. Conn. Sept. 23, 2013) (holding that for purposes of diversity, defendant LLC had same citizenship of its sole member).  Accordingly, all parties to this litigation have a New York domicile, which renders this Court without subject matter jurisdiction.[5]

## II. PLAINTIFF FAILS TO STATE CLAIMS BASED ON THE ALLEGED ORAL AGREEMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Where the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).  Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Most relevant here, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the

---

[5] Absent a claim based on the Oral Agreement, as established *infra*, the amount in controversy in this action fails to exceed the $75,000 threshold required for diversity jurisdiction because Defendants allegedly owe only $10,000 pursuant to the Collaboration Agreement.  Thus, even if Plaintiff properly alleges diversity of citizenship, the Court must dismiss the Amended Complaint for failure to meet the amount-in-controversy requirement. 28 U.S.C. § 1332.

11

complaint itself or by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

Plaintiff alleges that the parties terminated the Collaboration Agreement and entered into the Oral Agreement. Am. Compl. ¶¶ 35-36. Plaintiff then alleges that Defendants breached the Oral Agreement by not paying Plaintiff $120,000 supposedly still owing thereunder. Plaintiff's contract claims based on an alleged oral agreement fail because Plaintiff has not plausibly alleged (and, as a matter of fact and law, cannot allege or establish) the existence of the Oral Agreement.

### A.    The Parties' Written Agreement Could Not Be Modified Orally

It is black-letter law that a written agreement that contains a provision allowing a modification only in writing cannot be replaced by a subsequent oral modification. *LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.*, 92 F. Supp. 2d 119, 128-29 (E.D.N.Y. 2000) ("When a written contract provides that it can only be changed by a signed writing, an oral modification of that agreement . . . is not enforceable."); *Orix Credit All., Inc. v. Kim*, 909 F. Supp. 216, 217-18 (S.D.N.Y.), *aff'd*, 104 F.3d 353 (2d Cir. 1996) (lease contract binding where contract required any modification to be in writing; defendant failed to present a written modification or allege that such a writing existed); *N.S. v. A.S.*, No. 11050/2012, 2013 WL 5526064, at *5 (Sup. Ct. Nassau County July 1, 2013) (agreement not modified despite Plaintiff's acceptance of reduced consideration where the agreement required "a writing, signed and acknowledged by the parties, before the agreement may be deemed modified, discharged, revoked or terminated"); *Two Wall St. Assocs. Ltd. P'ship v. Anderson, Raymond & Lowenthal*, 583 N.Y.S.2d 436, 498 (1st Dept. 1992) (alleged oral modification between landlord and tenant did not modify lease, "which by its terms barred any oral modification").

12

Indeed, without that principle of law, it would render written agreements useless and worthless.

Moreover, New York requires that the modification not only be in writing, but also signed by the party against whom enforcement is sought. N.Y. Gen. Oblig. Law § 15–301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."); *see Orix Credit*, 909 F. Supp. at 217-18.

Here, it is undisputed that the parties entered into a written agreement. Am. Compl. Ex. 6. It is also undisputed that their agreement states, "No waiver or modification of any provisions hereunder shall be binding unless in writing and signed by the party to be charged." *Id*. (Collaboration Agreement § 12). Plaintiff does not allege that any such written, signed modification exists. *See* Compl.; Am. Compl. Instead, to avoid that contractual obligation, Plaintiff alleges that the Collaboration Agreement – and its no modification clause – were terminated. Am. Compl. ¶¶ 35-36. He cannot succeed, however, because while the Collaboration Agreement provides that it "may be terminated by either party at any time without cause," notice must have been in writing pursuant to the Agreement. Collaboration Agreement §§ 12.1, 9. The Collaboration Agreement expressly states:

> Notices. All notices hereunder shall be made in writing to the addresses first set forth above (or to such other address as such party may designate by written notice to the other party in accordance with the provisions of this Paragraph 12) and shall be given personally, by nationally recognized overnight express service, or by certified or registered mail, postage prepaid, return receipt requested.

Collaboration Agreement § 9.  Plaintiff does <u>not</u> allege that he provided any such notice of termination.  *See* Compl.; Am. Compl.  Thus, since the written agreement between the parties permits modification only through a written, signed agreement, the alleged subsequent oral modification is unenforceable and any claim based thereon must be dismissed.  *See* cases at pp. 12-13, *supra*.

**B.     The Alleged Oral Agreement Is Too Indefinite to Be Enforceable**

Plaintiff cannot state a claim based on the alleged Oral Agreement because the material terms of that purported agreement are indefinite.  "There is no enforceable agreement if the parties have failed to agree on all of its essential terms or if some of the terms are too indefinite to be enforceable."  *Durante Bros. & Sons v. Flushing Nat'l Bank*, 755 F.2d 239, 252 (2d Cir. 1985).  In the Amended Complaint, Plaintiff outlines only three terms of the alleged Oral Agreement: (1) Plaintiff shall "ghostwrite the book;" (2) Plaintiff shall receive $150,000 (offset by amounts previously received under the Collaboration Agreement); and (3) the Oral Agreement incorporates the payment schedule of the Collaboration Agreement.  Am. Compl. ¶¶ 35-38, 44-45.  He claims that the Oral Agreement *excludes* virtually all of the terms of the "predecessor" Collaboration Agreement.  Am. Compl. ¶¶ 44-45.  However, the excluded terms cover the material, essential subjects for such an agreement, and Plaintiff fails to allege any ***replacement terms*** that cover these essential subjects.  Therefore, the alleged Oral Agreement appears not to have ***any terms*** that cover the following material and essential subjects: (1) scope of services (Collaboration Agreement § 2); rights to the book and derivative works (*id.* § 4); representations and warranties (*id.* § 5); creative control (*id.* § 5); attribution of any credit for Plaintiff's work (*id.* § 6); agency (*id.* § 7); confidentiality (*id.* § 8); expenses (*id.* § 9); and termination (*id.* § 13).  This absence of these critical terms renders

14

the Oral Agreement unenforceable. *Durante*, 755 F.2d at 252 (alleged promise to lend $100,000 deemed unenforceable due to lack of essential terms).

Even assuming *arguendo* that the parties agreed to terminate the Collaboration Agreement and enter into a new Oral Agreement, Plaintiff's failure to allege terms that are material to a contract of this type means that, at most, Plaintiff has alleged the existence of an unenforceable agreement to agree. Indeed, "it is rightfully well settled in the common law of contracts in [New York] that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 110 (1981).

C.  **The Oral Agreement Is Implausible and Contradicted By Plaintiff's Own Additional Allegations**

Under the Collaboration Agreement, Plaintiff's duties included not only editing, but also "***writing original material***." Collaboration Agreement § 2.1 (emphasis added). In light of Plaintiff's involved role in preparing the book, the Collaboration Agreement included a critical confidentiality requirement, which states that "Client's confidentiality ***is essential to this agreement***." Collaboration Agreement § 10 (emphasis added). Furthermore, according to Plaintiff, Ms. Tantaros "feared" that her editor would "discover that she was not writing the book herself." Am. Compl. ¶ 32. In light of this purported dynamic, why would Ms. Tantaros ever renounce her authorship of *Tied Up in Knots* in favor of Plaintiff, and/or do so without addressing this issue in any subsequent, oral modification? She wouldn't, and Plaintiff's claim that she did is simply implausible and incredible. Am. Compl. ¶¶ 80-82.

Similarly, Plaintiff repeatedly refers to payments "due under the Collaboration Agreement" even after the supposed termination of that agreement. Am. Compl. ¶¶ 35-38, 53-58. Likewise, Plaintiff repeatedly refers to funds he claims Ms. Tantaros owes under "the

agreements" (*i.e.*, the Collaboration Agreement and Oral Agreement), yet also claims the Collaboration Agreement was terminated.  Am. Compl. ¶¶ 50, 59, 86-88.

Furthermore, while Plaintiff contends that the Oral Agreement incorporated only the payment schedule of the Collaboration Agreement and <u>no</u> other term, he also maintains that "[w]ithout a television platform for Ms. Tantaros to promote the sale of the published book, it is unlikely the published book will become a New York Times Bestseller, entitling Plaintiff to additional payment under the agreements."  Am. Compl. ¶ 86.  Plaintiff fails to reconcile how the $10,000 New York Times Bestseller list bonus could or would possibly be due if the Collaboration Agreement had been terminated.  In short, Plaintiff's story about an alleged oral agreement is simply not plausible.

## CONCLUSION

For the foregoing reasons Defendants respectfully request that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction, dismiss Plaintiff's Fourth and Sixth Claims for Relief for failure to state a claim, and grant Defendants such other and further relief as this Court deems just and proper.

Dated:  November 2, 2017                         MORGAN, LEWIS & BOCKIUS LLP

By: */s/  Martha B. Stolley*
Martha B. Stolley
martha.stolley@morganlewis.com
Jawad B. Muaddi
jawad.muaddi@morganlewis.com

101 Park Avenue
New York, New York  10178
(212) 309-6000

*Attorneys for Defendants Andrea Tantaros and Astero, LLC*