UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| MICHAEL KRECHMER, a/k/a "Michael Malice," an individual, | : | |
| | : | |
| Plaintiff, | : | Case No.: 16-cv-7820 (KBF) |
| | : | |
| -against- | : | |
| | : | |
| ANDREA K. TANTAROS, an individual; and ASTERO, LLC, a New Jersey limited liability company, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------x


**<u>PLAINTIFF MICHAEL KRECHMER'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

Ronald D. Green, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

*Attorneys for Plaintiff, Michael Krechmer
a/k/a "Michael Malice"*

## TABLE OF CONTENTS

Page

MEMORANDUM OF LAW IN OPPOSITION ................................................................. 1

I.  Introduction ................................................................................................. 1

II.  Factual Background ................................................................................... 2

III.  Legal Standard ........................................................................................ 4

IV.  Analysis .................................................................................................... 5

   A.  *This Court Has Subject Matter Jurisdiction over Plaintiff's Claims* ............... 5

     1.  There is Complete Diversity of Citizenship ..................................... 6

     2.  The Amount in Controversy Exceeds $75,000 ............................. 8

   B.  *All Claims for Relief Were Properly Stated* ............................................. 9

     1.  The Collaboration Agreement was Terminated, Not Modified .................... 9

     2.  The Claims are Not Implausible ................................................. 10

     3.  All Material Terms of the Ghostwriting Agreement Were Alleged ............ 12

V.  Conclusion ............................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*A.F.A. Tours, Inc. v. Whitchurch*,
  937 F.2d 82 (2d Cir. 1991)..................................................................................8

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003)................................................................................4

*Arriaga v. Mukasey*,
  521 F.3d 219 (2d Cir. 2008)................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................4

*Black Radio Network, Inc. v. Nynex Corp.*,
  44 F. Supp. 2d 565 (S.D.N.Y. 1999) ...............................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................5

*Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*,
  2014 U.S. Dist. LEXIS 25054 (E.D. Mo. Feb. 27, 2014).................................13

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
  74 N.Y.2d 475 (1989) ......................................................................................12

*Dickerson v. Napolitano*,
  604 F.3d 732 (2d Cir. 2010)...............................................................................5

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)...............................................................................4

*DLJ Mortg. Capital, Inc. v. Cross Island Plaza, Inc. (In re Cross Island Plaza, Inc.)*,
  2015 Bankr. LEXIS 2543 (Bankr. E.D.N.Y. July 30, 2015) .............................7

*Flores v. Southern Peru Copper Corp.*,
  343 F.3d 140 (2d Cir. 2003)...............................................................................4

*Givens v. W.T. Grant Co.*,
  409 U.S. 56 (1972).............................................................................................9

*Givens v. W.T. Grant Co.*,
  457 F.2d 612 (2d Cir. 1972)...............................................................................9

*Graziano v. Pataki,*
    689 F.3d 110 (2d Cir. 2012)..................................................................................... 4

*Green v. Doniger,*
    300 N.Y. 238, 90 N.E.2d 56 (1949)....................................................................... 10

*In re Estate of Arcowsky,*
    171 Misc. 41, 11 N.Y.S.2d 853 (Sur. Ct. 1939) ..................................................... 7

*In re Livent, Inc. Noteholders Sec. Litig.,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) .................................................................... 11

*Israel v. Chabra,*
    2009 NY Slip Op 2261, 12 N.Y.3d 158, 878 N.Y.S.2d 646, 906 N.E.2d 374 (2009)............. 10

*James v. N.Y.C. Health & Hosp.'s Corp.,*
    2014 U.S. Dist. LEXIS 52145 (S.D.N.Y. Apr. 14, 2014)........................................ 5

*Joblove v. Barr Labs. Inc. (In re Tamoxifen Citrate Antitrust Litig.),*
    429 F.3d 370 (2d Cir. 2005)..................................................................................... 2

*Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    2006 U.S. Dist. LEXIS 5220, 2006 WL 300477 (S.D.N.Y. Feb. 7, 2006)................ 6

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)..................................................................................... 4

*Nat. Union Fire Ins. Co. of Pittsburgh v. BP Amoco PLC,*
    319 F.Supp.2d 352 (S.D.N.Y. 2004) ....................................................................... 4

*New Dance Grp. Studio v. St. Paul Fire & Marine Ins. Co.,*
    1995 U.S. Dist. LEXIS 10205 (S.D.N.Y. July 21, 1995) ....................................... 9

*Palazzo ex rel. Delmage v. Corio,*
    232 F.3d 38 (2d Cir. 2000)....................................................................................... 6

*Pastor v. Woodmere Fire Dist.,*
    2016 U.S. Dist. LEXIS 154859 (E.D.N.Y. Nov. 7, 2016)....................................... 8

*Reich v. Lopez,*
    38 F. Supp. 3d 436 (S.D.N.Y. 2014) ....................................................................... 8

*Schwartz v. Houss,*
    800 N.Y.S.2d 356 (Kings Cty. Sup. Ct. Jan. 3, 2005) ........................................... 12

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,*
    166 F.3d 59 (2d Cir. 1999)....................................................................................... 6

*XL Specialty Ins. Co. v. Otto Naumann, LTD,*
  2015 U.S. Dist. LEXIS 45028 (S.D.N.Y. Mar. 31, 2015) ...................................................... 11


**STATUTES**

17 U.S.C. § 1202 ................................................................................................................... 1

28 U.S.C. § 1331 ................................................................................................................... 1

28 U.S.C. § 1332 ................................................................................................................... 5

28 U.S.C. § 1746 ................................................................................................................... 7

28 U.S.C. § 1338 ................................................................................................................... 1

N.Y. Gen. Oblig. Law § 15-301 ......................................................................................... 9


**RULES**

Fed. R. Civ. P. 12 ........................................................................................................ 1, 2, 4

Fed. R. Civ. P. 15 ................................................................................................................. 2

Fed. R. Civ. P. 56 ................................................................................................................. 5

Fed. R. Civ. P. 8 ................................................................................................................. 11


**OTHER AUTHORITIES**

*Barron's Law Dictionary* (3rd Ed.1992) 342-43 ............................................................... 9

<u>MEMORANDUM OF LAW IN OPPOSITION</u>

Plaintiff Michael Krechmer (a/k/a Michael Malice) ("Malice"), by and through his counsel of record, Randazza Legal Group, PLLC, hereby opposes Defendants Andrea K. Tantaros and Astero, LLC's Motion to Dismiss the Amended Complaint (Dkt. No. 126).  As set forth below, the Court has subject matter jurisdiction over this case, and Plaintiff's claims were properly stated.

## I.   Introduction

Plaintiff previously filed a Verified Complaint on October 6, 2016 asserting claims for declaratory judgment as to copyright ownership, violation of 17 U.S.C. § 1202, breach of a collaboration agreement, breach of a ghostwriting agreement, and breaches of the covenant of good faith and fair dealing as to those two agreements. (Dkt. No. 111).[1]  In the Verified Complaint, Plaintiff pleaded this Court had subject matter jurisdiction as a federal question (copyright), under 28 U.S.C. §§ 1331 & 1338, and supplemental jurisdiction as to the remaining claims.  Dkt. No. 111 at ¶ 4.  On October 19, 2016, Defendants Andrea K. Tantaros ("Tantaros") and Astero, LLC ("Astero" and collectively "Defendants"), moved, *inter alia,* to dismiss the Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. No. 99).  Because the motion to dismiss contained material beyond the four corners of the Verified Complaint, on October 28, 2016, the Court converted the motion to dismiss to a motion for summary judgment and invited further submissions.  (Dkt. No. 60).  Following full briefing and evidentiary submissions, on October 2, 2017 (Dkt. No. 116) the Court Ordered:

> As to the motion at ECF 99, this is a contract case, not a copyright case.  Plaintiff does not hold, and has apparently never applied for, a federal copyright for the work at issue. Plaintiff asserts that he can plead a basis for diversity jurisdiction.  Accordingly, Plaintiff is granted one final opportunity to replead—alleging presumably the contract or other non-copyright (and no DMCA/copyright-dependent) claims (along with a basis for diversity jurisdiction).  Plaintiff must file any amended complaint not later than Oct. 11, 2017.

---

[1]   Prior to August 9, 2017, all filings were sealed.  Rather than unsealing them under their original docket numbers, the Clerk re-docketed the filings.  For ease of reference, Plaintiff will only use the docket numbers for the unsealed documents as available on the Court's CM/ECF system, although the numbering does not correspond with the chronological filing of the original documents.

Dkt. No. 116.[2]  Pursuant to that Order, on October 11, 2017, Plaintiff filed his First Amended Complaint (Dkt. No. 123), asserting diversity jurisdiction and omitting the claims for declaratory judgment and violation of Section 1202.[3]  On November 2, 2017, Defendants filed their motion to dismiss the amended complaint, asserting a lack of diversity and renewing their arguments under Rule 12(b)(6) as to the state law claims.[4]

## II.    Factual Background

As set forth in the First Amended Complaint ("FAC") Defendant Andrea Tantaros ("Tantaros") was, until her suspension, a Fox News television personality, whose business affairs were managed through her company, Defendant Astero, LLC ("Astero").  FAC at ¶¶ 2-3.  Tantaros had an agreement to write a book entitled *Tied Up in Knots* with her publisher, HarperCollins.  *Id.* at ¶ 23.  Unfortunately, she failed to make any significant progress for approximately two years. *Id.* at ¶ 20.

---

[2]    In opposing Defendants' original motion to dismiss, Plaintiff requested leave to replead diversity jurisdiction as necessary.  *See* Dkt. No. 103 at p. 4.

[3]    Although those claims and federal jurisdiction were omitted, Plaintiff noted that such were not waived and were preserved for the purpose of appeal.

[4]    Plaintiff respects the right of Defendants to contest the newly pleaded basis of subject matter jurisdiction, but generally objects to Defendants having a second opportunity to move under Rule 12(b)(6), as Plaintiff did not make any new factual or legal assertion as to the state law claims that did not appear in the original Verified Complaint.  Plaintiff did not understand the Court's order to permit any such new assertions.  Had the order been so broad, Plaintiff would have included the factual assertions and evidence previously submitted in opposition to the converted motion as well as additional allegations as to Defendants' statements to third-parties confirming Plaintiff was now the writer, not merely an editor.  In the event the Court is otherwise inclined to dismiss claims arising out of the Ghostwriting Agreement, Plaintiff requests leave to replead as justice would so require.  *See* Fed. R. Civ. P. 15(a)(2); *see also Joblove v. Barr Labs. Inc. (In re Tamoxifen Citrate Antitrust Litig.)*, 429 F.3d 370, 404 (2d Cir. 2005) (leave to replead is left to the sound discretion of the court).

Alternately, to avoid any prejudice from this do-over, Plaintiff hereby incorporates by reference his opposition to the original motion to dismiss (Dkt. No. 103), the Declaration of Attorney Jay M. Wolman (Dkt. No. 104), Plaintiff's Presentation of Additional Evidence and Statement of Additional Material Facts in Opposition to Converted Motion for Summary Judgment (Dkt. No. 105), Declaration of Jay M. Wolman (Dkt. No. 106), the Declaration of Michael Krechmer (Dkt. No. 72), and Plaintiff's Response to Defendants' Statement of Material Facts (Dkt. No. 87), as well as any and all exhibits filed therewith, as if fully set forth herein.

Plaintiff Michael Krechmer, who publicly uses the name "Michael Malice," is a two-time *New York Times* best-selling author. *Id*. at ¶ 1. Because of Tantaros's inability to write the book, she asked Mr. Malice to guide her through the process and act as an editor, and he agreed. *Id*. at ¶¶ 20-22. Thereupon, on or about May 4, 2015, the parties entered into the Collaboration Agreement. *Id*. at ¶ 23 and Ex. 6 thereto.

Although Mr. Malice performed under the Collaboration Agreement, Tantaros continued to struggle to make progress on the book. *Id*. at ¶ 27. On July 21, 2015, she gave up and asked Mr. Malice to write the book on her behalf as her ghostwriter. *Id*. at ¶ 29. Mr. Malice was willing to do this, but as the scope of work far exceeded the expectations of the parties when they entered into the Collaboration Agreement, that agreement was terminated.[5] *Id*. at ¶¶ 30, 31, 35, 36 & 37. Unlike the requirement that modifications be in writing (FAC, Ex. 6, Sec. 12), there is no writing requirement for termination. *Id*. at Ex. 6, Sec. 13/12.1 [sic]. The parties then entered into a new, oral Ghostwriting Agreement. *Id*. at ¶¶ 35-36. It was an oral agreement at Tantaros's request because she wished to reduce the likelihood HarperCollins and Fox News would learn that she was no longer writing the book. *Id*. at ¶¶ 32-35.

The Ghostwriting Agreement proposed by Defendants contained only the essential material terms: Mr. Malice would write the book, in exchange for which he would be paid a total of $150,000, utilizing, where appropriate, the payment schedule from the Collaboration Agreement. *Id*. at ¶¶ 25, 37-42, & 44-45. Unlike the Collaboration Agreement, the Ghostwriting Agreement did not include a written instrument stating it was a work for hire and there was no written assignment of copyright. *Id*. at ¶¶ 41-43. Although Defendants had the capacity to ensure one or both of these writing were made, they failed to do so.[6]

---

[5]   Although the Collaboration Agreement required Mr. Malice to "writ[e] original material", such was in the context of his general duty to "edit and rewrite the work". (FAC, Ex. 6, Sec. 2.1). The Collaboration Agreement did not require Mr. Malice to "write the work" in the first instance, which is what Defendants subsequently wished Mr. Malice to do.

[6]   Defendants dispute that the Ghostwriting Agreement was a separate agreement and suggest that the terms of the Collaboration Agreement extend to the ghostwriting. As the Court is aware,

Mr. Malice lived up to his obligations and wrote *Tied Up in Knots*.  *Id*. at ¶¶ 51-53, 94, & 102.  Defendants fully approved of the work performed by Mr. Malice.  *Id*. at ¶¶ 52, 60, & 61. HarperCollins accepted the manuscript and, on April 26, 2016, the book was published.  *Id*. at ¶¶ 56 & 79.  Defendants caused the published book to falsely state that Ms. Tantaros was the author and copyright owner.  *Id*. at ¶¶ 80-82.  Defendants only paid Mr. Malice $30,000 of the $150,000 owed for writing the book.  *Id*. at ¶¶ 26, 28, 48-50, 54-55, 57-59, 65, 87, & 88.  Further, because Ms. Tantaros failed to obtain approval for the book by Fox News, she was suspended, depriving Mr. Malice of the potential that her on-air promotion of the book could cause it to become, in effect, his third *New York Times* bestseller, for which he would be owed an additional $10,000. *Id*. at ¶¶ 25 & 83-86.

## III.    Legal Standard

Defendants appear to challenge the factual sufficiency of plaintiff's assertion of jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Nat. Union Fire Ins. Co. of Pittsburgh v. BP Amoco PLC*, 319 F.Supp.2d 352, 371 (S.D.N.Y. 2004).  The Court must accept as true all material factual allegations in the FAC, without drawing favorable inferences.  *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).  Evidence outside of the pleadings may be considered.  *See Flores v. Southern Peru Copper Corp*., 343 F.3d 140, 161 n.30 (2d Cir. 2003); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The evidence and allegations demonstrate that this Court possesses subject matter jurisdiction.  Defendants are citizens of New Jersey and Plaintiff is a citizen of New York, thus there is complete diversity.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (Rule 12(b)(6)); *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (Rule 12(c)).  A claim is

---

the Collaboration Agreement contained a confidentiality clause.  FAC at Ex. 6, ¶ 10.  If the terms of the Collaboration Agreement applied to the Ghostwriting Agreement, Defendants would not have demanded, individually and through counsel, on multiple occasions, that Mr. Malice execute a new non-disclosure agreement.  FAC at ¶¶ 66, 69-71, 73, 75, & 76.

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Malice has pleaded factual content for each count that would show liability, as a matter of law, if proven; Defendants simply have a factual dispute over the nature of the Ghostwriting Agreement.

As the prior motion to dismiss was converted to one for summary judgment, and the pending one stands on its shoulders, to the extent applicable, the entire factual record should be considered, not merely the four corners of the FAC. "Summary judgment may not be granted unless all of the submissions taken together show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *James v. N.Y.C. Health & Hosp.'s Corp.*, 2014 U.S. Dist. LEXIS 52145, at *13 (S.D.N.Y. Apr. 14, 2014) quoting Fed. R. Civ. P. 56(c). Defendants have not and cannot present material facts entitling them to summary judgment, let alone ones that are undisputed. Defendants bear the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making that determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). In the light most favorable to Plaintiff, summary judgment must be denied as the material facts presented by Plaintiff show that the Collaboration Agreement was terminated and Defendants failed to make the payments due and owing.

## IV.    Analysis

The parties agreed that Mr. Malice would be paid $150,000 for ghostwriting the book; he did so and did not get paid. All of his rights under the Ghostwriting Agreement were retained and Mr. Malice can properly pursue each of the claims.

### A.    This Court Has Subject Matter Jurisdiction over Plaintiff's Claims

As set forth in the First Amended Complaint, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon complete diversity of citizenship and the amount in controversy exceeds $75,000. *See* FAC at ¶ 4. And, because the Court has subject matter

jurisdiction over these claims, Defendants do not dispute that the Court may exercise supplemental jurisdiction over the remaining state law claims.[7]

      1.    <u>There is Complete Diversity of Citizenship</u>

There is no dispute Plaintiff is a New York citizen or that Astero is organized and based in New Jersey.  The only question is whether Tantaros is a New York or New Jersey citizen.  Citizenship is determined by a party's "domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Satisfaction of the diversity requirement is "determined as of the date that suit is filed." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999).  In determining domicile, factors considered include:

> voting registration and voting practices, location of real and personal property, location where taxes are paid, location of brokerage and bank accounts, driver's and other licenses, membership in churches, clubs, and associations, whether the person owns or rents his place of residence, and locations of the person's physician, lawyer, accountant, dentist, or stockbroker. A 'totality of the evidence' approach is called for, and no single factor is conclusive[.]

*Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 U.S. Dist. LEXIS 5220, 2006 WL 300477, at \*1 (S.D.N.Y. Feb. 7, 2006) (internal citations and quotation marks omitted).

At the time Plaintiff filed suit, he believed Tantaros to be a New York domiciliary.  *See* Complaint at ¶ 4.  However, upon attempt to serve her with the summons and complaint, Plaintiff learned she did not live where he thought she did.  *See* FAC at ¶¶ 23-25 and Ex. 2.  Thus, after service of process was accepted, he served her with a Demand Pursuant to Local Civil Rule 26.1, which required her to submit a verified response as to her domicile.  What he received in response was irregular.

First, it did not actually state her domicile as required by the rule.  *See* Dkt. No. 128-1. Instead, she spoke of her "primary residence," apartment rental, voter registration, car registration, insurance, and tax returns.  Although those are indicia of domicile under *Korb, supra,* they are not dispositive.  Thus, on its face, the response under Rule 26.1 was insufficient.  Even more curious

---

[7]    Notably, Defendants have not sought to dismiss the Third and Fifth Claims for Relief on the merits.

was the form:  her signature appeared *above* the attestation pursuant to 28 U.S.C. § 1746.  To be valid, the declaration must be "subscribed by [her], as true under penalty of perjury," in the form provided.  28 U.S.C. § 1746.  "The word 'subscribe' is derived from the two Latin words *sub*, meaning 'below' and *scribo*, signifying 'to write.'  To subscribe accordingly is defined by the Standard Dictionary as 'to write below a documentary statement.'"  *In re Estate of Arcowsky*, 171 Misc. 41, 42, 11 N.Y.S.2d 853, 854 (Sur. Ct. 1939).  Where a statute requires a subscription, anything below the signature is invalid.  *See, e.g.*, *DLJ Mortg. Capital, Inc. v. Cross Island Plaza, Inc. (In re Cross Island Plaza, Inc.)*, 2015 Bankr. LEXIS 2543, at *34 (Bankr. E.D.N.Y. July 30, 2015) (invalidating property descriptions in a deed below the signature as the applicable statute of frauds required a "subscription").  As a result, Tantaros's response under Rule 26.1 lacks validity for want of proper declaration as required by statute.

Oddly, Defendants were aware of this defect prior to filing their new motion to dismiss. *See* Dkt. No. 127 at p. 3 & n. 3.  They even draw attention to the "explicit wording of the statute," which requires the attestation be "subscribed."  *Ibid.*  No explanation is given as to why it was not subscribed.[8]  Rather than cure the defect, Defendants simply wish for it to be excused.  Defendants submitted a new declaration from Tantaros in support of their motion.  *See* Dkt. No. 129.  Although properly subscribed, absent from that declaration is any statement reiterating what she stated in the Rule 26.1 response, any statement adopting it as true, or even any statement declaring she is a New York domiciliary.

Plaintiff does not dispute that the exhibits attached to the declarations of Tantaros and her counsel provide indicia that, at some point, Tantaros may have been a New York domiciliary.  But they do not prove she was a New York domiciliary at the moment the case was filed.  Defendants contest the evidence Plaintiff submitted with his FAC that Tantaros is a New Jersey domiciliary.

---

[8]    Although Plaintiff would prefer to believe it was a formatting error, the record indicates that Ms. Tantaros spoliated evidence (falsely accusing Plaintiff of fabrication).  Thus, it is possible the formatting was intentional, to avoid subjecting Ms. Tantaros to the penalties of perjury through technical defect.  Ordinarily, Plaintiff would not nitpick the requirement of a "subscription," but the behavior of Defendants' prior counsel has made this litigation far from ordinary.

However, such evidence certainly provides a basis for Plaintiff to at least take jurisdictional discovery to fully establish where Tantaros was domiciled in October 2016.  *See Reich v. Lopez*, 38 F. Supp. 3d 436, 459 (S.D.N.Y. 2014).  And, as the parties have otherwise been ordered to conduct full discovery, there is no prejudice to Defendants for such discovery to also now include inquiry into her domicile.  If the evidence ultimately shows Tantaros was domiciled in New York when the case was filed, Plaintiff will certainly not continue to argue she was not, but the evidence at this point is inconclusive.

      2.    <u>The Amount in Controversy Exceeds $75,000</u>

Defendants do not dispute the present amount in controversy exceeds $75,000.  Rather, their argument is that if Claims Four and Six are dismissed, Claims Three and Five alone will only be for $10,000.  *See* Dkt. No. 127 at p. 11, n. 5.  This is incorrect.  Under the Collaboration Agreement, Defendants owe Plaintiff $10,000; this amount in controversy is undisputed.  Defendants also ignore that by taking actions that caused her removal from Fox News, Tantaros breached the covenant of good faith and fair dealing that would have likely resulted in the book becoming another *New York Times* Bestseller for Plaintiff, for which he would be entitled to another $10,000.

Moreover, due to Defendants' high degree of bad faith, punitive damages may be warranted.[9]  *See Pastor v. Woodmere Fire Dist.*, No. 16-cv-892 (ADS)(ARL), 2016 U.S. Dist. LEXIS 154859, at *23 (E.D.N.Y. Nov. 7, 2016).  Punitive damages may be considered in determining the amount in controversy.  *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991).  Here, if the Ghostwriting Agreement is not found to be valid, Defendants willfully mislead Plaintiff into performing work they agreed would be valued at $150,000, in violation of their covenant of good faith and fair dealing.[10]  Thus, punitive damages for the unpaid amount may be awarded.

---

[9]    Defendants do not challenge the prayer for relief for punitive damages in the FAC.
[10]    Defendants will also have otherwise been unjustly enriched in that amount.  Thus, if the other counts are dismissed, Plaintiff should be given an opportunity to plead unjust enrichment for the unpaid amount.

Further, Plaintiff has made a claim for attorneys' fees.  Such may be considered as part of the amount-in-controversy where fees are permitted by contract.  *See Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), vacated on other grounds by 409 U.S. 56 (1972).  Here, the Collaboration Agreement provided for attorneys' fees.  Dkt. 111-1 at § 13(12.2).[11]  Such fees alone are likely to exceed $75,000 in light of the amount of litigation to date.  Thus, the amount in controversy requirement will have been met, even if Claims Four and Six were dismissed.

B.   All Claims for Relief Were Properly Stated

Just as the First Amended Complaint demonstrates subject matter jurisdiction, it also properly states a claim.  Notably, none of the challenges raised to Claims Four or Six are as to whether any of the elements are missing; rather, Defendants raise factual disputes that they can neither prevail on before the trier of fact, let alone at the dismissal stage.

1.   The Collaboration Agreement was Terminated, Not Modified

Plaintiff agrees that the Collaboration Agreement contained a provision that set forth that modifications must be in writing.  The Ghostwriting Agreement is not a modification; it superseded the Collaboration Agreement.  Defendants acknowledge that this is what was pleaded.  Dkt. No. 127 at p. 13.  "A subsequent written or oral agreement discharges and supercedes prior agreements, whether oral or written.  Even a clause in a written agreement forbidding oral modification may be orally rescinded and the prior agreement orally modified unless prohibited by a statute…." *Barron's Law Dictionary* (3rd Ed.1992) 342-43.[12]  New York law treats differently written agreements that have a provision precluding oral modification and written agreements precluding oral termination.  *See* N.Y. Gen. Oblig. Law § 15-301 (1) & (2).  The Collaboration Agreement contained the former, but not the latter.  *See Israel v. Chabra*, 2009 NY Slip Op 2261, ¶ 6, 12

---

[11]   As the amount of work provided is not in dispute, the arbitration portion of that section does not apply, but the attorneys' fees provision in the dispute resolution clause does.

[12]   Both the Second Circuit Court of Appeals and the Southern District of New York have favorably utilized Barron's Law Dictionary. *See Arriaga v. Mukasey*, 521 F.3d 219, 226 (2d Cir. 2008) and *New Dance Grp. Studio v. St. Paul Fire & Marine Ins. Co.*, 1995 U.S. Dist. LEXIS 10205, at *7 (S.D.N.Y. July 21, 1995).

N.Y.3d 158, 165-66, 878 N.Y.S.2d 646, 651, 906 N.E.2d 374 (2009) citing *Green v. Doniger*, 300 N.Y. 238, 90 N.E.2d 56 (1949).  Neither do Defendants dispute that the parties *could have* terminated the Collaboration Agreement; they rather contest the Ghostwriting Agreement as indefinite and the scenario as merely implausible.

The sole basis for claiming the Collaboration Agreement was not terminated is the lack of written notice, an exception observed in *Israel, supra*.  Although they point to a written notice provision at § 9, the termination clause at § 13(12.1) *does not* require termination to be effected by written notice.  Thus, the general common law rule permitting oral termination of a written agreement recognized by the New York Court of Appeals applies.  *Israel, supra.*  Moreover, there is no reason why *Plaintiff* would be the one required to give notice of termination when it was *Defendants* who sought to terminate the Collaboration Agreement by desiring Plaintiff to write the book in the first instance, rather than "edit and rewrite" as originally agreed.  To the extent there was a requirement to put a notice of termination in writing, it was Defendants, not Plaintiff, who breached that requirement, and Plaintiff waives that breach.  However, per § 12 of the Collaboration Agreement, the waiver of one breach is not consent to any other breach.

2.    The Claims are Not Implausible

Although Plaintiff expected that, upon entering into the Ghostwriting Agreement, the work would be published under Ms. Tantaros's name, he also expected that he would be paid, whereupon he would have readily assigned the copyright to Defendants and authorized publication under her name.  Defendants argue that it is implausible in light of their stated fears and desire for confidentiality that they would enter into a new Ghostwriting Agreement that did not afford them the protections of the Collaboration Agreement.

Defendants point to no contradiction; they simply do not like to admit failure.  Essentially, Defendants were represented by experienced individuals at the time the Collaboration Agreement was made; Ms. Tantaros, individually and for Astero, took it upon herself to terminate that agreement and entire into a new one without such representation.  As a result, she failed to include

those terms that might normally have been desirable in a ghostwriting agreement, such as terms relating to work-for-hire and confidentiality.

Neither is it inconsistent to allege payments were due under the schedule of the Collaboration Agreement where that schedule was expressly incorporated into the Ghostwriting Agreement, despite termination of the remainder of the agreement. *See* FAC at ¶¶ 44-45. Second, although Paragraphs 86 & 88 of the FAC speaks of payments owed under the "agreements," Defendants' semantic games should not be validated. It is otherwise accurate where a portion of one agreement is incorporated into another, even though they can also be referred to as a unit. Third, Defendants are free to dispute whether the Bestseller clause in the payment schedule was incorporated into the Ghostwriting Agreement when the whole schedule was incorporated by reference, or whether the parties intended otherwise. But a dispute over the meaning of terms in an oral agreement does not present a contradiction.

Fourth, Defendants argue that pleading claims based solely on the Collaboration Agreement in the Third and Fifth Claims otherwise contradict the remaining claims. Defendants do not point to an inconsistent factual statement, rather they take issue with potentially inconsistent legal theories. The Ghostwriting Agreement is, admittedly, an oral one; if Defendants denied its existence and a jury believed them, Plaintiff would still be entitled to recover under the Collaboration Agreement. These alternate theories are permitted by Fed. R. Civ. P. 8(a)(3) & 8(d)(3). As noted in *XL Specialty Ins. Co. v. Otto Naumann, LTD*, No. 12-CV-8224 (DAB), 2015 U.S. Dist. LEXIS 45028, at *4 (S.D.N.Y. Mar. 31, 2015) *and In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001), only inconsistent assertions of fact are prohibited. No factual assertions are inconsistent. Although Defendants claim it is implausible because the Collaboration Agreement specifically had the term "writing original material," that term is one thing in the context of the general duty to "edit and rewrite", but it does not mean to write the book from scratch. And fifth, once more, Paragraph 65 of the FAC refers to the fact that the payment schedule of the Collaboration Agreement was incorporated into the Ghostwriting Agreement.

- 11 -

3.      All Material Terms of the Ghostwriting Agreement Were Alleged

Defendants argue that the absence of confidentiality provisions and rights provisions from the oral Ghostwriting Agreement, along with other provisions appearing in the Collaboration Agreement, but not the Ghostwriting Agreement, makes the latter unenforceable as lacking definiteness.  Defendants provide no explanation as to how those terms are material or precedent suggesting they must be.  Neither could they possibly do so.

Defendants previously directed this Court's attention to *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989).  That case also states, in relevant part:

> Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear. The conclusion that a party's promise should be ignored as meaningless is at best a last resort.

74 N.Y.2d at 483 (internal citations and quotation marks omitted).  The agreement is reasonably certain and its meaning is clear.  The material terms were (1) that Mr. Malice would ghostwrite the book and (2) that Defendants would pay him $150,000.  Oral contracts are enforceable where parties agree upon the work to be performed and the terms of compensation.  *See, e.g.*, *Schwartz v. Houss*, 800 N.Y.S.2d 356, 356 (Kings Cty. Sup. Ct. Jan. 3, 2005).  Defendants' promise to pay Mr. Malice the outstanding $120,000 should not be ignored as meaningless.

A transfer of rights or explicit work-for-hire clause is not a required material term and Defendants offer nothing beyond their *ipse dixit*.  The law fills in the default provision: Mr. Malice is the copyright owner in the absence of written terms to the contrary.  *See* 17 U.S.C. §§ 101 & 204; *see also Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989).  Similarly, a confidentiality clause is not a material term; Defendants point to no caselaw requiring parties to contracts for services to negotiate a confidentiality clause.  The default rule, of course, is that the agreement would not be confidential, and Mr. Malice properly pleaded that the only provision of the Collaboration Agreement incorporated was the payment schedule, necessarily disclaiming confidentiality.  Although Ms. Tantaros may lament not having negotiated a rights transfer and confidentiality, she only has herself to blame and is a direct consequence of trying to hide her

- 12 -

inability to write.  Neither do Defendants provide any valid basis to suggest agency, attributions, or other terms appearing in the Collaboration Agreement are essential.  The Ghostwriting Agreement was no mere "agreement to agree"; all material terms were set forth and Plaintiff fully performed thereunder.  Therefore, the agreement is sufficiently definite and dismissal is not warranted.

**V.    Conclusion**

Mr. Malice is owed $120,000 from Defendants, who have appropriated his work in denigration of their promise.  Then, even though they did not pay him, they have taken credit for his work.  Despite a change of counsel, Defendants continue to abuse the law by taking a "kitchen-sink approach to litigation."  *Black Radio Network, Inc. v. Nynex Corp.*, 44 F. Supp. 2d 565, 588 (S.D.N.Y. 1999); *see also Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines*, *LLC*, No. 4:11CV1299 RWS, 2014 U.S. Dist. LEXIS 25054, at *2 n.2 (E.D. Mo. Feb. 27, 2014) (decrying a "'throw everything against the wall and see what sticks' approach to litigation.") Defendants even continue to avoid directly demonstrating Tantaros was domiciled in New York at the time the suit was filed, doing everything but submit a valid declaration under oath.  There is sufficient evidence she was a New Jersey domiciliary (or at least discovery is warranted) and the claims for relief under the Ghostwriting Agreement are properly before this court.

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendants Andrea K. Tantaros and Astero, LLC's Motion to Dismiss the Amended Complaint *in toto*.

Dated: November 16, 2017                    Respectfully Submitted,

                                            /s/ Jay M. Wolman
                                            Jay M. Wolman (JW0600)
                                            RANDAZZA LEGAL GROUP, PLLC
                                            100 Pearl Street, 14th Floor
                                            Hartford, CT 06103
                                            Tele:   702-420-2001
                                            Fax:    305-437-7662
                                            Email: ecf@randazza.com

Ronald D. Green, *pro hac vice*
Randazza Legal Group, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

*Attorneys for Plaintiff, Michael Krechmer*
*a/k/a "Michael Malice"*

Case No. 16-cv-7820 (KBF)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC

- 15 -